**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL RUBEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMTRUST FINANCIAL SERVICES, INC., BARRY D. ZYSKIND, and RONALD E. PIPOLY JR.,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Joel Rubel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AmTrust Financial Services, Inc. ("AmTrust" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired AmTrust securities between May 10, 2016 and February 24, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. AmTrust, through its subsidiaries, underwrites and provides property and casualty insurance in the United States and internationally. It operates in three segments: Small Commercial Business; Specialty Risk and Extended Warranty; and Specialty Program. AmTrust distributes its policies through a network of retail and wholesale agents, as well as through third-party brokers, agents, retailers, or administrators.

3. Founded in 1998, the Company is headquartered in New York, New York. AmTrust's stock trades on the NASDAQ under the ticker symbol "AFSI."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AmTrust had ineffective assessment of the risks associated with its financial reporting; (ii) the Company had an insufficient complement of corporate accounting and corporate financial reporting resources within the organization; (iii) in turn, the Company lacked effective internal controls over financial reporting; and (iv) as a result of the foregoing, AmTrust's public statements were materially false and misleading at all relevant times.

5. On February 27, 2017, AmTrust issued a press release, attached as Exhibit 99.1 on Form 8-K filed with the SEC, entitled "AmTrust Financial Services, Inc. Reports Fourth Quarter 2016 Net Income Per Diluted Share of $0.57 and Operating Earnings Per Diluted Share of $0.38, Reflecting Strengthening of Reserves." In the press release, the Company stated in relevant part:

> **Update on Anticipated Timing of 10-K Filing**
>
> On or before March 1, 2017, AmTrust intends to file a Form 12b-25 with the Securities and Exchange Commission providing the Company an automatic 15-day extension to file its Form 10-K for the year ended December 31, 2016. As previously disclosed, the Company appointed a new independent registered public accounting firm on April 1, 2016. Additional time is needed for the Company to complete its consolidated financial statements and assessment of internal controls over financial reporting for the fiscal year ended December 31, 2016, and, as a consequence, for the Company's auditor, KPMG LLP, to complete its audit procedures and audit of the consolidated financial statements included in the Form 10-K. The Company expects to file the Annual Report on Form 10-K within the 15-day extension period provided by Rule 12b-25.
>
> In addition, the Company expects to make immaterial corrections to errors in its financial statements for fiscal years ended December 31, 2015 and 2014 and certain financial information for fiscal years ended December 31, 2013 and 2012 for inclusion in the Form 10-K and these processes have not been completed. The Company is still evaluating corrections to its historical quarterly financial statements within these fiscal years. For a further explanation, please see footnote (1) below.
>
> In connection with the foregoing, ***the Company expects to disclose in the Form 10-K that, as part of its evaluation of its internal controls over financial reporting as required by Section 404 of the Sarbanes-Oxley Act of 2002, the Company identified material weaknesses in its internal control over financial reporting that existed as of December 31, 2016, specifically related to ineffective assessment of the risks associated with the financial reporting, and an insufficient complement of corporate accounting and corporate financial reporting resources within the organization.*** As the Company completes the preparation of its financial statements and the related audit process for fiscal year 2016, additional adjustments and/or material weaknesses could be identified. While the Company believes that significant progress has been made in enhancing internal controls as of December 31, 2016 and in the period since, the material weaknesses have not been fully remediated due to insufficient time to fully implement and assess the design and operating effectiveness of the related

> controls. The Company will continue the process to enhance internal controls throughout 2017.

(Emphasis added.)

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act.

9. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). AmTrust's principal executive offices are located within this Judicial District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired AmTrust securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.     Defendant AmTrust is incorporated in Delaware. The Company's principal executive offices are located at 59 Maiden Lane, 43rd Floor, New York, New York 10038. AmTrust's shares trade on the NASDAQ under the ticker symbol "AFSI."

13.     Defendant Barry D. Zyskind ("Zyskind") has served at all relevant times as the Company's Chief Executive Officer and President.

14.     Defendant Ronald E. Pipoly Jr. ("Pipoly") has served at all relevant times as the Company's Chief Financial Officer and Executive Vice President.

15.     The Defendants referenced above in ¶¶ 13-14 are sometimes referred to herein collectively as the "Individual Defendants."

16.     Each of the Individual Defendants:

    a.  directly participated in the management of the Company;

    b.  was directly involved in the day-to-day operations of the Company at the highest levels;

    c.  was privy to confidential proprietary information concerning the Company and its business and operations;

    d.  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e.  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    f.  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    g.  approved or ratified these statements in violation of the federal securities laws.

17.     AmTrust is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to AmTrust under *respondeat superior* and agency principles.

19.     Defendant AmTrust and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     AmTrust, through its subsidiaries, underwrites and provides property and casualty insurance in the United States and internationally. It operates in three segments: Small Commercial Business; Specialty Risk and Extended Warranty; and Specialty Program. AmTrust Financial Services, Inc. distributes its policies through a network of retail and wholesale agents, as well as through third-party brokers, agents, retailers, or administrators.

21.     On February 29, 2016, AmTrust filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K"). The 2015 10-K stated in relevant part:

> Management has evaluated the effectiveness of our internal control over financial reporting as of December 31, 2015, based on the control criteria established in a report entitled Internal Control — Integrated Framework (2013), issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on such evaluation, ***the CEO and CFO have concluded that our internal control over financial reporting is effective as of December 31, 2015.***

(Emphasis added.)

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on May 10, 2016, when AmTrust filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q"). For the quarter, AmTrust reported net income of $109.05 million, or $0.56 per diluted share, on revenue of $1.27 billion, compared to

net income of $160.07 million, or $0.93 per diluted share, on revenue of $1.11 billion for the same period in the prior year.

23. In the Q1 2016 10-Q, AmTrust stated, in relevant part:

> Our management, with the participation and under the supervision of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective in ensuring that information required to be disclosed by us in the reports we file or submit under the Exchange Act is timely recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.
>
> During the most recent fiscal quarter, there have been no changes in our internal controls over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

24. The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25. On August 9, 2016, AmTrust filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q"). For the quarter, AmTrust reported net income of $146.37 million, or $0.78 per diluted share, on revenue of $1.38 billion, compared to net income of $79.39 million, or $0.42 per diluted share, on revenue of $1.11 billion for the same period in the prior year.

26. In the Q2 2016 10-Q, AmTrust stated, in relevant part:

> Our management, with the participation and under the supervision of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of

> our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective in ensuring that information required to be disclosed by us in the reports we file or submit under the Exchange Act is timely recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.
>
> During the most recent fiscal quarter, there have been no changes in our internal controls over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

27. The Q2 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28. On November 14, 2016, AmTrust filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q"). For the quarter, AmTrust reported net income of $115.13 million, or $0.60 per diluted share, on revenue of $1.41 billion compared to net income of $191.50 million, or $1.09 per diluted share, on revenue of $1.23 billion for the same period in the prior year.

29. In the Q3 2016 10-Q, AmTrust stated in relevant part:

> Our management, with the participation and under the supervision of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective in ensuring that information required to be disclosed by us in the reports we file or

> submit under the Exchange Act is timely recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.
>
> During the most recent fiscal quarter, there have been no changes in our internal controls over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

30. The Q3 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31. The statements referenced in ¶¶ 22-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AmTrust had ineffective assessment of the risks associated with its financial reporting; (ii) the Company had an insufficient complement of corporate accounting and corporate financial reporting resources within the organization; (iii) in turn, the Company lacked effective internal controls over financial reporting; and (iv) as a result of the foregoing, AmTrust's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

32. On February 27, 2017, AmTrust issued a press release, attached as Exhibit 99.1 on Form 8-K filed with the SEC, entitled "AmTrust Financial Services, Inc. Reports Fourth Quarter 2016 Net Income Per Diluted Share of $0.57 and Operating Earnings Per Diluted Share

of $0.38, Reflecting Strengthening of Reserves." In the press release, the Company stated in relevant part:

> **Update on Anticipated Timing of 10-K Filing**
>
> On or before March 1, 2017, AmTrust intends to file a Form 12b-25 with the Securities and Exchange Commission providing the Company an automatic 15-day extension to file its Form 10-K for the year ended December 31, 2016. As previously disclosed, the Company appointed a new independent registered public accounting firm on April 1, 2016. Additional time is needed for the Company to complete its consolidated financial statements and assessment of internal controls over financial reporting for the fiscal year ended December 31, 2016, and, as a consequence, for the Company's auditor, KPMG LLP, to complete its audit procedures and audit of the consolidated financial statements included in the Form 10-K. The Company expects to file the Annual Report on Form 10-K within the 15-day extension period provided by Rule 12b-25.
>
> In addition, the Company expects to make immaterial corrections to errors in its financial statements for fiscal years ended December 31, 2015 and 2014 and certain financial information for fiscal years ended December 31, 2013 and 2012 for inclusion in the Form 10-K and these processes have not been completed. The Company is still evaluating corrections to its historical quarterly financial statements within these fiscal years. For a further explanation, please see footnote (1) below.
>
> In connection with the foregoing, ***the Company expects to disclose in the Form 10-K that, as part of its evaluation of its internal controls over financial reporting as required by Section 404 of the Sarbanes-Oxley Act of 2002, the Company identified material weaknesses in its internal control over financial reporting that existed as of December 31, 2016, specifically related to ineffective assessment of the risks associated with the financial reporting, and an insufficient complement of corporate accounting and corporate financial reporting resources within the organization.*** As the Company completes the preparation of its financial statements and the related audit process for fiscal year 2016, additional adjustments and/or material weaknesses could be identified. While the Company believes that significant progress has been made in enhancing internal controls as of December 31, 2016 and in the period since, the material weaknesses have not been fully remediated due to insufficient time to fully implement and assess the design and operating effectiveness of the related controls. The Company will continue the process to enhance internal controls throughout 2017.

(Emphasis added.)

33.     On that same day, *Seeking Alpha* published the Company's earnings call transcript, in which Defendant Pipoly discussed the Company's Fourth Quarter 2016 results with investors, stating in relevant part:

> In addition as part of our year-end close work, ***we've reviewed our internal controls of our financial reporting as required by Section 404 of the Sarbanes-Oxley Act of 2002 and identif[ied] material weaknesses in our internal control structure over financial reporting.***
>
> ***These specifically relate to ineffective assessment of risk associated with financial reporting in an insufficient complement of corporate accounting and corporate financial reporting resources within the organization.***
>
> We expect to complete the remaining work quickly and file the 10-K within allot 15 day expansion period. We've started the process to improve our internal controls over financial reporting. We are expanding and enhancing our senior financial leadership team so we have the expertise and resources AmTrust need[s].

(Emphasis added.)

34.     On this news, AmTrust's share price fell $5.32, or 19.23%, to close at $22.34 on February 27, 2017.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired AmTrust securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, AmTrust securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by AmTrust or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AmTrust;

- whether the Individual Defendants caused AmTrust to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AmTrust securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AmTrust securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold AmTrust securities between the time the Defendants failed to disclose or misrepresented

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AmTrust securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AmTrust securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AmTrust securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AmTrust's finances and business prospects.

49.     By virtue of their positions at AmTrust, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers

and/or directors of AmTrust, the Individual Defendants had knowledge of the details of AmTrust's internal affairs.

51. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of AmTrust. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AmTrust's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AmTrust securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning AmTrust's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AmTrust securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52. During the Class Period, AmTrust securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AmTrust securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff

and the Class, the true value of AmTrust securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of AmTrust securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

55.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.    During the Class Period, the Individual Defendants participated in the operation and management of AmTrust, and conducted and participated, directly and indirectly, in the conduct of AmTrust's business affairs.  Because of their senior positions, they knew the adverse non-public information about AmTrust's misstatement of income and expenses and false financial statements.

57.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to

AmTrust's financial condition and results of operations, and to correct promptly any public statements issued by AmTrust which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AmTrust disseminated in the marketplace during the Class Period concerning AmTrust's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AmTrust to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of AmTrust within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AmTrust securities.

59.     Each of the Individual Defendants, therefore, acted as a controlling person of AmTrust.  By reason of their senior management positions and/or being directors of AmTrust, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AmTrust to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of AmTrust and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AmTrust.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 1, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein (not admitted)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

**Submission Date**

2017-03-01 09:00:26

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.
2. I have reviewed a Complaint against AmTrust Financial Services, Inc. ("AmTrust" or the "Company") and authorize the filing of a comparable complaint on my behalf.
3. I did not purchase or acquire AmTrust securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.
4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired AmTrust securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.
5. To the best of my current knowledge, the attached sheet lists all of my transactions in AmTrust securities during the Class Period as specified in the Complaint.
6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.
7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.
8. I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Joel Rubel

## Acquisitions



(see attached)

## Sales

## Documents & Message

(redacted)
[redacted]

**Signature**

**Full Name**

Joel Rubel

(redacted)
[redacted]



**AMTRUST FINANCIAL SERVICES, INC. (2017) (AFSI)** **Rubel, Joel**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 7/19/2016 | Purchase | 1.897 | $25.3000 |
| 10/19/2016 | Purchase | 1.976 | $27.6930 |
| 1/19/2017 | Purchase | 2.022 | $27.2300 |