UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
JOEL RUBEL, Individually and on Behalf of     : Civil Action No. 1:17-cv-01545-LAK
All Others Similarly Situated,                :
                                              : <u>CLASS ACTION</u>
                           Plaintiff,         :
                                              :
        vs.                                   :
                                              :
AMTRUST FINANCIAL SERVICES, INC.,             :
BARRY D. ZYSKIND and RONALD E.                :
PIPOLY JR.,                                   :
                                              :
                           Defendants.        :
----------------------------------------------------------------
JOHN SACHETTI, Individually and on Behalf     : Civil Action No. 1:17-cv-02001-LAK
of All Others Similarly Situated,             :
                                              : <u>CLASS ACTION</u>
                           Plaintiff,         :
                                              :
        vs.                                   :
                                              :
AMTRUST FINANCIAL SERVICES, INC.,             :
BARRY D. ZYSKIND and RONALD E.                :
PIPOLY JR.,                                   :
                                              :
                           Defendants.        :
----------------------------------------------------------------x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NEW ENGLAND
CARPENTERS FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

1268224_1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. The New England Carpenters Funds Have the Largest Financial Interest and Are the Presumptive Lead Plaintiff..................................................................3

    B. The AmTrust Investor Group's Request to Be Appointed Co-Lead Plaintiff Should Be Denied .................................................................................5

    C. Sharon Albano's Request for Appointment as Co-Lead Plaintiff Should Also Be Denied ...............................................................................................10

III. CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

                                                                                                                              Page

**CASES**

*Averdick v. Hutchinson Tech., Inc.*,
    2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006) ............................................................8

*Beckman v. Ener1, Inc.*,
    2012 WL 512651 (S.D.N.Y. Feb. 15, 2012) .............................................................................4

*Bodri v. Gopro, Inc.*,
    2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ......................................................................7, 9

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) .............................................................................................8

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) .........................................................................................4, 5

*Fishbury, Ltd. v. Connetics Corp.*,
    2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ......................................................................8, 9

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................6

*Frank v. Dana Corp.*,
    237 F.R.D. 171 (N.D. Ohio 2006) ...........................................................................................4

*Greenberg v. Bear Sterns & Co.*,
    80 F. Supp. 2d 65 (S.D.N.Y. 2000) .......................................................................................10

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ........................................................................................1, 2, 8, 10

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .......................................................................................2, 3, 4, 9

*In re Cendant Corp. Litig.*,
    182 F.R.D. 144 (D.N.J. 1998) .............................................................................................7, 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..................................................................................................2, 8

Page

*In re Century Bus. Servs., Sec. Litig.*,
    202 F.R.D. 532 (N.D. Ohio 2001) ..................................................................................10

*In re Dynegy, Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 27858 (S.D. Tex. Oct. 28, 2002) ................................................8

*In re Enron Corp., Sec, Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) ....................................................................................7

*In re Fannie Mae Sec. Litig.*,
    355 F. Supp. 2d 261 (D.D.C. 2006) ................................................................................6

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) ....................................................................................5

*In re MicroStrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) .............................................................................8

*In re Nw. Corp. Sec. Litig.*,
    299 F. Supp. 2d 997 (D.S.D. 2003) ................................................................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................8

*In re Surebeam Corp. Sec. Litig.*,
    2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ....................................................................9

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
    2016 WL 2986235 (S.D.N.Y. May 13, 2016), *reconsideration denied*, 2016
    WL 2997119 (S.D.N.Y. May 19, 2016) .................................................................5, 8, 10

*In re Waste Mgmt., Inc.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ............................................................................8

*In re XM Satellite Radio Holdings Sec. Litig.*,
    237 F.R.D. 13 (D.D.C. 2006) ......................................................................................7, 8

*Irving Firemen's Relief and Ret. Fund v. Tesco PLC*,
    2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ................................................................7

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015) ....................................................................8

1268224_1

**Page**

*Kinney v. Capstone Turbine Corp.*,
    2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ................................................................. 4

*Porzio v. Overseas Shipholding Grp.*,
    2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ..................................................................... 7

*Randall v. Fifth Street Fin. Corp.*,
    2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ..................................................................... 3

*Reimer v. Ambac Fin. Grp., Inc.*,
    2008 WL 2073931 (S.D.N.Y. May 9, 2008) .................................................................. 6

*Reinschmidt v. Zillow, Inc.*,
    2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) ........................................................ 5, 6

*Schueneman v. Arena Pharm., Inc.*,
    2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................................................................. 8

*Smilovits v. First Solar, Inc.*,
    2012 WL 3002513 (D. Ariz. July 23, 2012) ........................................................... 3, 4, 5

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) ................................................................................... 7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k ................................................................................................................................ 7
    §78j(b) ............................................................................................................................ 7
    §78u-4(a)(3)(B)(iii)(I) ................................................................................................ 3, 5
    §78u-4(a)(3)(B)(iii)(II) ................................................................................................... 2

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................................... 3

1268224_1

**I.     INTRODUCTION**

One competing lead plaintiff movant disputes that the New England Carpenters Guaranteed Annuity and Pension Funds (the "New England Carpenters Funds") are the presumptive lead plaintiff because when disaggregated, the Funds do not have the single greatest loss of any individual entity. *See* Dkt. No. 34 at 4-5. This effort to artificially reduce the New England Carpenters Funds' losses to just less than the Boilermaker-Blacksmith National Pension Trust's (the "Boilermaker Trust") loss is disingenuous as the Funds are not unaffiliated entities joined by counsel just for the purpose of attaining the largest financial interest; they are affiliated Funds whose Certification was signed by a single individual and are effectively acting as one entity before the Court. *See* Dkt. No. 22-4. The New England Carpenters Funds share a single website, share the exact same trustees, are funded by contributions from the same group of employers, provide benefits to the same group of carpenters, have the same asset allocations, hire the same investment managers through a join investment committee, and make the exact same investments prorated based on each fund's total assets.[1] As such, it is entirely proper to consider their collective losses, which Boilermaker Trust concedes are greater than its own. *See* Dkt. No. 34 at 4.

The only other remaining movants, the AmTrust Investor Group and Sharon Albano, do not oppose the New England Carpenters Funds' appointment as lead plaintiff; instead, the Group and Ms. Albano advocate they each should be appointed *co*-lead plaintiff alongside the Funds (and, of course, their counsel appointed co-lead counsel). *See* Dkt. Nos. 36 at 1-2; 38. These requests are contrary to Second Circuit law, and courts regularly deny requests for appointment as co-lead plaintiff to represent "niche" investors because "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v.*

---

[1]   *See* http://www.carpentersfund.org/.

*Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). "Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim" and "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Id.* at 82-83. The AmTrust Investor Group and Ms. Albano's requests should be denied here.

No movant has credibly challenged the New England Carpenters Funds' motion. Their motion should be granted.

## II.  ARGUMENT

To rebut the presumption in favor of the New England Carpenters Funds' appointment as lead plaintiff, the PSLRA requires the other movants to submit "proof" that the Funds "will not fairly and adequately protect the interests of the class," or "[are] subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Importantly, "once the presumption is triggered, the question is *not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can *prove* that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (stressing that the "inquiry *is not* a relative one"); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (presumption rebuttable only upon "proof").[2]

Here, no proof exists and none was proffered.

---

[2]  Unless otherwise noted, all emphasis is added and citations are omitted.

### A. The New England Carpenters Funds Have the Largest Financial Interest and Are the Presumptive Lead Plaintiff

The Boilermaker Trust contends that it suffered a greater loss than the New England Carpenters Funds *if* the Funds' losses are disaggregated. *See* Dkt. No. 34 at 4. The Boilermaker Trust's attempt to artificially bifurcate the New England Carpenters Funds' financial interest lacks any merit. Indeed, the PSLRA specifically states that the presumptive lead plaintiff shall be "the person *or group of persons* that . . . has the largest financial interest in the relief sought by the class" and that "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). "Thus, the statute itself makes clear that the losses of a group may be considered in determining the largest financial interest." *Smilovits v. First Solar, Inc.*, 2012 WL 3002513, at *2 (D. Ariz. July 23, 2012) (declining to disaggregate losses suffered by related entities for purposes of largest financial interest analysis); *Cavanaugh*, 306 F.3d at 739 (directing district court on remand to "proceed based on the presumption that the Cavanaugh group is the most adequate plaintiff").

The Boilermaker Trust cites a single case in support of its attempt to induce the Court to consider the New England Carpenters Funds' losses separately, *Randall v. Fifth Street Fin. Corp.*, 2016 WL 462479, at *2 (S.D.N.Y. Feb. 1, 2016), which, to its credit, Boilermaker Trust concedes is inapposite as the Court held it would "not combine the losses of the two individuals *because they were complete strangers* brought together by their proposed counsel to maximize their losses." *See* Dkt. No. 34 at 4-5 n.3. Boilermaker Trust does not contend – nor could it – that the New England Carpenters Funds are complete strangers. To the contrary, the New England Carpenters Funds are affiliated and acting as a single entity before the Court as their Certification was signed by a single individual, they share a single website, share the exact same trustees, are funded by contributions from the same group of employers, provide benefits to the same group of carpenters, have the same

asset allocation, hire the same investment managers through a join investment committee, and make the exact same investments prorated based on each fund's total assets. *See* Dkt. No. 22-4.

In situations like this, courts regularly decline to disaggregate losses suffered by affiliated funds. *See Smilovits*, 2012 WL 3002513, at *2; *Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) (on reconsideration, finding that court "mistakenly misconstrued" loss figures because one movant "separated out the LIFO losses of the PTFG's individual member groups, effectively understating those figures" and that court "should have considered their losses in the aggregate"); *see also Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *4 (C.D. Cal. Feb. 29, 2016) (finding a married couple "represent the quintessential cohesive unit fit to qualify together as an adequate lead plaintiff"); *Beckman v. Ener1, Inc.*, 2012 WL 512651, at *4 (S.D.N.Y. Feb. 15, 2012) (disaggregating losses by group of strangers but considering the combined losses of a group "composed solely of family members").

Boilermaker Trust grasps at one final straw, pointing out that the New England Carpenters Funds' aggregated loss is "only" $70,000 greater than its own loss, and that negligible difference supports disaggregation. Dkt. No. 34 at 5-6. The Boilermaker Trust tellingly cites no authority for this proposition. Of course, this position is untenable as the PSLRA makes clear that once the Court "determines which plaintiff has the biggest stake, the court ***must*** appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 732.

In *Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004), a competing movant contended, like Boilermaker Trust does here, that a "'de minimus' difference of $ 26,000 should not be conclusive on the financial interest determination." *Id*. at 605. The court rejected this argument, finding that "the Ninth Circuit has given no indication that courts are free to ignore the statutory presumption

- 4 -

given to the plaintiff with the 'largest financial interest in the relief sought by the class.'" *Id.* (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 118 (E.D.N.Y. 2012) (finding that $32,671 difference in losses "is not negligible"). "To the contrary, it has instructed the lower courts to strictly adhere to the statutory process." *Ferrari*, 225 F.R.D. at 605.

Stated simply, the notion that a $70,000 difference between the New England Carpenters Funds' loss and Boilermaker Trust's loss does not constitute a larger loss defies logic and reality. *See Smilovits*, 2012 WL 3002513, at *2 (rejecting competing movant's contention that 2.9% difference between losses rendered losses "essentially equal" and declining to find that movant with the 2.9% smaller loss should be appointed lead plaintiff); *Reinschmidt v. Zillow, Inc.*, 2013 WL 1092129, at *2 (W.D. Wash. Mar. 14, 2013) (finding that movant's "$33,758 (or 14%) greater . . . claimed loss amount is determinative").

There is no dispute that the New England Carpenters Funds suffered the largest loss and they are the presumptive lead plaintiff. Boilermaker Trust does not challenge the New England Carpenters Funds' motion on any other basis. Accordingly, the New England Carpenters Funds should be appointed Lead Plaintiff.

> **B.     The AmTrust Investor Group's Request to Be Appointed Co-Lead Plaintiff Should Be Denied**

The AmTrust Investor Group – an assemblage of unaffiliated individuals and entities that failed to provide any evidence of cohesion with either its motion or opposition – does not oppose the New England Carpenters Funds' appointment as lead plaintiff. *See* Dkt. No. 36.[3] Rather, the

---

[3]     *See In re Third Ave. Mgmt. LLC Sec. Litig.*, 2016 WL 2986235, at *2 (S.D.N.Y. May 13, 2016), *reconsideration denied*, 2016 WL 2997119 (S.D.N.Y. May 19, 2016) (finding that movant did not "warrant[]recognition as a group" because it "is comprised of four individual investors, . . . none of

- 5 -

AmTrust Investor Group suggests it is "necessary to appoint *co-*lead plaintiffs and *co-*lead counsel to separately represent classes consisting of common and preferred stockholders." *Id.* at 1. This contention is particularly curious as ***no mention of any purported conflict was made in the AmTrust Investor Group's motion***. *See* Dkt. No. 24. Nonetheless, there is no need for "co-lead" plaintiffs or counsel in this case.

Indeed, the AmTrust Investor Group admits, as it must, the possibility of any conflict is entirely speculative and remote. *See* Dkt. No. 36 at 4 ("While ***AmTrust's liquidation does not appear imminent***, the possibility certainly exists, given the implosion of the company's value."). As the AmTrust Investor Group's own authority holds, hypothetical conflicts are plainly insufficient under the PSLRA to either rebut the most adequate plaintiff presumption or warrant the appointment of a co-lead plaintiff. *See id.* at 1-2 (citing *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff.")); *see also Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (the "conflict of interest must be shown" not "theoretical"); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2006) (rejecting a party's challenge to a prospective lead plaintiff because the movants "offer[ed] no proof" of how potential conflicts would become actual conflicts and because their arguments were "too speculative and hypothetical to rebut the presumption").

Moreover, the AmTrust Investor Group's attempt to conjure the specter of a potential conflict is concerning as it exposes antagonism within the Group itself; indeed, the Group member that suffered the greatest loss only purchased common stock, not preferred stock. *See* Dkt. No. 25-3

---

whom allege a common connection other than sharing claims held by all members of the putative class and being represented by the same lawyers").

(evidencing that common stock investors suffered $104,799 in losses while preferred stock investors suffered $64,934 in losses).

Regardless of the hypothetical conflict the AmTrust Investor Group suggests might (or might not) exist at some point in the future, even in cases in which the corporate entity had already declared bankruptcy, "[c]ourts have frequently found that a stockholder can adequately represent a bondholder and vice versa." *Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at *4 (S.D.N.Y. Feb. 1, 2013) (further finding that group "has not argued convincingly that the bondholders' interest in OSG's bankruptcy estate will undermine their ability or willingness to forcefully advocate the PSLRA claims at issue in this litigation"); *In re Enron Corp., Sec, Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by preferred stockholders, bondholders, and other securities holders that separate classes and separate lead counsel were required for each type of security because "[t]aken to its logical extreme," such an "argument that each group of [securities] . . . requires a different class or subclass and separate Lead Plaintiff would fracture this litigation into hundreds of classes or subclasses and obstruct any efficient and controlled progress").[4] "'[T]he fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs.'" *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016).

---

[4] *See also Irving Firemen's Relief and Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *4-*5 (S.D.N.Y. Mar. 19, 2015) (finding argument that movant should be appointed co-lead plaintiff because he purchased a distinct security from the presumptive lead plaintiff "unpersuasive"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (denying movant's request for "appointment as niche plaintiff" as it "would add to the expense of the litigation" and "is not warranted under the circumstances"); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006) (declining movants' request for appointment of separate lead plaintiff based on nature of investment); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) (rejecting movants' request to "appoint co-lead plaintiffs – one to represent the section 11 claimants and one to represent the section 10(b) claimants"); *In re Nw. Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1007 (D.S.D. 2003) (finding that presumptive lead plaintiff "need not have suffered a loss on each type of security at issue to serve as the Lead Plaintiff in this litigation"); *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998) (recognizing that "representation by a disparate

In an analogous situation, a movant with one of the smallest financial interests contended that he should be appointed lead plaintiff because he purchased all of the securities at issue in the case and was therefore "'in the best position to represent **all** class members.'" *Third Ave.*, 2016 WL 2986235, at *3 (emphasis in original). The court rejected the movant's argument "that a lead plaintiff under the PSLRA must have standing to sue on every available cause of action" as "a position that the Second Circuit has explicitly rejected." *Id.* (citing *Hevesi*, 366 F.3d at 82 ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.")). As the court in *Cendant* similarly recognized:

> More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individual interest is represented. Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over others. On the other hand, representation by a disparate group of plaintiffs, each seeking only a protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

182 F.R.D. at 148; *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011) ("Being a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.") (citing *Hevesi*, 366 F.3d at 82).[5]

---

group of plaintiffs, each seeking only the protection of its own interests, could well hamper the force and focus of the litigation" and "[a] balance must be struck").

[5] *See also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015) (denying request for creation of subclass for different securities at lead plaintiff stage); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (same); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) (same); *Fishbury, Ltd. v. Connetics Corp.*, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006) (denying request by purchaser of different security for appointment as co-lead plaintiff); *XM Satellite*, 237 F.R.D. at 20 (same); *Averdick v. Hutchinson Tech., Inc.*, 2006 U.S. Dist. LEXIS 47445, at *17-*20 (D. Minn. Feb. 9, 2006) (same); *In re Dynegy, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27858, at *17-*18 (S.D. Tex. Oct. 28, 2002) (same); *In re Waste Mgmt., Inc.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (same); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 51 (S.D.N.Y. 1998) (same).

Particularly in light of the AmTrust Investor Group's relatively small financial interest in this litigation, its "'speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs . . . , but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds.'" *Bodri*, 2016 WL 1718217, at *6 (quoting *Fishbury*, 2006 WL 3711566, at *4). Indeed, "the lead plaintiff in a securities class action has 'a responsibility to identi[f]y and include named plaintiffs who have standing to represent the various potential subclasses of plaintiffs who may be determined, at the class certification stage, to have distinct interests or claims.'" *Fishbury*, 2006 WL 3711566, at *4.

Nor can the Court disregard the statutory scheme merely because it may believe that the AmTrust Investor Group reflects the putative plaintiff class better than the New England Carpenters Funds, or even because the Court may believe that the AmTrust Investor Group would do a better job litigating the case: "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.

"While a conflict of interest is an adequate reason to appoint niche lead plaintiffs, the court may not rely on speculations about possible future conflicts." *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *10 (S.D. Cal. Jan. 5, 2004). Rather, the "statute presumes that 'one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories.'" *Id.* Here, all the AmTrust Investor Group has proffered is a hypothetical conflict that might, or might not, arise in the future. That is insufficient to either rebut the presumption or warrant the appointment of a co-lead plaintiff. The AmTrust Investor Group's motion as modified by its opposition should be denied.

- 9 -

     **C.**    **Sharon Albano's Request for Appointment as Co-Lead Plaintiff Should Also Be Denied**

Like the AmTrust Investor Group, Ms. Albano also requests appointment as co-lead plaintiff to represent investors that purchased stock pursuant to a secondary public offering with Securities Act of 1933 claims. *See* Dkt. No. 38. This request should be denied for the same reasons as the AmTrust Investor Group's co-lead plaintiff request. *See supra* §II.B; *see also Greenberg v. Bear Sterns & Co.*, 80 F. Supp. 2d 65, 70 (S.D.N.Y. 2000) ("When attempting to resolve who is the most adequate plaintiff to represent the class, the Court is of the view that the largest financial interest of the class should be considered, not the largest financial interest of separate sub classes."); *cf. In re Century Bus. Servs., Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001) (plaintiffs "cannot simply define the class they seek to represent . . . [or] shrink the kingdom until they are king").

Indeed, Ms. Albano's "concern with standing can be protected in other ways." *Third Ave.*, 2016 WL 2986235, at *3. "Rather than ignoring the plaintiff with the largest financial interest in favor of a plaintiff with standing to sue on all claims – an approach that runs counter to the PSLRA – a lead plaintiff may, consistent with the PSLRA, add 'named plaintiffs to aid the lead plaintiff in representing a class.'" *Id.* (quoting *Hevesi*, 366 F.3d at 83 (citing cases)). There is no need for an additional co-lead plaintiff in this case. Ms. Albano's motion should also be denied.

**III.   CONCLUSION**

The New England Carpenters Funds are the presumptive lead plaintiff and that presumption has not been rebutted. The New England Carpenters Funds' motion should be granted. The other motions should be denied.

DATED: May 22, 2017                     Respectfully submitted,

                                                 s/ David A. Rosenfeld
                                                  DAVID A. ROSENFELD

        ROBBINS GELLER RUDMAN & DOWD LLP
        SAMUEL H. RUDMAN
        DAVID A. ROSENFELD
        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)
        srudman@rgrdlaw.com
        drosenfeld@rgrdlaw.com

        ROBBINS GELLER RUDMAN
          & DOWD LLP
        DANIELLE S. MYERS
        655 West Broadway, Suite 1900
        San Diego, CA  92101
        Telephone:  619/231-1058
        619/231-7423 (fax)
        dmyers@rgrdlaw.com

        [Proposed] Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 22, 2017.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:drosenfeld@rgrdlaw.com

1268224_1

# Mailing Information for a Case 1:17-cv-01545-LAK Rubel v. AmTrust Financial Services, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Mark Adam Kirsch**
  mkirsch@gibsondunn.com,aarias@gibsondunn.com,MAO@gibsondunn.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Thomas James McKenna**
  tjmlaw2001@yahoo.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,dawn.hartman@ksfcounsel.com,kimmiller225@yahoo.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph R. Seidman**
  seidman@bernlieb.com

- **Steven Jeffrey Toll**
  stoll@cohenmilstein.com,afarra@cohenmilstein.com,efilings@cohenmilstein.com,dsommers@cohenmilstein.com

- **Lawrence Jay Zweifach**
  lzweifach@gibsondunn.com,aarias@gibsondunn.com,MAO@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`