UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                                      :
                                      :
                                      :
In re AMTRUST FINANCIAL SERVICES,     :
INC. SECURITIES LITIGATION            :
                                      :
                                      :      No. 17-cv-01545 (LAK)
                                      :
------------------------------------- :      CLASS ACTION
                                      :
                                      :
This Document Applies To:             :
                                      :
         All Cases                    :
                                      :
                                      :
------------------------------------- X


**MEMORANDUM IN SUPPORT OF DEFENDANT BDO USA, LLP'S
MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**


Dated: New York, New York          DLA PIPER LLP (US)
       October 17, 2017            Timothy E. Hoeffner (TH-4195)
                                   timothy.hoeffner@dlapiper.com
                                   1251 Avenue of the Americas
                                   New York, New York 10020
                                   Tel.:   212.335.4500

                                   Lawrence A. Wojcik*
                                   lawrence.wojcik@dlapiper.com
                                   444 W. Lake Street, Suite 900
                                   Chicago, Illinois 60606
                                   Tel.:   312.368.4000

                                   * Admitted *pro hac vice*

                                   Attorneys for Defendant
                                   BDO USA, LLP

**Table of Contents**

Page

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND...................................................................................3

    A.    The Parties .................................................................................3

    B.    Summary of Factual Allegations ................................................3

        1.    BDO's Audit Opinions .....................................................3

        2.    AmTrust's Restatement ....................................................5

        3.    The Wall Street Journal Article..........................................7

    C.    Summary of Claims Against BDO ..............................................8

    D.    Procedural Background .............................................................8

PLEADING STANDARD .....................................................................................8

ARGUMENT ......................................................................................................9

I.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE A MATERIAL
MISSTATEMENT BY BDO .........................................................................10

    A.    BDO's Audit Opinions are Statements of Opinion, Not Fact ............10

    B.    Section 11 Liability for Statements of Opinion Under Omnicare ......14

        1.    Plaintiffs' Allegations that AmTrust's Financial Statements were
Misstated are Insufficient to State a Claim Against BDO ......15

        2.    Plaintiffs' Allegations that AmTrust's Internal Controls over
Financial Reporting were Ineffective are Insufficient to State a
Claim Against BDO ........................................................18

        3.    Plaintiffs' Allegations that BDO's Audit Opinions were Not
Prepared in Accordance with Professional Standards are
Insufficient to State a Claim Against BDO ...........................19

II.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE A MATERIAL OMISSION
BY BDO...................................................................................................23

    A.    Plaintiffs' Omission Allegations are Too Conclusory to State a Claim ..............23

    B.    Plaintiffs' Omission Claim Draws Factual Support Solely From an
Uncorroborated News Article.......................................................25

CONCLUSION...................................................................................................27

**Table of Authorities**

Page(s)

Cases

*Applestein v. Medivation, Inc.*,
  861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014) ................21

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................... 9, 23, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................................................ passim

*Caldwell v. Berlind*,
  543 F. App'x 37 (2d Cir. 2013) .........................................................................................24

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  129 F. Supp. 3d 48 (S.D.N.Y. 2015) ..............................................................................9, 14

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  No. 12-cv-0256, 2016 WL 6652731, at *8 (S.D.N.Y. Nov. 10, 2016) ..........................15, 23

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,
  454 F.3d 1168 (10th Cir. 2006)......................................................................................17, 18

*Dobina v. Weatherford Int'l Ltd.*,
  909 F. Supp. 2d 228 (S.D.N.Y. 2012) ...............................................................................19

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)........................11

*In re AgriBio Tech Sec. Litig.*,
  No. 99-cv-144, 2000 WL 1277603 (D. Nev. Mar. 2, 2000)..................................................11

*In re Allied Nevada Gold Corp.*,
  No. 314-cv-175, 2016 WL 4191017 (D. Nev. Aug. 8, 2016)..........................................21, 22

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
  No. 08-cv-4772, 2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013) ............................................19

*In re Coty Inc. Sec. Litig.*,
  No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).......................................24, 26

*In re Fannie Mae 2008 Sec. Litig.*,
  742 F. Supp. 2d 382 (S.D.N.Y. 2010) ...............................................................................20

Page(s)

*In re IAC/InterActiveCorp Sec. Litig.*,
   695 F. Supp. 2d 109 (S.D.N.Y. 2010) ................................................................. 21, 26

*In re IndyMac Mortg.-Backed Sec. Litig.*,
   718 F. Supp. 2d 495 (S.D.N.Y. 2010) ............................................................................ 22

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
   No. 14-cv-9826, 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) .................................................. 8, 9

*In re Lehman Bros. Sec. & Erisa Litig.* ("*Lehman I*"),
   799 F. Supp. 2d 258 (S.D.N.Y. 2011) ..................................................................... passim

*In re Lehman Bros. Sec. & Erisa Litig.* ("*Lehman II*"),
   131 F. Supp. 3d 241 (S.D.N.Y. 2015) ............................................................................ 13, 17

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   910 F. Supp. 2d 561 (S.D.N.Y. 2012) ........................................................................... 20, 23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003) ............................................................................ 15

*In re Petrobras Sec. Litig.*,
   No. 14-cv-9662, 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016) ............................................. 17

*In re Puda Coal Sec. Inc. Litig.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Moore Stephens Hong
   Kong*, 649 F. App'x 55 (2d Cir. 2016) (Summary Order) ................................................ 16, 17

*In re Smith Gardner Sec. Litig.*,
   214 F. Supp. 2d 1291 (S.D. Fla. 2002) ............................................................................. 11

*In re UBS AG Sec. Litig.*,
   No. 07-cv-11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City
   of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir.
   2014) ...................................................................................................................... 21

*Johnson v. CBD Energy Ltd.*,
   No. 15-cv-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) ............................................. 17

*Milman v. Box Hill Sys. Corp.*,
   72 F. Supp. 2d 220 (S.D.N.Y. 1999) ............................................................................. 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   — U.S. —, 135 S. Ct. 1318 (2015) ..................................................................... passim

*Pearlstein v. BlackBerry Ltd.*,
   93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 23 (2d Cir. 2016) ........................ 11

Page(s)

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010) ...................................................................24

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
    No. 08-cv-10841, 2010 WL 4903619 (S.D.N.Y. Dec. 1, 2010) ............................24

*Querub v. Moore Stephens Hong Kong*,
    649 Fed. App'x. 55 (2d Cir. 2016) (Summary Order) ...................................passim

*S.E. Pa. Transp. Auth. v. Orstown Fin. Servs., Inc.*,
    2015 WL 3833849 (M.D. Pa. June 22, 2015) ......................................................18

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87, 115 S. Ct. 1232 (1995) ............................................................ 10, 11

*Soto v. Morgan Stanley Dean Witter & Co.*,
    No. 01-cv-7611, 2001 WL 958929 (S.D.N.Y. Aug. 21, 2001) ............................21

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ..................................................................18

*Special Situations Fund III, L.P. v. Deloitte Touche Tohmatsu CPA, LTD.*,
    645 Fed. App'x. 72 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 186 (2016) ........................passim

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007) ............................................................3, 9

*Thor Power Tool Co. v. C. I. R.*,
    439 U.S. 522, 99 S. Ct. 773 (1979) .............................................................. 10, 11

*Wilson v. MicroFinancial, Inc.*,
    No. 03-cv-11883, 2006 WL 1650971 (D. Mass. June 13, 2006) ..........................11

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................................21

## Statutes, Regulations, and Rules

15 U.S.C. § 77k(a) ............................................................................................passim

AS No. 5 ..............................................................................................................12

AU § 110.03 .........................................................................................................12

AU § 150.04 .........................................................................................................12

AU § 230.10 .........................................................................................................12

Page(s)

AU § 230.13 ...................................................................................................12

AU § 312.03 .............................................................................................12, 13

AU § 508.03 ...................................................................................................12

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 8, 9

Defendant BDO USA, LLP ("BDO"), respectfully submits this memorandum of law in support of its motion to dismiss with prejudice the single claim asserted against it in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' Consolidated Amended Complaint ("CAC") includes a single cause of action against BDO under section 11 of the Securities Act of 1933, 15 U.S.C. § 77k(a), for alleged misstatements or omissions of material fact in the offering materials for two public offerings of AmTrust, Inc. ("AmTrust"):  (1) a common stock offering issued in November 2015 and (2) a preferred stock offering issued in September 2016.  Plaintiffs focus their allegations on AmTrust's March 16, 2017 announcement that its financial statements should no longer be relied upon and its subsequent announcement of a restatement of those financial statements for reasons primarily related to revenue recognition.

Following the United States Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, — U.S. —, 135 S. Ct. 1318 (2015), the Second Circuit Court of Appeals has twice recognized that audit reports involve considerable subjective judgment and are thus statements of opinion—not fact.  *See Querub v. Moore Stephens Hong Kong*, 649 Fed. App'x. 55 (2d Cir. 2016) (Summary Order); *Special Situations Fund III, L.P. v. Deloitte Touche Tohmatsu CPA, LTD.*, 645 Fed. App'x. 72 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 186 (2016).  These cases are consistent with the governing auditing standards, which make clear that audit reports are "opinions" involving significant "professional judgment," provide "reasonable" rather than "absolute assurance," and are emphatically not guarantees of the accuracy of the financial statements.

Accordingly, to sustain its Securities Act claims plaintiffs are required to allege that (1) BDO "held a subjective belief inconsistent with" its opinions, or (2) BDO's opinions "'omit[ted]

material facts about the . . . inquiry into or knowledge concerning a statement of opinion, . . . if those facts conflict with what a reasonable investor would take from the statements [of opinion] itself.'" *Querub*, 649 F. App'x at 58 (quoting *Omnicare*, 135 S. Ct. at 1322).  Plaintiffs do not satisfy either test.

There is no material misstatement of fact by BDO.  Plaintiffs reference no interviews of witnesses (confidential or otherwise), and can cite no contemporaneous documents contradicting BDO's subjective belief in its audit opinions.  As clarified by the Second Circuit's recent ruling in *Querub*, 649 F. App'x at 58, merely relying on the fact of a restatement of an issuer's financial statements is not enough to satisfy the exacting standard established in *Omnicare*.  In other words, a restatement, combined with hindsight, is insufficient to suggest that the auditor believed its audit opinion to be wrong when it was issued, particularly where, as here, the restatement was made based on a technical interpretation of the accounting standards.

There is also no material omission by BDO.  Specifically, plaintiffs do not adequately plead that BDO omitted to state a fact necessary to make its opinions not misleading.  Plaintiffs' omission claims are too vague and conclusory to give rise to a plausible inference that any material facts had been omitted from BDO's opinions.

Plaintiffs' misstatement and omission claims rely extensively on statements in a newspaper article attributed to an unidentified former BDO employee.  Those statements should not be afforded any weight under the Second Circuit's standard for reliance on allegations of confidential witnesses.  But even if these statements are accepted by the Court, they are too summary in nature, and too vague and imprecise, to call into question BDO's subjective belief in or the basis for the opinions offered, or to give rise to an inference that BDO's opinions omitted material facts.

As demonstrated more fully below, the Securities Act claim against BDO should be dismissed for failure to state a claim. Because plaintiffs have already been provided ample opportunity to amend their claims, the dismissal should be with prejudice.

## FACTUAL BACKGROUND

### A.      The Parties

Defendant BDO "is the United States Member Firm of BDO International, a global accounting network, which provides its clients with advisory, audit, assurance, consulting, and tax services." CAC ¶ 27. BDO is "[h]eadquartered in Chicago, Illinois" and "operates out of more than 60 offices across the U.S." *Id.* BDO "served as AmTrust's public accounting firm" from 2006 until May 10, 2016. *Id.* ¶ 197.

Defendant AmTrust Financial Services, Inc. ("AmTrust") is a publicly traded "specialty property and casualty insurer whose products include workers' compensation, commercial automobile insurance, general liability and extended service and warranty coverage." *Id.* ¶ 22. Its principal executive offices are located in New York, NY. *Id.*

### B.      Summary of Factual Allegations[1]

#### 1.      BDO's Audit Opinions

In connection with its role as AmTrust's outside auditor, BDO "issued unqualified audit opinions on AmTrust's financial statements and its system of internal controls over financial reporting for each of the years ended December 31, 2012, 2013, 2014 and 2015." CAC ¶ 27.

---

[1] Any well-pleaded factual allegations are assumed to be true solely for purposes of this motion to dismiss and only to the extent they are not contradicted by other allegations or documents incorporated by reference, including filings with the Securities and Exchange Commission, of which the Court can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012). Public statements challenged as false or misleading under the securities laws must be evaluated "fairly and in context" rather than "in a vacuum." *Omnicare*, 135 S. Ct. at 1330–32.

BDO issued the following audit opinion with respect AmTrust for the year ending December 31, 2015:

> We have audited the accompanying consolidated balance sheets of AmTrust Financial Services, Inc. as of December 31, 2015 and 2014 and the related consolidated statements of income, comprehensive income, changes in stockholders' equity, and cash flows for each of the three years in the period ended December 31, 2015. In connection with our audits of the financial statements, we have also audited the financial statement schedules listed in the accompanying index. These financial statements and schedules are the responsibility of the Company's management. *Our responsibility is to* **express an opinion** *on these financial statements and schedules based on our audits.*

> We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). *Those standards require that we plan and perform the audit to obtain* **reasonable assurance** *about whether the financial statements are free of material misstatement.* An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements and schedules. **We believe** *that our audits provide a* **reasonable basis** *for our opinion.*

> **In our opinion**, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of AmTrust Financial Services, Inc. at December 31, 2015 and 2014, and the results of its operations and its cash flows for each of the three years in the period ended December 31, 2015, in conformity with accounting principles generally accepted in the United States of America.

> Also, **in our opinion,** the financial statement schedules, when considered in relation to the basic consolidated financial statements taken as a whole present fairly, in all material respects, the information set forth therein.

> We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), AmTrust Financial Services, Inc.'s internal control over financial reporting as of December 31, 2015, based on criteria established in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway

Commission (COSO) and our report dated February 29, 2016
expressed an unqualified opinion thereon.

*Id.* ¶ 204 (emphasis added).  BDO also provided a similarly worded unqualified audit opinion for

the year ending December 31, 2014.[2]  *See id.* ¶ 203.  These audit opinions "were incorporated by

reference into" offering materials filed by AmTrust with the Securities and Exchange

Commission.  *Id.* ¶ 27.

### 2.    AmTrust's Restatement

BDO was replaced by KPMG as AmTrust's independent auditors in connection with the

issuance of AmTrust's Form 10-Q for the second fiscal quarter of 2016.  CAC ¶ 307.  On

February 27, 2017, "AmTrust issued a press release announcing its financial results for the fourth

quarter 2016 and full year December 31, 2016[.]"  *Id.* ¶ 74.  In that release, AmTrust also

"announced that it would be delaying the filing of its annual report on Form 10-K for the year

ended December 31, 2016 and that it expected to make certain corrections to its financial

statements in each year dating back to fiscal year ended December 31, 2012."  *Id.*  At the time,

the corrections were expected to be "'immaterial[.]'"  *Id.* ¶ 78.

On March 16, 2017, AmTrust issued a press release, filed with the SEC on Form 8-K,

stating that the 2016 Form 10-K "'would be further delayed'" and "'more time was needed to

complete its consolidated financial statements and assessment of internal controls over financial

reporting for the fiscal year ended December 31, 2016.'"  *Id.* ¶ 82.  At that time, it also

announced that its consolidated financial statements for 2014 and 2015, as well as for the first

three quarters of 2016, "'should be restated and should no longer be relied upon.'"  *Id.* ¶ 83  It

similarly announced that its earnings and press releases for these periods, "'as well as the

---

[2]    Plaintiffs misidentify the audit reports issued by BDO for the years ending December 31, 2014 and 2015 as the "2015 BDO Opinion" and "2016 BDO Opinion."  *See* CAC ¶¶ 203–04.

Company's fourth quarter and fiscal 2016 earnings release . . . , should no longer be relied upon.'" *Id.* Finally, it announced that "the audit reports issued by BDO for . . . 2014 and 2015, including the reports on the effectiveness of AmTrust's internal control over financial reporting on those dates 'likewise should no longer be relied upon.'" *Id.* ¶ 84.

There was no suggestion of intentional misconduct in connection with the restatement. Instead, the restatement primarily related to a technical accounting issue:  AmTrust's "'upfront recognition of a portion of warranty contract revenue associated with administration services[.]'" *Id.* ¶ 85.  Specifically, AmTrust recognized a portion of the revenue from its warranty business immediately, and not over the period in which it was obligated to warrant the relevant product. *Id.* ¶ 109.   This revenue was "'previously recognized upfront, based on *management's interpretation* of accounting guidance related to multiple-element revenue recognition.'" *Id.* ¶ 75 (emphasis added); *see also id.* ¶ 85 (the "upfront recognition" of revenue was "based on [AmTrust's] *interpretation* of ASC 605") (emphasis added).   The correction also revised downward numerous expenses, which were previously recognized up front and not over the course of the relevant warranty periods. *Id.* ¶ 110.

As is evident on the face of Plaintiffs' complaint, AmTrust's use of up-front revenue recognition had been repeatedly disclosed in its SEC filings. *See* CAC ¶ 160 ("The Company recognizes revenue related to promotion, marketing and administration services *at the time of the sale* of [extended service plans].  However, the Company defers *a portion* of service revenue based upon an estimate of administrative services to be provided in the future.") (quoting 2014 Form 10-K) (emphasis added).  Moreover, despite significant probing of AmTrust's accounting practices in the press and by short-sellers, the method of recognition of revenue in the

6

Warrantech business was not one of the issues raised.  *See* CAC ¶¶ 271–80 (summarizing articles).

On April 4, 2017, AmTrust filed its 2016 Form 10-K, wherein it restated its 2012–2016 financial results.  CAC ¶ 88.  In addition to revising the accounting treatment of warranty-related income and expenses, AmTrust revised accounting treatment for several other income and expense streams.  *See id.* ¶¶ 109–23.

### 3.      The Wall Street Journal Article

On April 11, 2017, one week after AmTrust issued the 2016 Form 10-K, and a day after the class period alleged by Plaintiffs ended, *The Wall Street Journal* ("WSJ") published an article concerning AmTrust.  CAC ¶ 92.  The article's sole source was a claimed anonymous former employee of BDO.  *See id.*  The individual's role at BDO or connection to the AmTrust audits was not specified in the article.  According to the article, in 2014, the former BDO employee secretly taped several conversations "with his/her BDO colleagues about BDO's audits of AmTrust."  *Id.*  The article alleged that these "clandestine recordings . . . were part of a continuing [SEC] investigation."  *Id.*  The recordings in question were "described"—but not provided—to the WSJ.  *Id.*

The article also claimed, without reference to any source, that certain "information, which include[d] emails and internal documents," had resulted in investigations by the SEC and the FBI.  *Id.* at ¶ 216.  However, neither the article nor the CAC provide any details regarding the nature or contents of the emails and documents allegedly turned over to authorities (and neither the article nor the CAC claim to have any knowledge of said contents).  *See id.*  Critically, none of the statements attributed to this anonymous individual connect the dots to link any of the information provided to any purported misstatement in AmTrust's financial statements.

### C.      Summary of Claims Against BDO

Plaintiffs allege that BDO's audit opinions contained material misrepresentations of fact as to (1) whether AmTrust's consolidated financial statements presented the company's financial position in conformity with generally accepted accounting principles ("GAAP"); (2) whether AmTrust's internal controls over financial reporting were unqualified;" and (3) whether BDO's audits were conducted in accordance with Public Company Accounting Oversight Board ("PCAOB") standards.  CAC ¶¶ 206–07.  Separately, plaintiffs claim that because BDO "ignored AmTrust's wrongful accounting," it "had reason not to believe that [AmTrust's] financial statements . . . were fairly presented in accordance with GAAP."  *Id.* ¶ 211.  And finally, plaintiffs allege that BDO "failed to disclose that its audits were not performed in a scope sufficient to enable it to render an opinion."  *Id.*

### D.      Procedural Background

The original complaint was filed on March 1, 2017.  *See* ECF No. 1.  It asserted claims based on an alleged "fraudulent scheme" against AmTrust and certain AmTrust officers under the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder.  BDO was not named in that complaint, nor did that initial complaint assert any Securities Act claims based on offering materials for either of the AmTrust offerings now at issue.  On June 19, 2017, the Court entered an order appointing lead plaintiff and lead plaintiff's counsel.  ECF No. 49.

On August 21, 2017, plaintiffs filed their consolidated amended complaint, in which, among other things, they added claims under the Securities Act against BDO and others.  ECF No. 55.

## PLEADING STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept all material facts alleged in the complaint as true and construe all reasonable

8

inferences in favor of the plaintiff." *In re Jumei Int'l Holding Ltd. Sec. Litig.*, No. 14-cv-9826, 2017 WL 95176, at *2 (S.D.N.Y. Jan. 10, 2017) (citing *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). However, a plaintiff must still offer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to avoid dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1959 (2007). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1973). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1973.

In evaluating claims of violations of the securities laws, a court must "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322; 127 S. Ct. at 2509; *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 64 (S.D.N.Y. 2015).

## ARGUMENT

Plaintiffs have failed to plead a Securities Act claim against BDO under either theory advanced in the CAC – (1) that BDO's 2014 and 2015 audit opinions, which were incorporated by reference into AmTrust's Offering Materials, "were inaccurate and misleading, [and] contained untrue statements of material facts," CAC ¶ 235, or (2) that BDO's audit opinions "omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein," *id.*

9

Section 11 liability only arises if a speaker in a registration statement made "an untrue statement of a material **fact** or omitted to state a material **fact** required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a) (emphasis added). Plaintiffs allege that BDO's audit opinions contained the following material misrepresentations of **fact**:

> (1) that AmTrust's 2014 and 2015 "consolidated financial statements . . . present[ed] fairly, in all material respects, the financial position of AmTrust" at those times, "in conformity with [GAAP];"
>
> (2) that AmTrust's "system of internal control over financial reporting upon which the financial statements included in the Offering Materials were based" was "'unqualified;'" and
>
> (3) that BDO "conducted [its 2014 and 2015] audits in accordance with the standards of the [PCAOB]."

CAC ¶¶ 206–07.  Separately, plaintiffs proceed under an omission theory and allege that BDO "failed to disclose that its audits were not performed in a scope sufficient to enable it to render an opinion."  *Id.*

Plaintiffs' misstatement theory is based on the mere fact of AmTrust's restatement.  Both the misstatement theory and omission theory are based on the vague and sketchy information plaintiffs copied from the April 11, 2017 WSJ article.  Because plaintiffs cite no additional factual predicate for either of these theories, plaintiffs' allegations are insufficient to state a Section 11 claim against BDO.

## I.   PLAINTIFFS DO NOT ADEQUATELY ALLEGE A MATERIAL MISSTATEMENT BY BDO

### A.   BDO's Audit Opinions are Statements of Opinion, Not Fact

The Supreme Court has long recognized that GAAP, "far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions . . . , tolerate a range

10

of 'reasonable' treatments[.]" *Thor Power Tool Co. v. C. I. R.*, 439 U.S. 522, 544, 99 S. Ct. 773, 787 (1979); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100, 115 S. Ct. 1232, 1239 (1995) ("[f]inancial accounting . . . addresses many questions as to which the answers are uncertain and is a 'process [that] involves continuous judgments and estimates.'") (citation omitted). Recognizing this variance in practices, Judge Caproni recently dismissed a putative class action against AmTrust, holding that "[i]t is well-settled that GAAP provisions are subject to interpretation and 'tolerate a range of 'reasonable' treatments[.]'" *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (quoting *Thor Power Tool Co.*, 439 U.S. at 544; 99 S. Ct. at 787).

Courts have specifically recognized that revenue recognition involves "subjective accounting choices" and "subjective judgments." *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 243 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 23 (2d Cir. 2016); *see also Wilson v. MicroFinancial, Inc.*, No. 03-cv-11883, 2006 WL 1650971, at \*11 (D. Mass. June 13, 2006) ("The realization of revenue is 'fundamentally a subjective determination' over which reasonable minds may differ") (citation omitted); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1302 (S.D. Fla. 2002) ("the timing of revenue recognition" is a product of "Defendants' business judgment"). Accordingly, the underlying management decision to use upfront revenue recognition was itself a statement of opinion.[3] This dovetails with plaintiffs' recognition that

---

[3] BDO adopts the AmTrust defendants' argument that the CAC fails to allege an actionable misstatement in the financial statements. *See* AmTrust's Opening Brief in Support of its Motion to Dismiss at Section A(1). Because AmTrust had repeatedly disclosed its use of upfront revenue recognition in prior SEC filings, *see e.g.*, CAC ¶ 160 (quoting 2014 10-K), its restatement could not constitute a material misstatement as a matter of law. *See, e.g.*, *In re AgriBio Tech Sec. Litig.*, No. 99-cv-144, 2000 WL 1277603, at \*5–6 (D. Nev. Mar. 2, 2000) (dismissing securities claim where defendant "clearly trumpeted both the nature and use of effective date accounting" in its "10–K, 10–Q and 8–K filings").

management's decision was based on its "*interpretation*" of accounting guidelines.  CAC ¶¶ 75, 85 (emphasis added).

In keeping with the different interpretations and applications of GAAP, professional auditing standards recognize the considerable professional judgment involved in the issuance of audit opinions concerning an issuers' financial statements and internal controls.  Specifically, the governing auditing standards at the time of the audits expressly recognize that audit opinions constitute an "expression of opinion."  AU § 508.03; *see also* AU § 110.03 (auditors "express an opinion").   The standards require the auditor to "exercise professional judgment" in their application.  AU § 150.04.  The standards then go on to explain that an audit opinion is intended to provide "reasonable" rather than "absolute assurance" concerning the company's financial statements, AU § 230.10, .13, and that it "indicates the auditor's *belief* that the financial statements . . . are not materially misstated," AU § 312.03 (emphasis added); *see also* AS No. 5 App'x A7 (effectiveness of internal controls turns on whether "there is a reasonable possibility" that they will timely prevent or detect a material misstatement).

Consistent with this case law and auditing standards, BDO's 2014 and 2015 audit opinions are expressly statements of opinion.  The 2014 audit opinion states, in relevant part:

> We have audited the accompanying consolidated balance sheets of AmTrust Financial Services, Inc. as of December 31, 2015 . . . .  Our responsibility is to express ***an opinion*** on these financial statements and schedules based on our audits.
>
> We conducted our audits in accordance with the standards of the [PCAOB] . . . .  We believe that our audits provide a reasonable basis for our ***opinion***.
>
> ***In our opinion***, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of AmTrust Financial Services, Inc. at December 31, 2015 and 2014 . . . in conformity with [GAAP].

12

> *Also, in our opinion*, the financial statement schedules, when considered in relation to the basic consolidated financial statements taken as a whole present fairly, in all material respects, the information set forth therein.
>
> We also have audited, in accordance with the standards of the [PCAOB], AmTrust Financial Services, Inc.'s internal control over financial reporting as of December 31, 2015 . . . and our report dated February 9, 2016 expressed an unqualified *opinion* there on.

CAC ¶ 204 (quoting 2015 audit opinion) (emphasis added); *see also id.* ¶ 203 (quoting materially identically worded 2014 audit opinion).

Thus, the BDO audit opinions include three relevant statements of opinion:  one as to AmTrust's financial statements, one as to AmTrust's internal controls over financial reporting, and one as to BDO's performance of its audit in accordance with relevant professional standards.

Over the past year, the Second Circuit has twice confirmed that audit opinions are statements of opinion, rather than statements of fact.  *See Querub*, 649 Fed. App'x. 55; *Special Situations Fund*, 645 Fed. App'x. 72.  This Court has likewise held that auditor statements substantially identical to the ones at issue here are statements of opinion.  *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 300 (S.D.N.Y. 2011) ("*Lehman I*") (Kaplan, J.); *see also In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 268 n.44 (S.D.N.Y. 2015) ("*Lehman II*") ("This Court held in *Lehman I* that both the GAAP and GAAS statements in EY's audit reports were statements of opinion") (Kaplan, J.)

In *Lehman I*, this Court observed that "[m]any [auditing] standards are couched in rather general and in some cases inherently subjective terms" and, accordingly, that "reasonable professionals planning or conducting an audit reasonably and frequently could disagree" about how to apply these subjective standards.  799 F. Supp. 2d at 300–01.  For example, "'[t]he representation in the auditor's standard report regarding fair presentation, in all material respects, in conformity with [relevant regulations] indicates the auditor's *belief* that the financial

13

statements, taken as a whole, are not materially misstated.'" *Id.* at 303 (quoting AU § 312.07) (emphasis and alteration in the original). This Court ultimately concluded that, because the auditor's "opinion, just like those rendered by all or substantially all accounting firms, is explicitly labeled as just that—an opinion that the audit complied with these broadly stated standards—more is necessary to make out a [Section 11] claim that the statement of opinion was false than a quarrel with whether these standards have been satisfied." *Id.*

Thus, the statements made in the BDO audit opinions are subject to the *Omnicare* standard that applies in assessing Section 11 claims based on audit opinions.

### B.    Section 11 Liability for Statements of Opinion Under *Omnicare*

In *Omnicare*, 135 S. Ct. 1318, the Supreme Court addressed the application of the statutory language of § 77k(a) to statements of opinion. The *Omnicare* Court held that, to state a Section 11 claim based on a statement of opinion, a plaintiff must plausibly allege that (1) "the expression of opinion . . . falsely describes [the speaker's] state of mind," (2) the opinion contains "embedded statements of [untrue material] facts," or (3) the opinion omits material facts "whose omission makes the opinion statement at issue misleading[.]" *Id.* at 1326–27, 1332. This Court has recognized that in the wake of *Omnicare* "it is substantially more difficult for a securities plaintiff to allege adequately (or, ultimately, to prove) that . . . a statement [of opinion] is false than it is to allege adequately (or prove) that a statement of pure fact is false." *Westland Police & Fire Ret. Sys*, 129 F. Supp. 3d at 68–69 (Kaplan, J.).

Here, plaintiffs do not adequately allege that BDO's audit opinions contained an untrue statement of a material fact. Specifically, the CAC does not adequately demonstrate that BDO held a "subjective belief" inconsistent with its opinions. Nor does it adequately allege that BDO's audit opinions contained embedded misstatements of material fact.

14

> **1.**     **Plaintiffs' Allegations that AmTrust's Financial Statements were Misstated are Insufficient to State a Claim Against BDO**

Plaintiffs do not adequately allege that BDO's opinions contained misstatements of material *fact*.  Per plaintiffs, the audit reports issued by BDO for the years ending December 31, 2014 and 2015 "falsely represented that the financial statements included in the Offering Materials were presented in conformity with GAAP, when they were not, as AmTrust has now admitted."  CAC ¶ 225(c).  But plaintiffs never allege that BDO *actually* disbelieved its stated audit opinions at the time they were issued.  They claim only that BDO "had *reason* to not believe that the [AmTrust] financial statements . . . were fairly presented in conformity with GAAP."  CAC ¶ 211 (emphasis added), *see also id.* ¶ 231.  This equivocation falls far short of what *Omnicare* requires to sustain a material misstatement claim – allegations that the speaker's opinion "falsely describe[d its] state of mind[.]"  *Omnicare*, 135 S. Ct. at 1326.  Because there are no allegations that BDO "did not hold the belief [it] professed," plaintiffs' misstatement claim is deficient as a matter of law.  *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-cv-0256, 2016 WL 6652731, at *8 (S.D.N.Y. Nov. 10, 2016) (Kaplan, J.).  *See also*; *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 234 (S.D.N.Y. 1999) (dismissing Section 11 claim because plaintiffs failed to "allege that [defendant] did not believe the veracity of [its] prediction"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 253 (S.D.N.Y. 2003) (dismissing Section 11 claim where plaintiffs alleged only that circumstances "'*suggest*[]' that [defendant] had an improper motive") (emphasis added).

This Court has recognized that bare allegations that financial statements did not conform to relevant accounting standards are insufficient to show an auditor's subjective disbelief in its audit opinion.  *Lehman I*, 799 F. Supp. 2d at 303 ("allegations that a company violated GAAP in preparing its financial statements are not sufficient, in and of themselves, to state a claim that an

auditor's opinion of GAAP compliance is a factual misstatement").  Accordingly, in *Lehman* I, this Court required plaintiffs to allege additional "facts sufficient to warrant a finding that the auditor did not actually hold the opinion it expressed or that it knew that it had no reasonable basis for holding it." *Id.*

Since plaintiffs fail to plead that BDO did not subjectively believe its audit opinions, their claim relies on the premise that BDO's opinions contained "embedded statements of [untrue material] facts."  *Omnicare*, 135 S. Ct. at 1326–27.  Plaintiffs' argument is premised on the suggestion that since Section 11 provides liability to parties who "certify" portions of the prospectus, that somehow transforms an auditor's opinion into a guarantee of the accuracy of the financial statements.  But, as this Court has previously stated, "the auditor's standard report regarding fair presentation, in all material respects, in conformity with [GAAP] indicates the auditor's *belief* that the financial statements, taken as a whole, are not materially misstated." *Lehman I*, 799 F. Supp. 2d at 303 (Kaplan, J.) (emphasis and alteration in the original); *see generally* Section I.A, *infra*.  Such a belief—even if later modified—is not actionable under Section 11.  *Lehman I*, 799 F. Supp. 2d at 303; *Omnicare*, 135 S. Ct. at 1327.

The Second Circuit recently rejected a substantially identical argument to the one plaintiffs now make, and clarified that "[a]udit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of *opinion*"—even when these audit reports rely on a material *fact* in the underlying financial statements.  *Querub*, 649 F. App'x at 58 (emphasis added).  In *Querub*, a company reported that it owned a 90% interest in a subsidiary when in fact, the controlling shareholders had secretly transferred that ownership interest to themselves.  *In re Puda Coal Sec. Inc. Litig.*, 30 F. Supp. 3d 230, 237–38 (S.D.N.Y. 2014), *aff'd sub nom. Querub*, 649 F. App'x 55.  The company's financial statements thus contained a

16

material misstatement of fact: "Puda no longer owned Shanxi Coal, and yet claimed it did." *Id.* at 258.

Puda's auditor, relying on these financial statements, allegedly committed a "fundamental" accounting error: "all aspects of the financial position of the company [were] entirely misstated, because the operations on which it was based were long gone." *Id.* at 236. But the Second Circuit affirmed Judge Forrest's holding that the auditor's reports were statements of opinion—not fact—even though they relied on underlying facts found in the company's financial statements. *Querub*, 649 F. App'x at 58. The Second Circuit affirmed summary judgment in favor of the auditor because there was "no evidence that [the auditor] did not believe its 'clean audit opinions[.]'" *Id.* The auditor's reliance on Puda's financial statements did not turn its audit opinions into statements of fact.[4]

*Querub* is part of a line of cases which clarify that, while Section 11 extends liability to any party who "certified" a part of the registration statement, an auditor's "certification" does not recast its opinion as some sort of "insurance" or "guarantee" of the accuracy of the financial statements. *See, e.g.*, *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006) ("auditors do not 'certify' a company's financial statements in

---

[4]   This Court has previously reasoned that auditors "may be found liable under Section 11 for portions of registration statements that they audited." *Lehman II*, 131 F. Supp. 3d at 260; *see also In re Petrobras Sec. Litig.*, No. 14-cv-9662, 2016 WL 1533553, at *3 (S.D.N.Y. Feb. 19, 2016) (audit opinions "rest[] on the underlying facts contained in the financial statements," so "[t]he facts of the financial statements [are] embedded in [the auditor's] opinions."). However, the Second Circuit has since clarified that audit opinions are statements of opinion even when they opine on facts set forth in a company's financial statements. *Querub*, 649 F. App'x at 58. So an auditor's opinion cannot lead to Section 11 liability solely because the underlying financial statements are later restated. *Id.* Consequently, the rationale of *Petrobras* has recently been called into question, with one court holding that neither audit opinions regarding a company's financial nor opinions about an auditor's compliance with professional standards "contain embedded statements of fact[.]" *Johnson v. CBD Energy Ltd.*, No. 15-cv-1668, 2016 WL 3654657, at *12 (S.D. Tex. July 6, 2016).

the sense that they 'guarantee' or 'insure' them . . . [n]or do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein"); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 443 (S.D.N.Y. 2014) (citing *Deephaven* and holding that auditor can only be liable under Section 18—which is substantially similar to Section 11—for its own audit opinions, not for any misstatements or omissions in the underlying SEC filings).

The reasoning in these cases mandates dismissal of the instant claim.  And indeed, numerous courts—including this one—have dismissed Section 11 claims when, as here, plaintiff could not "point to an untrue material fact embedded in [the auditor's] opinion statement."  *S.E. Pa. Transp. Auth. v. Orstown Fin. Servs., Inc.*, 2015 WL 3833849, at *34 (M.D. Pa. June 22, 2015) (holding that sincerely-held audit opinion was "inactionable under the first clause of Section 11 as an untrue statement of material fact"); *Lehman I*, 799 F. Supp. 2d at 300–303 (dismissing Section 11 claim predicated on failure to abide by GAAS where plaintiffs "fail[ed] to allege that [auditor] made any false or misleading statements with respect to GAAS compliance") (Kaplan, J.).[5]

### 2.    Plaintiffs' Allegations that AmTrust's Internal Controls over Financial Reporting were Ineffective are Insufficient to State a Claim Against BDO

Plaintiffs' internal control claims fail for much the same reasons.  Plaintiffs allege that BDO made a material misstatement in issuing unqualified opinions as to AmTrust's internal controls over financial reporting.  Specifically, they claim that "the system of internal control over financial reporting upon which the financial statements included in the Offering Materials

---

[5]    *See also Special Situations Fund*, 645 F. App'x at 76 (affirming dismissal of Section 18 claim where plaintiff did not adequately plead "that [the auditor] lacked a subjective belief in its opinions" or that the opinions contained untrue statements of material fact).

were based – which the [BDO opinions] deemed to be 'unqualified,' – was riddled with material weaknesses[.]"  CAC ¶ 206.

But BDO's statements as to AmTrust's internal controls are statements of opinion—both on their face, and under controlling case law.   BDO issued an "unqualified **opinion**" on AmTrust's internal controls.   *See* CAC ¶¶ 203–04 (quoting BDO's 2014 and 2015 audit opinions) (emphasis added).   Such statements are "statements of opinion and are therefore subject to [a] subjective falsity requirement."   *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, No. 08-cv-4772, 2013 WL 1787567, at *5 (S.D.N.Y. Apr. 26, 2013).   Plaintiffs do not allege that BDO disbelieved these opinions at the time they were issued, which, without more, mandates dismissal.  *Omnicare*, 135 S. Ct. at 1326; *Westland*, 2016 WL 6652731, at *8.

Reading between the lines, plaintiffs' claim amounts to nothing more than "the tension between [BDO]'s opinion that the internal controls were effective and [AmTrust]'s subsequent conclusion that they were not."   *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 256 (S.D.N.Y. 2012).  But this is insufficient as a matter of law, since "[AmTrust]'s conclusion [that material weaknesses existed with the internal controls] was made known only after [BDO]'s representations."   *Id.* (dismissing securities claim against auditor).

### 3.   Plaintiffs' Allegations that BDO's Audit Opinions were Not Prepared in Accordance with Professional Standards are Insufficient to State a Claim Against BDO

Plaintiffs likewise do not adequately allege that BDO made misstatements of material *fact* when it opined that its audits were prepared in accordance with relevant accounting standards.  Plaintiffs claim that "the [BDO opinions] each falsely, and expressly, represented that BDO's audits on the financial statements included in the Offering Materials were conducted "in accordance with the standards of the Public Company Accounting Oversight Board (United States)."  CAC ¶ 207, 211.  But, as this Court has recognized, an auditor's "GAAS opinion . . . is

explicitly labeled as just that—an opinion that the audit complied with these broadly stated standards[.]" *Lehman I*, 799 F. Supp. 2d at 300–01. Accordingly, "more is necessary to make out a claim that the statement of opinion was false than a quarrel with whether these standards have been satisfied." *Id.*; *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 580 (S.D.N.Y. 2012) (dismissing 10b-5 claim because "auditor reports of [regulatory] compliance are 'inherently . . . one[s] of opinion'"). To prevail, plaintiffs must plausibly plead that BDO's opinion as to compliance with auditing standards was *subjectively* false when it was issued. *Lehman I*, 799 F. Supp. 2d at 302.

But here, the CAC does not allege any specific facts showing that BDO disbelieved its opinions at the time they were issued. Instead, it avers conclusory allegations that BDO "ignored AmTrust's wrongful accounting," CAC ¶¶ 211, 230, without providing any support for these sweeping generalizations. Such conclusory allegations are insufficient as a matter of law. *See, e.g.*, *Lehman I*, 799 F. Supp. 2d at 315 n.291 (allegations that auditor violated auditing standards "by 'not adequately plan[ning] its quarterly reviews and annual audit . . . to address its knowledge' of certain facts" was too conclusory to state a claim, because it "d[id] not . . . identify any planning deficiencies or, for that matter, what planning [the auditor] did that allegedly was insufficient."); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 413 (S.D.N.Y. 2010) (dismissing claim against auditor where "[p]laintiff fail[ed] to plead facts supporting a conclusion that [the auditor] fraudulently violated GAAS").

Moreover, the sole support for these allegations is the WSJ's article, copied verbatim by the plaintiffs, stating that BDO "tried to bury poor practices in its AmTrust audits." *Id.* ¶ 231. Plaintiffs' allegations, based solely on the uncorroborated statements of an anonymous individual, are insufficient to sustain a claim against BDO. There are no details regarding what

20

constituted "poor practices," how these practices violated relevant accounting standards, how they were "buried" or in connection with which audit.  More significantly, plaintiffs cite no supporting documents and do not allege that they interviewed the individual referenced in the article or anyone else in preparing the CAC.

Courts should "not consider parroted allegations for which counsel has not conducted independent investigation."  *In re UBS AG Sec. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *see also Soto v. Morgan Stanley Dean Witter & Co.*, No. 01-cv-7611, 2001 WL 958929, at *1 (S.D.N.Y. Aug. 21, 2001) (dismissing complaint where "almost all" of the allegations were based on an "unrestrained litany" of news articles).  Even if confidential witnesses are interviewed by counsel (which was not the case here), allegations lacking "'facts that might corroborate the statements of unidentified former employees'" are "insufficient to survive a motion to dismiss."  *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) (internal citations omitted).

Courts are rightfully loathe to credit confidential informants without additional allegations corroborating such claims.  *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009) (disregarding confidential witness statements where "the confidential witnesses were simply not positioned to know the information alleged"); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1037 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014) (confidential witness statements held unreliable where plaintiff did not adequately describe the witness's job positions, responsibilities, sources of relevant knowledge, or level of involvement with the matter at issue).  Courts have repeatedly recognized that such "[u]nreliable

21

hearsay and conclusory assertions do not demonstrate that a confidential witness is reliable." *In re Allied Nevada Gold Corp.*, No. 314-cv-175, 2016 WL 4191017, at \*6 (D. Nev. Aug. 8, 2016).

*In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495 (S.D.N.Y. 2010) (Kaplan, J.) is on point.  In *IndyMac*, plaintiffs relied on statements from two confidential witnesses to allege deficiencies in defendant's appraisal processes (and subsequent misrepresentations and omissions in defendant's offering documents).  One witness "opined that [IndyMac conducted] 'shoddy appraisals.'"  *Id.* at 510.  Another claimed that the company "'accepted appraisals that were not in compliance with' [regulations], contained 'weaknesses' and were 'questionable.'"  *Id.*  This Court did not credit plaintiffs' allegations, holding that "[t]he alleged confidential witness statements are insufficient" to establish Section 11 liability.  *Id.*  It reasoned that "[t]he fact that [certain employees] believed that appraisals were 'shoddy' says nothing at all about whether the appraisals were made in accordance with [relevant regulations]."  *Id.*

The reasoning in *IndyMac* applies here with even greater force.  In both cases, plaintiffs' theories relied on the uncorroborated statements.  *See* CAC ¶¶ 215–18, 229–31.  But unlike *IndyMac*, plaintiffs here have simply parroted the WSJ's allegations, which they cannot verify or substantiate.  Specifically, plaintiffs do not—and cannot—allege that the confidential witness was in a position to possess knowledge that any misstatement was made concerning the status of BDO's audit or the accuracy of the financial statements.  This is significant because audit teams are often comprised of many junior level auditors assigned specific roles in the audit.  Nor have plaintiffs seen—much less identified—the contents of materials allegedly provided by the witness to regulators, since even the WSJ did not have access to these items.  *See id.* (noting that the witness's recordings were merely "described" to the WSJ).  This uncorroborated, unverifiable hearsay-within-hearsay is patently insufficient to state a claim against BDO.

22

## II.   PLAINTIFFS DO NOT ADEQUATELY ALLEGE A MATERIAL OMISSION BY BDO

Plaintiffs' omission claim requires dismissal for reasons similar to those requiring dismissal of the misstatement claims.  First, the claims are far too vague and conclusory to give rise to a plausible inference that any material facts had been omitted from BDO's opinions.  And second, plaintiffs' factual allegations in support of this omission theory are based entirely on uncorroborated statements made by a confidential witness to a news publication.  Plaintiffs are required to do far more than parrot these unverified claims to state a Section 11 claim.

### A.   Plaintiffs' Omission Allegations are Too Conclusory to State a Claim

Plaintiffs allege that BDO's audit opinions "omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein."  CAC ¶ 235.  But in support of this assertion, plaintiffs make only generic and conclusory allegations insufficient to sustain a plausible inference that BDO omitted pertinent facts regarding the basis for its opinions.  The alleged "violations are . . . pitched at such a high level of generality that, even if credited, they could not support a compelling inference" of BDO's wrongdoing.  *In re Longtop*, 910 F. Supp. 2d at 575.

"To allege adequately that a defendant omitted to state facts necessary to make a statement of opinion or belief not misleading, a plaintiff must plead facts to 'call into question the [speaker's] basis for offering the opinion.'"  *Westland*, 2016 WL 6652731, at *8 (citation omitted).  At the pleading stage, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1973.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  In demonstrating plausibility, "mere conclusory statements

do not suffice." *Id.* If a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1973.

*Caldwell v. Berlind*, 543 F. App'x 37 (2d Cir. 2013) is instructive. In *Caldwell*, the Second Circuit affirmed dismissal of a Section 11 claim where plaintiffs "fail[ed] to allege when [the defendant] acquired the CDOs that it would have been required to disclose, how much it held at the time of the offerings, or how much was sufficient to be material to an investor at the time of the challenged offerings." *Id.* at 41; *see also Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 483 (S.D.N.Y. 2010) (dismissing Section 11 claim where plaintiffs only made "generalized allegations that most of the misleading statements were contained in each of the offering statements" but made "no specific allegations" about the 2007 offering documents, with which defendants were involved). Like the complaint in *Caldwell*, the CAC "is simply barren of allegations regarding the circumstances at the [relevant] time[.]" 543 F. App'x at 41. Courts routinely dismiss Section 11 claims where, as here, plaintiffs failed to plead with specificity which material facts a defendant allegedly omitted, or to identify when, where, and how such facts were omitted. *See, e.g.*, *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, No. 08-cv-10841, 2010 WL 4903619, at *2 (S.D.N.Y. Dec. 1, 2010) (dismissing Section 11 claim because "plaintiffs' vague allegation that . . . due diligence review was 'ineffective' does not amount to a claim that any specific disclosure in the Offering Documents was untrue or misleading"); *In re Coty Inc. Sec. Litig.*, No. 14-cv-919, 2016 WL 1271065, at *8 (S.D.N.Y. Mar. 29, 2016) (dismissing Section 11 claim "since Plaintiffs fail to explain when [the wrongful conduct] began or when the material effects of that [conduct] became known to management").

Here, plaintiffs allege (through an uncorroborated statement of an anonymous individual derived from a newspaper article) generalized misconduct, from which they extrapolate BDO's liability for particularized wrongs.  For example, plaintiffs claim that "BDO 'tried to bury poor practices in its AmTrust audits'" but provide no details regarding what practices were buried, how, when, or by whom.  CAC ¶¶ 217, 231.  They allege that "'BDO signed off on its AmTrust audit[s] before completing some important checks'" but omit any details about which checks were not performed, in connection with which audits, or how the audits were impacted.  *Id.* ¶ 217.  They allege that "'BDO staffers allegedly covered for their lapse . . . by loading unfinished documents into an internal software system to show the right time stamp, then return[ed] later to complete some of the work'" but fail to connect this allegation to either of the audits at issue in this litigation.  *Id.* ¶ 218.  And finally, they claim that "on several occasions BDO signed off on AmTrust audits prior to completing 'important' procedures," but they do not tie this claim to either of the audits at issue, nor do they specify which procedures were incomplete, and why they were necessary to issue an audit opinion.  *Id.* ¶ 229.  These generic allegations fall short of the standard *Iqbal*, *Twombly* and controlling case law in this Circuit require.

**B.    Plaintiffs' Omission Claim Draws Factual Support Solely From an Uncorroborated News Article**

Plaintiffs' omission claim against BDO requires dismissal for a second and related reason:  just as with plaintiffs' misstatement claim, the factual allegations at the heart of their omission claim rely on a single news article, whose sole source is an anonymous individual that plaintiffs cannot identify, and whose statements plaintiffs cannot corroborate.  *See, e.g.*, CAC ¶¶ 217, 229.  Based only on this article, plaintiffs allege that BDO "omitted material facts about [its] inquiry into whether the financial statements included in the Offering Materials were fairly presented in conformity with GAAP."  *Id.*

25

But plaintiffs can provide no additional allegations in support of their omission theory; nor do they allege any facts that corroborate the confidential informant's alleged statements. These shortcomings mandate dismissal.  *See generally* Section I.B.3, *infra*.  In accordance with these guidelines, courts have often held that allegations based on uncorroborated confidential witness statements are insufficient to plead an actionable omission under Section 11.  *See, e.g.*, *In re Coty*, No. 14-cv-919, 2016 WL 1271065, at *6 ("conclusory, nonspecific statements from confidential informants" that the company was "struggling," or "underperforming" did not "raise a plausible inference that the Registration Statement omitted a fact, much less a material fact"); *In re IAC*, 695 F. Supp. 2d at 119.

Here, too, the conclusory, unverifiable hearsay claims of an anonymous individual confidential witness are insufficient to plausibly plead a material omission under Section 11.

## **CONCLUSION**

For all of the foregoing reasons, BDO respectfully requests that the claims asserted against it in the consolidated amended complaint be dismissed with prejudice and that the Court grant BDO such other and further relief as it may deem just and proper.

Dated: New York, New York
      October 17, 2017

Respectfully submitted,

DLA PIPER LLP (US)


By:  */s/ Timothy E. Hoeffner*
    Timothy E. Hoeffner (TH-4195)
    timothy.hoeffner@dlapiper.com
    1251 Avenue of the Americas
    New York, New York 10020
    Tel.:    212.335.4500

    Lawrence A. Wojcik*
    lawrence.wojcik@dlapiper.com
    444 W. Lake Street, Suite 900
    Chicago, Illinois 60606
    Tel.:    312.368.4000

    * Admitted *pro hac vice*

    Attorneys for Defendant
    BDO USA, LLP

## CERTIFICATE OF SERVICE

I hereby certify that I am one of the attorneys for defendant BDO USA, LLP in this action and that on October 17, 2017, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action

_/s/ Timothy E. Hoeffner_
Timothy E. Hoeffner