**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

AMTRUST FINANCIAL SERVICES, INC.
SECURITIES LITIGATION

This document applies to: All Cases

Case No. 1:17-cv-1545 (LAK)


**MEMORANDUM OF LAW IN SUPPORT OF UNDERWRITER DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Gregg L. Weiner
Christopher Thomas Brown
Matthew P. Hendrickson
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
gregg.weiner@ropesgray.com
thomas.brown@ropesgray.com
matthew.hendrickson@ropesgray.com

*Attorneys for Defendants*
*Morgan Stanley & Co., LLC,*
*Citigroup Global Markets, Inc.,*
*UBS Securities LLC,*
*RBC Capital Markets, LLC, and*
*Keefe, Bruyette & Woods, Inc.*

Dated: October 17, 2017

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 3

ARGUMENT ..................................................................................................................... 8

I.    Plaintiffs' Section 11 & 12(a)(2) Claims Should Be Dismissed Because Plaintiffs
      Fail to Allege Actionable Misstatements of Material Fact. ................................... 9

II.   Plaintiffs' Securities Act Claims Against the Underwriter Defendants Should Be
      Dismissed Because the Underwriter Defendants' Diligence Defense is Apparent
      on the Face of the Amended Complaint. ............................................................... 10

      A.    The Underwriter Defendants' Section 11 Reasonable Reliance Defense Is
            Apparent on the Face of the Amended Complaint ............................................. 10

      B.    The Underwriter Defendants' Section 12 Reasonable Care Defense Is
            Likewise Apparent On the Face of the Amended Complaint. ........................... 16

III.  Plaintiffs Fail to Plead that They are Statutory Purchasers with Standing to Bring
      Section 12 Claims Related to the September 2016 Offering as to Certain of the
      Underwriter Defendants. ...................................................................................... 17

CONCLUSION ................................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akerman v. Oryx Commc'ns, Inc.*,
   810 F.2d 336 (2d Cir. 1987)................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009).........................................................8

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
   No. 08 CIV. 4772 LTS DCF, 2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013).........................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...............................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007).......................................................8

*In re CitiGroup Inc. Bond Litig.*,
   723 F. Supp. 2d 568 (S.D.N.Y. 2010)........................................................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................11, 14

*Escott v. BarChris Constr. Corp.*,
   283 F. Supp. 643 (S.D.N.Y. 1968)...........................................................13

*Feyko v. Yuhe Int'l, Inc.*,
   No. CV 11-05511 DDP PJWX,
   2013 WL 816409 (C.D. Cal. Mar. 5, 2013).....................................10, 11, 13, 14, 15

*Griffin v. PaineWebber, Inc.*,
   No. 99 CIV. 2292 (VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001).................................18

*Harris v. AmTrust Fin. Servs., Inc.*,
   135 F. Supp. 3d 155 (S.D.N.Y. 2015)........................................................12

*John Nuveen & Co. v. Sanders*,
   450 U.S. 1005, 101 S. Ct. 1719 (1981)..................................................16, 17

*In re Lehman Bros. Sec. & Erisa Litig.*,
   799 F. Supp. 2d 258 (S.D.N.Y. 2011)....................................................10, 16

*In re Metro. Sec. Litig.*,
   No. CV-04-25-FVS, 2010 WL 424625 (E.D. Wash. Jan. 28, 2010) ..............................13

*In re MF Glob. Holdings Ltd. Secs. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013) ............................................................................16

*In re OSG Sec. Litig.*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013) ............................................................................16

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) .............................................................................................16

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ..............................................................................................8

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87, 115 S. Ct. 1232 (1995) ........................................................................11, 12

*In re WorldCom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004) ..............................................................10, 12, 16

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ........................................................................................14

**Statutes**

15 U.S.C. § 77d-1 ............................................................................................... *passim*

15 U.S.C. § 77k ................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 8 ..........................................................................8

Federal Rule of Civil Procedure 12(b)(6) ............................................1, 8, 10, 11, 16

Defendants Morgan Stanley & Co., LLC ("Morgan Stanley"), Citigroup Global Markets, Inc. ("Citigroup"), UBS Securities LLC ("UBS"), RBC Capital Markets, LLC ("RBC"), and Keefe, Bruyette & Woods, Inc. ("KBW"; together with Morgan Stanley, Citigroup, UBS, and RBC, the "Underwriter Defendants"), respectfully submit this memorandum of law in support of their motion for an order dismissing with prejudice the claims asserted against them in the Consolidated Amended Complaint (the "Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs have sued the Underwriter Defendants under Sections 11 and 12 of the Securities Act of 1933 (the "Securities Act"). Their theory is that the offering materials for a 2015 common stock offering and a 2016 preferred stock offering by defendant AmTrust Financial Services, Inc. ("AmTrust") were materially misleading because those materials incorporated by reference financial statements that AmTrust later restated. As set forth in Section A of the Argument made in the AmTrust Brief,[1] which the Underwriter Defendants join and incorporate by reference, Plaintiffs have not adequately pled any material misstatement of fact because the two accounting changes driving the restatement are non-actionable statements of opinion rooted in technical accounting judgments. The Securities Act claims against the Underwriter Defendants necessarily fail for that reason.

But even if Plaintiffs had adequately pled an actionable misstatement, the Securities Act claims against the Underwriter Defendants would still fail for independent reasons. The Securities Act does not require underwriters of securities offerings to duplicate the work of an issuer's independent auditor in order to satisfy their statutory obligations. Underwriters are

---

[1] The term "Amtrust Brief" refers to the Opening Brief in Support of AmTrust's, the Officer Defendants,' and the Director Defendants' Motion to Dismiss, filed concurrently with this Brief.

shielded from liability in instances where, as here, the alleged misstatement was made in an audited financial statement and the Plaintiffs have not alleged that the Underwriter Defendants overlooked "red flags" regarding the audited financial statements.  Indeed, absent red flags as to audited information, the Underwriter Defendants had no duty to investigate the contents of audited financial statements.

In this case, the Amended Complaint does not allege that the Underwriter Defendants overlooked a single red flag regarding AmTrust's accounting.  Thus, it is clear on the face of the Amended Complaint that the Underwriter Defendants were entitled to rely upon BDO's unqualified expert accounting opinions.  The fact that AmTrust's new auditor took a different approach to a small number of complicated accounting issues *subsequent* to the two securities offerings does not create any inference that the Underwriter Defendants were not fully justified in relying on the clean, unqualified expert accounting opinions of BDO, the world's fifth largest public accounting firm.  Under these circumstances, the Underwriter Defendants are statutorily protected from liability under the Securities Act.

Separately, Plaintiffs have failed to plead standing to assert Section 12 claims based on their purchases of AmTrust's preferred stock, other than as to purchases made from RBC.  These Section 12 claims must, therefore, be dismissed for lack of standing.

## FACTUAL BACKGROUND[2]

In the interest of brevity, the Underwriter Defendants join in and integrate by reference the AmTrust Brief's Statement of Facts.  The following alleged facts are most relevant to the Underwriter Defendants' separate motion.

### A.  The Parties.

AmTrust is a multinational property and casualty insurer.  Since its founding in 1998, it has grown to over 8,000 employees working in 125 offices and serving 70 countries.  (Am. Compl. ¶¶ 22, 48.)

BDO is a global accounting, tax, and auditing firm.  (Am. Compl. ¶¶ 27, 199.)  BDO served as AmTrust's independent auditor during each of the years ended December 31, 2012, December 31, 2013, December 31, 2014, and December 31, 2015.  For each of those years, BDO issued an unqualified audit opinion on AmTrust's financial statements and its system of internal controls over financial reporting.  (*Id*. ¶ 27.)  In April 2016, KPMG LLP succeeded BDO as AmTrust's auditor.  (*Id*. ¶¶ 306–07.)

Defendant Morgan Stanley acted as Lead Underwriter in connection with AmTrust's November 2015 Common Stock Offering and September 2016 Series F Preferred Stock Offering.  (Am. Compl. ¶ 36.)  Defendant Citigroup acted as an underwriter in connection with AmTrust's November 2015 Common Stock Offering only.  (*Id*. ¶ 34.)  Defendants UBS, RBC, and KBW acted as underwriters in connection with AmTrust's September 2016 Series F Preferred Stock offering only.  (*Id*. ¶¶ 35, 37, 38.)

---

[2] The well-pled allegations in the Amended Complaint are taken as true solely for purposes of this motion to dismiss.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The Court may further consider on a motion to dismiss "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *Id.*

Plaintiffs each allege that they are a holder of either AmTrust's common stock or its Series F preferred stock, and each has filed a certification listing purported transactions in AmTrust securities.  (Am. Compl. at ¶¶ 17–21; ECF No. 85 (Certification of New England Carpenters Annuity and Pension Funds); ECF No. 12-3 (Certification of Sharon Albano); ECF No. 25-2 at pp. 2–4 (Certification of Jupiter Capital); ECF No. 25-2 at pp. 7–9 (Certification of ILRLT); ECF No. 15-1 (Certification of Stanley Newmark).)  Each Plaintiff further alleges that such plaintiff purchased securities as set forth below:

| Plaintiff | Securities Allegedly Purchased | Alleged Manner of Purchase | Alleged Seller |
|---|---|---|---|
| New England Carpenters Annuity and Pension Funds | AmTrust Common Stock | Not specified. | Not specified. |
| Sharon Albano | AmTrust Common Stock | Securities purchased "in and traceable to the November 2015 Common Stock Offering." | Securities purchased "directly from Defendant Morgan Stanley & Co. LLC." |
| Jupiter Capital | AmTrust Common Stock | Securities purchased "on the open market and pursuant and/or traceable to the November 2015 Common Stock Offering." | Securities purchased "directly from Defendant Citigroup Global Markets Inc." |
| ILRLT | AmTrust Series F Preferred Stock | Securities purchased "in and traceable to the September 2016 Series F Preferred Stock Offering." | Securities purchased "directly from RBC Capital Markets, LLC." |
| Stanley Newmark | AmTrust Series F Preferred Stock | Securities purchased "on the open market and/or traceable to the September 2016 Series F Preferred Stock Offering." | Not Specified. |

**B. The Offerings.**

Plaintiffs' Securities Act claims against the Underwriter Defendants relate to two securities offerings.  (Am. Compl. ¶¶ 232–48.)  Both offerings were made pursuant to AmTrust's June 11, 2015 Registration Statement.

In the first of these offerings (the "November 2015 Offering"), AmTrust issued 5,000,000 shares of common stock pursuant to a preliminary prospectus announcing the offering on November 10, 2015, and a prospectus supplement filed on November 12, 2015 (the "Common Stock Offering Materials").  (Am. Compl. ¶¶ 147–48.)  The Common Stock Offering Materials incorporated by reference include, *inter alia*, AmTrust's Annual Report on Form 10-K for the year ended December 31, 2014 and AmTrust's Quarterly Reports on Form 10-Q for the quarters ended March 31, June 30, and September 30, 2015.  (*Id*. ¶ 167.)  Among the Underwriter Defendants, Morgan Stanley and Citigroup participated in the November 2015 Offering.  (*Id*. ¶¶ 34–38.)  UBS, RBC, and KBW did not underwrite the November 2015 Offering.

In the second of these offerings (the "September 2016 Offering"), AmTrust issued 10,000,000 depository shares, each of which represented 1/40th interest in a share of its 6.95% Non-Cumulative Preferred Stock, Series F, pursuant to a preliminary prospectus announcing the offering on September 20, 2016, and a prospectus supplement filed on September 21, 2016 (the "Series F Offering Materials").  (Am. Compl. ¶¶ 149–50.)  The Series F Offering Materials incorporated by reference, *inter alia*, AmTrust's Annual Report on Form 10-K for the year ended December 31, 2015, and AmTrust's Quarterly Reports on Form 10-Q for the quarters ended March 31 and June 30, 2016.  (*Id*. ¶ 178.)  Among the Underwriter Defendants, Morgan Stanley, UBS, RBC, and KBW participated in this offering.  (*Id*. ¶¶ 34–38.)  Citigroup was not an underwriter of the September 2016 Offering.

5

### C.  Plaintiffs' Claims.

Plaintiffs do not allege that any of the Offering Materials themselves contain false or materially misleading information on their face.  Rather, Plaintiffs allege that AmTrust's 10-Ks and 10-Qs, which were incorporated by reference in the Offering Materials (the "Incorporated Financials"), provided misleading financial statements that did not conform to generally accepted accounting principles ("GAAP").  (Am. Compl. ¶ 152.)  Specifically, Plaintiffs claim that, under GAAP, the Incorporated Financials were in error because they reflected AmTrust's decision not to recognize revenue from its extended service plans on a straight-line basis over the term of the plans, instead recognizing a majority of such revenue up-front.  (*Id*. ¶¶ 109–10, 160–61, 185–86.)  Plaintiffs also claim that, under GAAP, AmTrust should have reported discretionary bonuses reflected in the Incorporated Financials in the year the related expense was incurred, instead of the year the bonuses were paid.  (*Id*. ¶¶ 111–12.)[3]

BDO issued unqualified audit reports on AmTrust's financial statements and its system of internal controls over financial reporting for each of the years ended December 31, 2012 through December 31, 2015, all prior to AmTrust's restatement.  (Am. Compl. ¶ 198.)  This includes each of the annual reports among the Incorporated Financials.  BDO also specifically consented to the inclusion of its audit reports in the Common Stock Offering Materials and the Series F Offering Materials as expert opinions.  (*Id*.)  And critically, as Plaintiffs concede, AmTrust's Forms 10-K in this period accurately described the revenue recognition methodology that AmTrust used, and that BDO approved, for its extended service plans.  (*Id*. ¶¶ 160, 185 (quoting

---

[3] Although Plaintiffs allege that there were other GAAP violations in AmTrust's audited financials, Plaintiffs also cite AmTrust's restatement announcement which established that these accounting adjustments "were not material, individually or in the aggregate."  (Am. Compl. ¶ 85.)  The Amended Complaint alleges no facts to the contrary regarding the materiality of these miscellaneous adjustments.

AmTrust's disclosures that it "recognizes revenue related to promotion, marketing and administration services at the time of the sale of ESP").)  As to the Underwriter Defendants, Plaintiffs make no allegations regarding any "red flags" or other reasons why it would have been unreasonable for the Underwriter Defendants to rely on BDO's unqualified audit opinions with respect to AmTrust's audited financials.  Plaintiffs also specifically disclaim any allegation of fraud as to the Underwriter Defendants and do not allege that they acted with scienter.  (*Id*. ¶¶ 232, 234, 241, 243.)

In April 2016, AmTrust decided to replace BDO with a larger accounting firm and hired KPMG as its auditor.  (Am. Compl. ¶¶ 306–07.)  After KPMG conducted its first complete audit of AmTrust, AmTrust restated its financial statements to reflect its decision to, among other things, recognize revenue from its extended service plans over the term of the contract, and to expense bonuses in the year accrued rather than the year paid, a modification of earlier accounting judgments audited by BDO.  (*Id*. ¶ 85.)  This restatement was announced on March 16, 2017, and the restated financials were publicly disclosed on April 4, 2017, a year-and-a-half after the November 2015 Offering, and more than six months after the September 2016 Offering.  (*Id*. ¶¶ 82–83, 88.)  Plaintiffs brought their claims following AmTrust's restatement of financial results for the years ended December 31, 2012 through 2016, including the Incorporated Financials.  (*Id*. ¶ 88.)

### D.  Procedural Background

The original complaint was filed on March 1, 2017.  (*See* ECF No. 1.)  It asserted claims sounding in fraud under the Securities Exchange Act of 1934 against AmTrust and certain of its officers.  The Underwriter Defendants were not named in that complaint and it alleged no claims under the Securities Act.  On June 19, 2017, the Court entered an order appointing lead plaintiff

and lead plaintiff's counsel.  (ECF No. 49.)  On August 21, 2017, Plaintiffs filed the Amended Complaint, which asserted for the first time claims under the Securities Act against the Underwriter Defendants.

## ARGUMENT

Under Rule 12(b)(6), a motion to dismiss must be granted where a cause of action fails "to state a claim [for] relief that is plausible on its face." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65 (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, No. 08 CIV. 4772 LTS DCF, 2013 WL 1787567, at *3 (S.D.N.Y. Apr. 26, 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).

The claims against the Underwriter Defendants must also be analyzed in light of Rule 8's requirement that plaintiffs provide "a short and plain statement of the claim showing that [plaintiffs are] entitled to relief."  Here, however, the Amended Complaint alleges virtually no *facts* as to the Underwriter Defendants except to say that they acted as underwriters of the offerings.  Plaintiffs do not allege fraud against the Underwriter Defendants.  Plaintiffs do not allege intentional misrepresentation as to the Underwriter Defendants.  Plaintiffs do not allege that the Underwriter Defendants departed from standard underwriting norms and procedures. Indeed, Plaintiffs do not allege *anything whatsoever* about what the Underwriter Defendants did (or did not do) other than the fact of their being underwriters.

In light of these standards, Plaintiffs' claims against the Underwriter Defendants must be dismissed for three independent reasons.  First, as outlined in the AmTrust Brief, the Amended Complaint fails to allege a material misstatement.  Second, the Underwriter Defendants were entitled to, and did, reasonably rely upon the unqualified, expert accounting opinions in AmTrust's financial statements, as audited and approved by BDO.  And third, Plaintiffs have not adequately pled standing to bring suit under Section 12(a)(2) against certain of the Underwriter Defendants.

## I.   PLAINTIFFS' SECTION 11 & 12(a)(2) CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE ACTIONABLE MISSTATEMENTS OF MATERIAL FACT.

As an initial matter, and for the reasons set forth in Argument Section A of the AmTrust Brief, the Amended Complaint fails to adequately allege any actionable material misstatements of fact.[4]  Plaintiffs wrongly conflate the mere existence of AmTrust's restated financial statements with a sufficiently alleged actionable misstatement.  But the restatement at issue arose from a change in accounting judgments, not from the discovery of some falsehood or omission.  Critically, as Plaintiffs concede in their pleadings, every penny of revenue reported by AmTrust was real.  The issue underlying the restatement was the timing of when that real revenue should be accounted for under GAAP, an accounting opinion repeatedly audited and approved by BDO over a number of years.  Nor have Plaintiffs pled subjective falsity with regard to the accounting judgments that underlay the Incorporated Financials.  Moreover, many of the alleged "misstatements" are immaterial and do not suffice to state a claim under Sections 11 or 12(a)(2).

---

[4] Section A of the Argument made in the AmTrust brief is expressly incorporated herein.  The arguments found there apply with equal force to Plaintiffs' claims against the Underwriter Defendants, which are alleged only under Sections 11 and 12(a)(2) of the Securities Act and are based exclusively on the November 2015 Offering and the September 2016 Offering.  Should the Court dismiss the Securities Act claims on the grounds set forth in AmTrust's motion, it need not reach the Underwriter Defendants' additional independent grounds for dismissal articulated below.

As a consequence, the Securities Act claims must be dismissed as to all Defendants.  *See* AmTrust Br. at Section A.

## II.   PLAINTIFFS' SECURITIES ACT CLAIMS AGAINST THE UNDERWRITER DEFENDANTS SHOULD BE DISMISSED BECAUSE THE UNDERWRITER DEFENDANTS' DILIGENCE DEFENSE IS APPARENT ON THE FACE OF THE AMENDED COMPLAINT.

Plaintiffs' claims of misstatements in the Offering Materials rest on the fact that, subsequent to the relevant offerings, AmTrust restated annual results reflected in the Incorporated Financials, which were prepared by AmTrust and audited by BDO.  Even assuming, *arguendo*, that this is sufficient to establish an actionable misstatement, it does not follow that the Underwriter Defendants may be liable for any such misstatements.  Both Sections 11 and 12 of the Securities Act provide a diligence defense that is applicable to the Underwriter Defendants and apparent on the face of the Amended Complaint.  *See In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 317 (S.D.N.Y. 2011) ("[A]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") (citation omitted).

A.   The Underwriter Defendants' Section 11 Reasonable Reliance Defense Is Apparent on the Face of the Amended Complaint.

Section 11 of the Securities Act permits underwriters to rely "on the authority of an expert" when making statements in a registration statement so long as the underwriter "had no reasonable ground to believe, and did not believe … that the statements therein were untrue or that there was [a misleading] omission …."  15 U.S.C. § 77k(b)(3)(C).  By virtue of this provision, in the absence of red flags, underwriters may not be held liable under Section 11 where the alleged false statement was (1) made by an expert; (2) set forth in the registration statement; and (3) included in the registration statement with the expert's consent.  *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 664–65 (S.D.N.Y. 2004); s*ee also Feyko v.*

10

*Yuhe Int'l, Inc.*, No. CV 11-05511 DDP PJWX, 2013 WL 816409, at *8 (C.D. Cal. Mar. 5, 2013) ("[U]nderwriters occupy a special place in Section 11 jurisprudence because they are allowed to rely on auditors' work, absent red flags.").

On a 12(b)(6) motion, courts will dismiss Section 11 claims against underwriters where the reliance defense appears on the face of the complaint and no "red flags" are pled that would draw such reliance into question. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175 (C.D. Cal. 2008) ("Underwriter Defendants have a due diligence defense on the face of the [complaint] as a matter of law" where the allegations are "*accounting-related* … because underwriters may reasonably rely on auditors' statements, absent red flags that the underwriters were in a position to see.") (emphasis in original); *Fekyo*, 2013 WL 816409, at *8 (at the motion to dismiss stage, "courts look to plaintiffs to point to red flags that should have indicated to the underwriter that the financial statements were not trustworthy").  As discussed more fully below, Plaintiffs do not assert that there was a single red flag or other basis known to the Underwriter Defendants at the time that would call into question their reliance on AmTrust's audited financial statements.  On the face of the Amended Complaint, the Underwriter Defendants' reliance defense has been established, and the Section 11 claims against them must, therefore, be dismissed.

1.   *The Underwriter Defendants Were Statutorily Permitted to Rely on the Expertise of AmTrust's Outside Accounting Firm.*

The claims here all involve complicated, technical GAAP accounting issues, for which accounting expertise is required.  Specifically, Plaintiffs' allegations center on the timing of revenue recognition under Accounting Standards Codification 605, and, to a lesser extent, the timing of recognizing bonus expenses under Accounting Standards Codifications 710 and 270. (Am. Compl. ¶¶ 85, 109, 110.)  Such GAAP determinations are complex and require judgment.

11

*See, e.g., Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100, 115 S. Ct. 1232, 1239 (1995) ("Financial accounting is not a science.  It addresses many questions as to which the answers are uncertain and is a 'process that involves continuous judgments and estimates.'") (citation omitted); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ("It is well-settled that GAAP provisions are subject to interpretation and 'tolerate a range of reasonable treatments'") (citation omitted).  The proper treatment under GAAP of revenue from extended service plans is not the province of the Underwriter Defendants, which are not accounting firms.

This Court recognizes that accountants like BDO—not the underwriters—are GAAP accounting experts "and audited financial statements are considered expertised portions of a registration statement."  *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 664 (S.D.N.Y. 2004).  This rule makes sense, as it is the accountant that has the relevant expertise, not the underwriter.

As is customary, AmTrust's BDO-audited financials, and BDO's opinions on the timing of revenue recognition and bonus expensing under GAAP, were incorporated into the registration statements at issue here as expert opinions, and with BDO's consent.  Specifically, BDO stated:  "In our opinion, the consolidated financial statements … present fairly, in all material respects, the financial position of AmTrust Financial Services Inc. at December 31, 2015 and 2014, and the results of its operations and its cash flows for each of the three years in the period ended December 31, 2015, in conformity with accounting principles generally accepted in the United States of America."  (Am. Compl. ¶¶ 27, 203, 204.)  The prospectus

documents explicitly acknowledge reliance on BDO as an expert, and note that the audited financials are included in the registration documents with the consent of BDO.[5]

2.    *Plaintiffs Fail to Allege a Single "Red Flag" that Would Have Made Reliance on the Audited Financial Statements Unreasonable.*

Plaintiffs fail to plead a single "red flag" known to the Underwriter Defendants that would undermine their reasonable reliance on BDO's audit opinions.  *See In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2010 WL 424625, at *3 (E.D. Wash. Jan. 28, 2010) ("[A] red flag is not a circumstance that would cause one expert to question another expert's determinations. Rather, a red flag is a circumstance that would cause a layman to question an expert's determinations."); *Feyko*, 2013 WL 816409, at *8 ("[C]ourts look to plaintiffs to point to red flags that should have indicated to the underwriter that the financial statements were not trustworthy."); *see also Escott v. BarChris Constr. Corp.*, 283 F. Supp 643, 697 (S.D.N.Y. 1968) (holding that underwriters were entitled to rely on expert opinions of accountants as expressed in audited financial statements).  And the Amended Complaint explicitly disclaims allegations of scienter or fraud in respect of the Securities Act claims.  (Am. Compl. ¶¶ 232, 234, 241, 243.)

---

[5] Ex. A to the Declaration of Gregg L. Weiner (the "Weiner Decl."), submitted herewith (AmTrust Form 424B5 Prospectus, filed on EDGAR 11/10/15 at p. S-26) (Under the heading "EXPERTS": "The consolidated financial statements and schedules and the report on the effectiveness of internal control over financial reporting incorporated in this prospectus supplement and the accompanying prospectus by reference to AmTrust's Annual Report on Form 10-K for the year ended December 31, 2014, have been so incorporated in reliance on the report of BDO USA, LLP, an independent registered public accounting firm, given on the authority of said firm as experts in auditing and accounting."); Ex. B to the Weiner Decl. (AmTrust Form 424B5, filed on EDGAR 09/20/16 at p. S-49) (Under the heading "EXPERTS: "The consolidated financial statements and schedules and management's assessment of the effectiveness of internal control over financial reporting incorporated in this prospectus supplement and the accompanying prospectus by reference to AmTrust's Annual Report on Form 10-K for the year ended December 31, 2015, have been so incorporated in reliance on the reports of BDO USA, LLP, an independent registered public accounting firm, given on the authority of said firm as experts in auditing and accounting.").

In fact, the Amended Complaint alleges nothing that would suggest that the Underwriter Defendants should not have relied on BDO's audit opinions.  Nor are there any allegations suggesting that there were actual falsehoods—such as phony revenue or fraudulent transactions—in the financial statements.  Ultimately, Plaintiffs' only allegation is that real revenue should have been recognized at a different time by AmTrust and its accountants.  That is a disagreement with an accounting judgment, not an identification of a misstatement or a "red flag."

As the Ninth Circuit has noted, it would be "absurd in these circumstances for Plaintiffs to suggest" that the Underwriter Defendants, "who are not accountants," should have identified accounting "mistakes" made by independent, trained experts in the field.  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994).  And, indeed, courts have dismissed Section 11 claims against underwriters in cases with far more robust allegations than those found in the Amended Complaint.  For example, in *In re Countrywide*, 588 F. Supp. 2d at 1174–82, the court dismissed a Section 11 claim against underwriters of mortgage-backed securities where the plaintiffs claimed that rising mortgage delinquency rates should have led the underwriters to take a closer look at certain of the issuer's loss reserves.  The court was not convinced:  "In hindsight, it is appealing to say the same red flags could have put Underwriter Defendants on notice that the accounting-related statements were false or misleading.  But the present [complaint] does not adequately allege that Underwriter Defendants' reliance on KPMG and Countrywide management's accounting-related statements during this period was unreasonable."  *Id.* at 1181–82.

Similarly, in *Feyko*, 2013 WL 816409, at *8–*9, the court granted a motion to dismiss a Section 11 claim against underwriters where plaintiffs alleged that a company's auditor took

14

insufficient time to produce an audit opinion following the resignation of the company's prior auditor.    The court reasoned that nothing in the disclosure regarding the prior auditor's resignation would have alerted the underwriters to potential fraud.  *Id*.

That conclusion is even stronger here.  The Amended Complaint alleges nothing to suggest that the Incorporated Financials contained actual misstatements that the Underwriter Defendants should have caught.  AmTrust's financial statements accurately disclosed the accounting treatment that BDO approved for the appropriate revenue recognition timing, describing the extended service plans and explaining when AmTrust recognized this revenue; and the SEC never questioned this accounting judgment.  (Am. Compl. ¶¶ 160, 185.)[6]  Any accounting errors were thus the product of an expert-audited determination, a patently expertized determination upon which the Underwriter Defendants were entitled to rely under the Securities Act.

Moreover, the pleading incorporates by reference AmTrust's April 4, 2016 8-K, which asserts that, when KPMG replaced BDO, BDO confirmed that there were "no 'disagreements' … between the Company and BDO on any matter of accounting principles or practice, financial statement disclosure, or auditing scope or procedure."  (Am. Compl. ¶ 306.)  Under these circumstances, as a matter of law and on the face of the Amended Complaint, the Underwriter

---

[6] "The Company promotes and markets extended service plans ("ESP") to consumers through retailers and certain other marketing organizations usually with terms of coverage ranging from one to three years, commencing at the expiration of the manufacturers' warranty, if applicable.... These agreements are generally for one-year terms and can be canceled by either party with thirty days' advance notice.  The Company recognizes revenue related to promotion, marketing and administration services at the time of sale of ESP.  However, the Company defers a portion of service revenue based upon an estimate of administrative services to be provided in future periods."  Ex. 3 to the Declaration of Lawrence J. Zweifach (the "Zweifach Decl."), submitted with the AmTrust Brief, Notes to the Consolidated Financial Statements in AmTrust's 2015 Form 10-K, filed on EDGAR 02/29/2016 at p. F-15; Ex. 2 to the Zweifach Decl., Notes to the Consolidated Financial Statements in AmTrust's 2014 Form 10-K, filed on EDGAR 03/02/2015 at p. F-14; *see also* Complaint ¶¶ 160, 185.

Defendants reasonably relied on BDO's unqualified audit opinions.  Accordingly, Plaintiffs have failed to plead a viable Section 11 claim against the Underwriter Defendants. [7]

> B.    The Underwriter Defendants' Section 12 Reasonable Care Defense Is Likewise Apparent On the Face of the Amended Complaint.

Plaintiffs' Section 12 claims against the Underwriter Defendants should be dismissed for the same reasons as their Section 11 claims.  *See In re MF Glob. Holdings Ltd. Secs. Litig.*, 982 F. Supp. 2d 277, 308 (S.D.N.Y. 2013) (Sections 11 and 12(a)(2) of the Securities Act "provisions have roughly parallel elements, such that a plaintiff who fails to plead a Section 11 claim necessarily fails to plead a Section 12(a)(2) claim as well.") (citations omitted).

Section 12(a)(2) shields underwriters from liability where the underwriter "did not know, and in the exercise of reasonable care could not have known, of such untruth or omission." 15 U.S.C. § 77d-1(c)(2)(B).  This defense is "less demanding than the duty of due diligence" and only requires that an underwriter show "reasonable care."  *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 663 (S.D.N.Y. 2004).  Reliance on audited financial statements, absent red

---

[7] The Underwriter Defendants acknowledge that this and other courts in this district have declined to consider due diligence defenses raised by underwriters on motions to dismiss.  *See, e.g., In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 318 (S.D.N.Y. 2011) (declining to consider underwriters' due diligence defense on a motion for summary judgment); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 400 (S.D.N.Y. 2013) (same).  For the reasons discussed herein, the Underwriter Defendants respectfully submit that such decisions are distinguishable, *see*, *e.g.*, *Lehman Bros.*, 799 F. Supp. 2d at 318 (denying motion to dismiss where due diligence defense was asserted by officers, directors, and underwriters based on an examiner's report not properly before the court and where numerous alleged misstatements and omissions were not contained within the audited financial statements); *In re MF Glob. Holdings Ltd. Secs. Litig.*, 982 F. Supp. 2d 277, 322–23 (S.D.N.Y. 2013) (denying motion to dismiss where the complaint alleged that "a reasonable investigation into the audited financials would have revealed red flags and that a reasonable investigation into those red flags would have revealed MF Global's material misstatements and omissions."), or were incorrectly decided on this point.  The issue is ripe for decision on a motion to dismiss because the defense is plain on the face of the Amended Complaint.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.").

flags, *per se* satisfies Section 12(a)(2)'s "reasonable care" defense.  *John Nuveen & Co. v. Sanders*, 450 U.S. 1005, 1009, 101 S. Ct. 1719, 1721–22 (1981) (Powell & Rehnquist, JJ. dissenting from denial of cert.) (noting that the "reasonable care" requirement of Section 12(a)(2) does not demand a reasonable "investigation" and that "it is reasonable to rely on financial statements certified by public accountants").

In sum, the Amended Complaint pleads only that the Underwriter Defendants were "underwriters."  This does not suffice to state either a Section 11 or 12 claim against them, especially where the allegations all involve unqualified audited financial opinions concerning technical accounting issues and no red flags are pled.  The Securities Act claims must therefore be dismissed as to each of the Underwriter Defendants.

## III. PLAINTIFFS FAIL TO PLEAD THAT THEY ARE STATUTORY PURCHASERS WITH STANDING TO BRING SECTION 12 CLAIMS RELATED TO THE SEPTEMBER 2016 OFFERING AS TO CERTAIN OF THE UNDERWRITER DEFENDANTS.

An action under Section 12(a)(2) of the Securities Act may only be brought against the seller of a security by "the person purchasing such security from him".  *See Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 344 (2d Cir. 1987) ("Section [12(a)(2)] imposes liability on persons who offer or sell securities and only grants standing to 'the person purchasing such security' from them.").  Courts in this district have held, therefore, that "a plaintiff seeking redress pursuant to Section 12(a)(2) must establish that it purchased the security *directly from defendants* through the public offering at issue."  *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 585 (S.D.N.Y. 2010) (emphasis added).

At the motion to dismiss stage, in order "[f]or a complaint to plausibly plead standing to raise a claim pursuant to Section 12, it must identify a particular purchase from a particular defendant pursuant to a particular prospectus that it contends contained a particular false or

misleading statement." *Id*.  Where Section 12 claims are asserted against multiple defendants, standing must be adequately pled as to each defendant.  Where standing is only alleged as to a subset of defendants, those claims must be dismissed as to those defendants against which they are not adequately alleged.  *See Griffin v. PaineWebber, Inc.*, No. 99 CIV. 2292 (VM), 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("[T]he sole named plaintiff ... does not have standing to assert the § 12 claim against CIBC because he specifically asserts that he purchased his shares from defendant PaineWebber and not from CIBC.").

Applying this standard, the Amended Complaint fails adequately to plead Section 12 standing as any of the underwriters of the September 2016 offering other than RBC.  Indeed, only two Plaintiffs, ILRLT and Newmark, allege that they purchased any preferred shares at all. ILRLT specifically alleges that it purchased its preferred shares from RBC, while Newmark alleges only that he purchased shares on the open market, not pursuant to the September 2016 Offering or from any Underwriter Defendant.  Accordingly, no plaintiff has adequately pled Section 12 standing as to Morgan Stanley, UBS, or KBW with respect to the September 2016 Offering and those claims must, therefore, be dismissed.[8]

---

[8] Citigroup is not alleged to have acted as an underwriter of the September 2016 Offering.  RBC, UBS, and KBW are not alleged to have acted as underwriters of the November 2015 Offering.

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety with prejudice as to the claims asserted against the Underwriter Defendants.


Dated: New York, New York          ROPES & GRAY LLP
       October 17, 2017

                                   By:/s/ Gregg L. Weiner
                                   Gregg L. Weiner
                                   Christopher Thomas Brown
                                   Matthew P. Hendrickson
                                   1211 Avenue of the Americas
                                   New York, New York 10036-8704
                                   Tel: (212) 596-9000
                                   Fax: (212) 596-9090
                                   gregg.weiner@ropesgray.com
                                   thomas.brown@ropesgray.com
                                   matthew.hendrickson@ropesgray.com

                                   *Attorneys for Morgan Stanley & Co.,*
                                   *LLC, Citigroup Global Markets, Inc.,*
                                   *UBS Securities LLC, RBC Capital*
                                   *Markets, LLC, and Keefe, Bruyette &*
                                   *Woods, Inc.*