UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE AMTRUST FINANCIAL SERVICES,
INC. SECURITIES LITIGATION

C.A. No. 1:17-cv-01545-(LAK)

**REPLY BRIEF IN FURTHER SUPPORT OF AMTRUST'S, THE OFFICER
DEFENDANTS', AND THE DIRECTOR DEFENDANTS' MOTION TO DISMISS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Tel: (212) 351-2662
Fax: (212) 351-6362
LZweifach@gibsondunn.com

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

    A.   Plaintiffs' Section 11 & 12(a)(2) Claims (Counts I & II) Should Be Dismissed............ 1

    B.   Plaintiffs' 10(b) Claim (Count IV) Should Be Dismissed. ............................................. 5

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ................................................................................................6

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008)..............................................................................5

*In re CPI Card Group Inc. Securities Litigation*,
   2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017)...................................................................9

*Dobina v. Weatherford Int'l, Ltd.*,
   909 F. Supp. 2d 228 (S.D.N.Y. 2012)...............................................................................6

*In re DRDGOLD Ltd. Securities Litigation*,
   472 F. Supp. 2d 562 (S.D.N.Y. 2007)...............................................................................3

*In re EVCI Colls. Holding Corp. v. SEC Litig.*,
   469 F. Supp. 2d 88 (S.D.N.Y. 2006)................................................................................5

*Fait v. Regions Fin. Corp.*,
   712 F. Supp. 2d 117 (S.D.N.Y. 2010), *aff'd*, 655 F.3d 105 (2d Cir. 2011) .........................2, 3

*Fresno County Employees' Retirement Association v. comScore, Inc.*,
   2017 WL 3261609 (S.D.N.Y. July 28, 2017) .........................................................................2

*Freudenberg v. E\*Trade Financial Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)...............................................................................7

*Garber v. Legg Mason, Inc.*,
   347 F. App'x 665 (2d Cir. 2009) ......................................................................................5

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)...............................................................................7

*Hall v. The Children's Place Retail Stores, Inc.*,
   580 F. Supp. 2d 212 (S.D.N.Y. 2008)..............................................................................10

*Harris v. AmTrust*,
   135 F. Supp. 155 (S.D.N.Y. 2015)....................................................................................8

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..............................................................................................7

*Kalnit v. Eichler*,
    85 F. Supp. 2d 232 (S.D.N.Y. 1999)......................................................................10

*In re Kidder Peabody Sec. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998)........................................................................7

*Koplyay v. Cirrus Logic, Inc.*,
    2013 WL 6233908 (S.D.N.Y. Dec. 2, 2013) ...........................................................7

*Kuriakose v. Federal Home Loan Mortgage Corp.*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012)......................................................................4

*In re LaBranche Sec. Litig.*,
    405 F. Supp. 2d 333 (S.D.N.Y. 2005)......................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013).........................................................10

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011)......................................................................3

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011).....................................................................................5

*In re Metawave Communications Corporation Securities Litigation*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003)...............................................................9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010).....................................................................................3

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015)......................................................................3

*In re Petrobras Sec. Litig.*,
    2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016)....................................................2, 3, 4

*Ret. Sys. v. Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012)....................................................................10

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000).......................................................................................6

*In re Sanofi Securities Litigation*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016)...................................................................8, 9

*In re Silvercorp Metals, Inc. Securities Litigation*,
    26 F. Supp. 3d 266 (S.D.N.Y. 2014)........................................................................6

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)........................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 (2007)......................................................................................5, 6

*In re WorldCom, Inc. Sec. Litig.*,
346 F. Supp. 2d 628 (S.D.N.Y. 2004).........................................................................................3

AmTrust, the Officer Defendants, and the Director Defendants (all capitalized terms herein as defined in Dkt. 101 ("Br.")), submit this reply brief in further support of their motion to dismiss.

## INTRODUCTION

AmTrust at all times made accounting judgments it believed were appropriate regarding two complex, subjective issues—the timing of warranty revenue recognition and discretionary bonus accrual—and the results of these judgments are non-actionable statements of opinion under *Omnicare*.  Throughout their 80-plus page opposition brief ("Opp."), Plaintiffs essentially ignore the reason AmTrust changed its accounting treatment of those issues, which resulted in its restatement of certain financial statements: it switched from the world's fifth-largest accounting firm to a new, "Big 4" auditor, and its new auditor had a different approach to those specific, judgment-based accounting issues.  Plaintiffs, with no factual support in the Complaint, instead speculate that Defendants were engaged in a years-long fraud that led them to knowingly misstate and inflate the Company's financial results.  But the most plausible inference from the facts alleged in the Complaint, including that AmTrust received unqualified audit opinions for each of the years at issue and disclosed key accounting policies at issue in its SEC filings, is just the opposite.  The claims should be dismissed.

## ARGUMENT

**A.    Plaintiffs' Section 11 & 12(a)(2) Claims (Counts I & II) Should Be Dismissed.**

**1.    The Two Accounting Changes Driving The Restatement Are Non-Actionable Statements Of Opinion Rooted In Accounting Judgments.**

AmTrust did not assert that "every financial metric" in a company's financial statements is an opinion, *contra* Opp. 22, but rather that, under governing accounting guidelines, the two *specific* timing issues driving the Restatement here constitute subjective accounting judgments that qualify as opinions under *Omnicare*, *see* Br. 12-18.  Tellingly, Plaintiffs fail to address the cited

accounting guidance at all.  Although Plaintiffs concede that some financial metrics "*do* constitute opinion" statements under *Omnicare* and the law of this Circuit (Opp. 23-24), they attempt to cabin that concession to cases involving "estimates of future performance" (as opposed to "historical income metrics"), *see id.*, but provide no support for such a bright-line distinction under *Omnicare*. Indeed, contrary to their unsupported theory, Plaintiffs acknowledge that this Court's decision in *Fait*, affirmed by the Second Circuit, found that "representations of goodwill, which 'reflected judgments as to values that were not objectively determinable'"—that is, so-called historical metrics—reflected opinions.  Opp. 24 (quoting *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 123 (S.D.N.Y. 2010), *aff'd*, 655 F.3d 105 (2d Cir. 2011)).  Similarly, under the unrebutted accounting guidance, application of the two primary accounting determinations at issue here requires subjective judgments by management, including estimates and assessments of the probability of future occurrences.  Br. 14-17.[1]

Plaintiffs' cases do not support a contrary conclusion.  For instance, in *Fresno County Employees' Retirement Association v. comScore, Inc.*, 2017 WL 3261609 (S.D.N.Y. July 28, 2017), unlike here, the defendant expressly "admitted to wrongdoing" and tied its restatement to evidence of intentional misconduct.  *Id.* at *3-4, *10-11 (misconduct was "primary driver behind the restatement").  That is what separated *comScore* from cases involving "complex accounting judgments over which reasonable minds can differ."  *Id.* at *11; *see id.* at *12 (distinguishing case involving incorrect application of accounting methodologies, as such misapplication "raised issues of subjective opinion").  *In re Petrobras Securities Litigation*, 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016), is similarly inapposite: it did not address the two specific accounting determinations at issue

---

[1] The Restatement expressly discusses AmTrust's "application" of relevant accounting guidance.  Compl. ¶¶ 110, 112.  Moreover, it matters not that the Restatement includes the words "error" and "incorrect," *see* Opp. 23, as it goes without saying that one can hold an erroneous or incorrect opinion.  In other words, the mere existence of the Restatement, and its reference to "errors," does not support Plaintiffs' argument that the misstatements were *factual*.

here, and instead dealt with the entirely different issue of asset carrying-value as a "fact-based estimate." *Id*. at \*4.  The financials there were overstated not because of a subjective accounting judgment but because the company included bribe payments and overcharges in the carrying-value of its fixed assets.  *Id*.; *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 375 (S.D.N.Y. 2015).[2]

Moreover, the Company expressly disclosed its revenue recognition policy with respect to warranty revenue.  *See* Br. 16.[3]  Plaintiffs' strained misreading of that disclosure is untenable. They take the statement that AmTrust "recognizes revenue . . . at the time of the sale" but "defers a portion" of that revenue to later periods to mean that the Company recognizes a *minority* portion of that revenue upfront, with the *majority* of the revenue deferred.  *See* Opp. 26-27.  This facially implausible interpretation injects the word "minority" into an unqualified statement about upfront recognition and ignores the plain meaning of the word "portion."  *See* Br. 15 n.17.

Plaintiffs also misread *Omnicare* to suggest it applies only when opinion statements are expressly introduced by expressions such as "I believe."  Opp. 24.  *Omnicare* and its progeny say no such thing.  To the contrary, "investors recognize opinions," in Plaintiffs' words, when, as here, they see reported financial results that "depend[] on" subjective accounting "methodology and assumptions."  *Fait*, 655 F.3d at 110-11; Br. 13-17.[4]  And Plaintiffs' suggestion that this Court

---

[2]  Although *In re DRDGOLD Ltd. Securities Litigation*, 472 F. Supp. 2d 562, 569 (S.D.N.Y. 2007), which was decided before both *Omnicare* and *Fait,* described certain misstated financials as "facts," the court did so without analysis.

[3]  Plaintiffs' cases do not suggest that the adequacy of a disclosure can never be decided at the pleading stage.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 282 (S.D.N.Y. 2011) (potential issues with "this disclosure" preclude judgment as a matter of law); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 691-92 (S.D.N.Y. 2004) (questions of fact as to adequacy of specific disclosures).  In addressing Defendants' cases, Plaintiffs effectively concede that courts *can* resolve this issue on the pleadings.  Opp. 27 n.22.  That those cases involved Exchange Act claims is of no moment, as the "definition of materiality is the same for [Sections 11 & 12(a)(2)] as it is under section 10(b) of the Exchange Act."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010).

[4]  With respect to revenue recognition, Plaintiffs have no response to the subjectivity of AmTrust's decision to apply "multiple-element" guidance, which itself involves probability determinations.  Br. 15 n.16 (citing EITF 00-21).  Subjective judgment is also required to evaluate the sufficiency of the historical evidence relating to when the Company incurred costs for performing administrative services associated with warranty contract revenue.  Br. 15.  Plaintiffs assert only that Defendants lacked such historical evidence, Opp. 14, but this allegation is entirely conclusory, *see* Br. 14 n.15.  As for the accounting for discretionary bonuses, Plaintiffs relegate their discussion of that issue to a

should reject the *Omnicare* argument because it "subvert[s]" an otherwise "strict liability offense,"

Opp. 25, is nothing more than an argument that *Omnicare* and *Fait* were wrongly decided.

Finally, there is no merit to Plaintiffs' contention that the purported misstatements are actionable under *Omnicare*'s embedded facts or material factual omissions prongs. *See* Opp. 28-29. First, Plaintiffs argue that "the very income metrics now admitted to be false" constitute false embedded facts regarding historical financial performance. *Id.* at 28. The sole case Plaintiffs cite on this issue addresses the issue of financial statements as embedded facts in an auditor opinion. *Petrobras*, 2016 WL 1533553, at *3. To the extent an audit opinion can include both opinions and embedded facts, that scenario does not support Plaintiffs' assertion that the relevant portions of the financial statements at issue here—which are the direct result of subjective accounting judgments—are anything but non-actionable opinions. Second, Plaintiffs contend that Defendants failed to disclose the "fact" that its accounting did not comply with GAAP. But this is just a backdoor attempt to evade *Omnicare*. The determination of GAAP non-compliance was made retrospectively, as a result of the change in subjective accounting judgments; it is not a pre-existing, "omitted [] fact," Opp. 29, and Plaintiffs provide no support to the contrary. They otherwise ignore—and thus implicitly concede—that the Complaint fails to identify any omissions or duty to speak. In sum, this case does not involve false embedded facts or material factual omissions.

## 2. The Materiality Of The Remaining Adjustments Is Inadequately Pleaded.

Plaintiffs effectively concede that they failed to plead facts suggesting that the Restatement's "other adjustments" are material standing alone, *i.e.*, once disaggregated from the non-

---

footnote and effectively concede that it involves estimates as to future occurrences. Opp. 24 n.18. In attempting to distinguish *Kuriakose v. Federal Home Loan Mortgage Corp.*, 897 F. Supp. 2d 168 (S.D.N.Y. 2012), Plaintiffs focus entirely on whether the future resolution of a contingency—here, bonus payments—will be within the defendant's control. But the fact that AmTrust will in the future decide whether to make bonus payments says nothing about its *present* assessment of whether such payments are "probable," nor does it convert that subjective assessment into an objective one. *See* Br. 16-17. Plaintiffs cite no authority to the contrary.

actionable opinion statements.  Opp. 18 n.12.  Plaintiffs suggest that the mere inclusion of these

adjustments within the Restatement establishes their materiality, but Defendants have already ex-

plained why that is not the case.  *See* Br. 18 n.21.  Once a company is addressing material issues

through a Restatement, it is expected to include even non-material issues as well, as AmTrust did

here.  *Id*. (citing SAB 99).  Plaintiffs fail to address SAB 99.  Their only other response—that

materiality cannot be assessed at the pleading stage—is incorrect, as Plaintiffs' own cases demon-

strate.  *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 717 (2d Cir. 2011) (discussing standard

for dismissing claims on materiality grounds).  Without *any* allegations speaking to the materiality

of the "other adjustments" standing alone, the allegations are "too conclusory" with respect to

materiality.  *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (affirming dismis-

sal).  Plaintiffs' argument regarding the "magnitude" of the alleged misstatements, again in the

aggregate, Opp. 20, is unavailing for the same reason.

**B.      Plaintiffs' 10(b) Claim (Count IV) Should Be Dismissed.**

Plaintiffs recognize the clear nonculpable inferences that can be drawn from the facts here:

"The AmTrust Defendants[] . . . filed financial statements they believed were truthful, only to find

out later their belief was unwarranted."  Opp. 70.  But, citing a case decided before *Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007)—a common defect in Plain-

tiffs' scienter citations—Plaintiffs assert that the allegations in the Complaint defeat this benign

narrative and demonstrate a "'reasonable and strong inference of scienter.'"  Opp. 54 (quoting *In*

*re EVCI Colls. Holding Corp. v. SEC Litig.*, 469 F. Supp. 2d 88, 99 (S.D.N.Y. 2006)).  This is the

wrong standard.[5]  This Court must consider not only possible inferences in Plaintiffs' favor, *see*

---

[5]  Plaintiffs cite a plethora of pre-*Tellabs* cases (*see, e.g.*, Opp. 55, 56, 57, 59 n.45, 60, 61, 64, 65, 66, 77, 78), but these decisions did not compare the nonculpable and culpable explanations that could be drawn from the defendants' conduct, as *Tellabs* now requires this Court to do.  *See City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (recognizing shift in analysis post-*Tellabs*).

Opp. 15, but also any "plausible opposing inference," and particularly all "nonculpable explanations for the defendant's conduct," 551 U.S. at 323-24, 127 S. Ct. at 2509-10.  Under *Tellabs*, Plaintiffs' hindsight scienter allegations fall flat.  The most plausible inference is that the Restatement was the result of a change in auditors and accounting judgments, not fraud.

### 1.    The Complaint Fails To Adequately Allege Motive And Opportunity.

Plaintiffs allege two motives, both of which are common to any corporate insider.  They are therefore not indicative of fraud.  *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

First, Defendants' strategy of "acquiring companies," Opp. 57, does not support an inference of scienter.  Plaintiffs have not alleged that the acquisitions represent anything other than a reasonable business strategy, nor could they.  *Id.* at 62-63 (recognizing importance of strategic acquisitions).  Plaintiffs' key case—like so many other cases they cite—is a pre-*Tellabs* opinion that does not compare culpable and nonculpable inferences.  *See Rothman v. Gregor*, 220 F.3d 81, 93-94 (2d Cir. 2000).  The remaining cases Plaintiffs cite are likewise entirely distinguishable.[6]

Second, looking to "insider sales" and the context of those sales, any possible inference of scienter is not nearly as compelling as the available nonculpable inferences.  Plaintiffs' assertion boils down to this: a single executive, Ron Pipoly, sold stock during a four-year period, which they say was "suspicious and unusual" timing.[7]  Plaintiffs suggest that the size of these sales establishes fraudulent intent, whereas courts in this District post-*Tellabs* have identified at least *seven* factors

---

[6]  For instance, the allegations in *In re Silvercorp Metals, Inc. Securities Litigation*, 26 F. Supp. 3d 266 (S.D.N.Y. 2014), gave rise to a compelling inference of fraudulent intent because the transactions at issue there were *fictitious*. *Id.* at 276.  Plaintiffs have not accused AmTrust of acquiring fake companies, and they would have no good-faith basis to do so.  Moreover, Plaintiffs fail to allege a "unique connection" between any acquisition and any false statement. Opp. 58-59 (citing *Dobina v. Weatherford Int'l, Ltd.*, 909 F. Supp. 2d 228, 242-43 (S.D.N.Y. 2012)).  The sole "connection" between acquisitions and purported misstatements is coincidental: Plaintiffs seek to tether any acquisition they can find to the nearest financial reporting date, Opp. 58, a task made easy (and entirely meaningless) given that AmTrust must periodically issue such reports.

[7]  Plaintiffs' brief, and the Complaint, also reference stock sold by other executives (¶ 508), but there is no allegation those sales were suspiciously timed.  The mere sale of shares is of course not enough to raise an inference of scienter.

that bear on whether stock sales can give rise to a strong inference of scienter, *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011); Br. 22-23, almost all of which Plaintiffs entirely ignore. The cases Plaintiffs cite are distinguishable.  For instance, the stock sales in *Freudenberg v. E\*Trade Financial Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010), were deemed suspicious because they occurred in close proximity to known or likely known "time bombs" (release of information) damaging to stock price.  *Id.* at 200.  Here, by contrast, Plaintiffs' only assertion as to timing is that Pipoly started selling shares "eight months before the start of the Class Period," and then sold stock at various times throughout that period.  Opp. 56, 74.  But the Class Period is an artificial period defined by Plaintiffs; its start date could not have had any significance to Defendants at the time.[8]  And, unlike in *Freudenberg*, Pipoly's stock sales began years before any release of the information that Plaintiffs allege negatively impacted the stock price.  Plaintiffs also assert that the chart showing Pipoly's increase in stock holdings is "incomplete" because it does not exactly match the Class Period.  Opp. 73.  But as the chart shows, Pipoly indisputably increased his holdings during the Class Period, which undermines any possible inference of scienter.[9]

### 2.    Neither Intentional Misbehavior Nor Recklessness Is Adequately Pleaded.

Plaintiffs' allegations of fraudulent intent or recklessness fall flat.  Plaintiffs still rely on a

---

[8]  Plaintiffs also fail to rebut the exculpatory value of the 10b5-1 plans with respect to the timing of stock sales, and instead claim that the 10b5-1 plans are "of little moment at this stage of the litigation" as they are "affirmative defenses."  Opp. 56 & n.43.  They are incorrect.  This Court may consider documents pertaining to the 10b5-1 plans on a motion to dismiss.  *See Koplyay v. Cirrus Logic, Inc.*, 2013 WL 6233908, at \*6 (S.D.N.Y. Dec. 2, 2013) (rejecting argument to the contrary and noting that "courts in this Circuit have regularly made reference to Rule 10b5-1 plans when considering scienter in securities fraud actions").

[9]  Again citing exclusively pre-*Tellabs* cases, Plaintiffs assert that Zyskind's executive compensation provides sufficient motive.  *See* Opp. 73 (citing *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 418 (S.D.N.Y. 1998), which Plaintiffs fail to mention was abrogated in part, *see In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 351 (S.D.N.Y. 2005)).  For its part, *LaBranche* concludes—even pre-*Tellabs*—that "allegations concerning the bonuses received by the Individual Defendants are inadequate to satisfy the scienter requirement."  *Id.* at 354.  AmTrust's insiders' executive compensation "motives" are common to all corporate insiders and fail to provide any "strong" inference of fraud, let alone one that is at least as compelling as any nonculpable inference.  *Id.* at 353 (citing *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("stating that incentive compensation can hardly be the basis on which an allegation of fraud is predicated" (citation and internal quotation marks omitted))).

purported "red flag" article and its progeny despite the holding of another court in this District that

the article was "published by a short seller that [the plaintiff in that case] concede[d] may have

been wrong in certain respects and has been proven wrong in others by the passage of time." *Harris v. AmTrust*, 135 F. Supp. 155, 159 (S.D.N.Y. 2015); *see also id*. at 173 n.30 (complaint in that

action "acknowledges that the GeoInvesting Report was 'mistaken' about its 'hypothesis'"). Contrary to Plaintiffs' suggestion, Opp. 76 & n.55, Defendants are not claiming that *Harris* should

have collateral estoppel effect in this case.  Rather, Defendants assert that this Court can and should

consider the *Harris* court's determination that the supposed "red flag" article that Plaintiffs rely

on heavily here was not credible.  One can plausibly infer from the allegations in the Complaint

that Defendants, consistent with the views of the *Harris* court and the unqualified audit opinions

the Company received every year, considered but did not credit the vague contentions in articles

that were written by third-party short-sellers who had a financial interest in harming the Company

and who were not privy to its financial and accounting records.  This plausible inference is far

more compelling than any inference of fraudulent intent.  This is so even with respect to the internal controls allegation made in some of the articles that the Company later addressed.  The relevant

question is whether the allegations in the articles were credible *at the time*; the Restatement does

not retroactively confer credibility where none existed contemporaneously.  Moreover, the "red

flag" articles indisputably do not address the two main issues that drove the Restatement and do

not suggest that the Company should have been on notice of the potential for a difference of opinion between auditors on those two specific subjective accounting determinations.[10]

---

[10]   Plaintiffs' assertion that alleged GAAP violations and internal control certifications evidence fraudulent intent
similarly lacks merit.  GAAP violations or lack of internal controls *plus* credible red flags *may* give rise to an inference
of scienter—absent any nonculpable inferences to the contrary—as Plaintiffs' cases note.  Opp. 66.  But where, as
here, there were no credible red flags, later-discovered GAAP violations and internal control weaknesses do not give
rise to an inference of scienter.  The internal control certifications were in any event non-actionable "opinions." *See*
Opp. 79 n.60.  While Plaintiffs purport to distinguish *In re Sanofi Securities Litigation*, 155 F. Supp. 3d 386 (S.D.N.Y.
2016), they focus on a specific pleading deficiency identified in that case and ignore the separate legal proposition for

Plaintiffs' remaining arguments cannot save their scienter allegations. First, they repeat their allegations about Warrantech but fail to grapple with any of the facts demonstrating that the nonculpable inferences to be drawn from those allegations are *by far* more plausible. *Compare* Opp. 61-63, 78-79, *with* Br. 27-28. Second, Plaintiffs argue that the "length and magnitude" of the Restatement demonstrates scienter, Opp. 63-64, but there is a far more plausible nonculpable explanation: the Company and its prior auditor applied their own, honestly held interpretation of the relevant accounting standards, without any comments from the SEC's Division of Corporate Finance, for at least the period of time covered by the Restatement. Third, the purported "temporal proximity" of the purportedly misleading statements to the "first corrective disclosure," *id.* at 65-66, is not indicative of scienter here, where the far more plausible inference is that the Company simply had not made a decision to restate as of February 27, 2017. Plaintiffs' cases rebut the inference they ask the Court to draw. Plaintiffs cite *In re Metawave Communications Corporation Securities Litigation*, 298 F. Supp. 2d 1056, 1081 (W.D. Wash. 2003), for the proposition that "temporal proximity between last misleading statement and corrective disclosure supports an inference of knowledge," Opp. 65, but *Metawave* rejected that inference, finding that "the mere fact that the January 8, 2002 press release was issued just three weeks before Metawave announced the change in its revenue recognition policy . . . *did not mean* that Defendants knew that prior statements about revenue were false at the time they were made," 298 F. Supp. 2d at 1081 (emphasis added). The temporal proximity point in *In re CPI Card Group Inc. Securities Litigation*, 2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) (Kaplan, J.), is wholly distinguishable: there the company admitted a few months after an initial public offering that sales had slowed. *Id.*

---

which Defendants cited it. Because the falsity of a statement "based on my knowledge" "is entirely dependent on what [the defendant] knew, not on what was objectively true at the time of the statement," *id*. at 402, Plaintiffs' failure to allege subjective falsity renders the internal control certifications non-actionable, *see* Br. 33-34.

9

at \*4.  *That* timing may have been suspicious, but Plaintiffs do not explain how Defendants would benefit from accounting expected immaterial corrections to financial statements a few weeks before announcing a restatement.  No inference is more compelling than the nonculpable one: the corrections simply turned out to be more significant than Defendants anticipated on February 27. Finally, the fact that the Company replaced Pipoly as CFO, but retained him as an employee in another role, is likewise benign.  This is a far cry from the cases Plaintiffs cite, where an officer was forced to resign and the defendants "failed to suggest a plausible opposing inference."  *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008).

Ultimately, the most plausible inference in this case is that Defendants did not intend to engage in fraudulent conduct: they reasonably believed that their financial statements were accurate at the time they were issued, a new auditor later recommended changes based on its subjective accounting judgments,[11] and AmTrust complied with the new auditor's recommendations.[12]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' opening brief, the Complaint should be dismissed with prejudice.

---

[11]  Plaintiffs assert AmTrust was "instructed" to change auditors by a New York agency reviewing a particular transaction.  Opp. 73 n.51.  But AmTrust indisputably could have declined to enter into the transaction to avoid switching auditors, and would have if it had been engaged in a purported years-long fraud.  It chose to switch because it was not.

[12]  Without any primary violations, Plaintiffs' control-person liability claims (Counts III & V) necessarily fail as well. Br. 34.  Those claims should also be dismissed because, while the general rule is that control-person claims can be pled in the alternative, Opp. 81, Plaintiffs' "own theory" precludes such an approach in this case, *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999); *accord City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 (S.D.N.Y. 2012).  Finally, the secondary liability claims should be dismissed because Plaintiffs fail to allege culpable participation.  *See* Br. 34-35.  They cite a case in which this Court found that Section 20(a) plaintiffs need not do so, Opp. 81, but they ignore this Court's subsequent decision to the contrary, *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at \*4 (S.D.N.Y. Oct. 22, 2013) (Kaplan, J.), which accords with "the majority of district courts in this Circuit," *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014).  Defendants explained why culpability is similarly required under Section 15, despite non-controlling authority to the contrary.  Br. 35 n.34.  Plaintiffs have no substantive response, and their acknowledgement that the Second Circuit has deferred resolution of this question belies their characterization of Defendants' position as "nonsensical."  Opp. 82 & n.61.  While scienter allegations may satisfy culpability requirements, the scienter allegations here are inadequate for the reasons discussed above, and Plaintiffs in any case affirmatively disclaimed all scienter allegations for purposes of the Section 15 claim.  *See* Compl. at 41 n.6.

Dated:  New York, New York
        January 2, 2018

                                    GIBSON, DUNN & CRUTCHER LLP


                                    By: /s/ Lawrence J. Zweifach
                                        Mark A. Kirsch
                                        Lawrence J. Zweifach
                                        Caitlin J. Halligan
                                        Akiva Shapiro
                                        200 Park Avenue
                                        New York, New York 10166-0193
                                        Tel: (212) 351-2662
                                        Fax: (212) 351-6362
                                        LZweifach@gibsondunn.com

                                        *Attorneys for Defendants AmTrust Finan-
                                        cial Services, Inc., Barry D. Zyskind,
                                        Ronald E. Pipoly Jr., Donald T. DeCarlo,
                                        Susan C. Fisch, Abraham Gulkowitz,
                                        George Karfunkel, and Jay J. Miller*

11