**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

AMTRUST FINANCIAL SERVICES, INC. SECURITIES LITIGATION

This document applies to: All Cases

Case No. 1:17-cv-1545 (LAK)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Dated: January 2, 2018

Gregg L. Weiner
Christopher Thomas Brown
Matthew P. Hendrickson
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
gregg.weiner@ropesgray.com
thomas.brown@ropesgray.com
matthew.hendrickson@ropesgray.com

*Attorneys for Defendants Morgan Stanley & Co., LLC, Citigroup Global Markets, Inc., UBS Securities LLC, RBC Capital Markets, LLC, and Keefe, Bruyette & Woods, Inc.*

The Underwriter Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the claims asserted against them in the Amended Complaint (all capitalized terms herein are defined in the Underwriter Defendants' opening Memorandum of Law in Support of their Motion to Dismiss).

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition to Defendants' Motions to Dismiss (the "Opposition") does not rescue their deficient complaint. As an initial matter, for the reasons stated in AmTrust's reply brief, Plaintiffs have failed to adequately allege a false or misleading statement of material fact in any relevant offering document. This defeats all of the claims against the Underwriter Defendants under Sections 11 and 12(a)(2) of the Securities Act.

Beyond that, the Opposition reinforces the fact that the Underwriter Defendants' expert-reliance defense under Section 11 and reasonable care defense under Section 12(a)(2) are apparent on the face of the Amended Complaint. The Opposition initially acknowledges the failure to plead any facts whatsoever with respect to the Underwriter Defendants, asserting the only thing Plaintiffs must do to state a claim is name the Underwriters and allege a materially false or misleading statement in the registration statement. (Plaintiffs' Opp., Dkt. No. 108, p. 46.) This position turns a blind eye to the express right of underwriters to rely on expertised portions of a registration statement, such as BDO's unqualified expert accounting opinions here. 15 U.S.C. §77k(b)(3)(C). Given the statutory expert-reliance defense, in the absence of "red flags" known to the Underwriters, the mere assertion of a materially false or misleading statement in the expertised portion of a registration statement is inadequate under *Twombly* and *Iqbal*. The Supreme Court made clear in those cases that Plaintiffs' "complaint must contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

By declaring that merely naming the Underwriters and asserting a misstatement to be sufficient pleading, Plaintiffs in effect ask this Court to presume that the Underwriters had no basis to reasonably rely on the opinions of the Company's auditors regarding complex, technical accounting judgments concerning the timing—but not the amount—of legitimate revenues. There is no basis at all in the Amended Complaint supporting such presumptions, much less one that is "plausible on its face," as *Twombly* and *Iqbal* require. The Amended Complaint alleges nothing to suggest that the Underwriter Defendants—who are not accountants—should not have relied on BDO's unqualified audit opinions. Indeed, the only "red flags" that Plaintiffs point to in their Opposition are things allegedly known to the Company and its auditors, not the Underwriters. More critically, in order to skirt the heightened pleading requirements of Rule 9(b), the Amended Complaint expressly disclaims pleading the supposed "red flags" against the Underwriter Defendants. (*See* Am. Comp. ¶¶ 232, 241). Plaintiffs cannot now do an about-face in their Opposition and point to those allegations to make up for the lack of factual allegations that would negate the Underwriters' statutory right to rely on the unqualified expert accounting opinions of a major public accounting firm concerning the technical accounting judgments at issue here.

Finally, the Opposition does not cure Plaintiffs' lack of standing under Section 12(a)(2) of the Securities Act to sue certain of the underwriters in connection with the September 2016 offering. Contrary to their misreading of case law, Plaintiffs are in fact required to allege who bought what stock from whom in that offering. They have not done so with respect to Morgan Stanley, UBS, and KBW, meaning that they have failed to adequately allege standing to bring Section 12(a)(2) claims against those underwriters with respect to the September 2016 offering.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS UNDER SECTION 11 AND SECTION 12(a)(2) OF THE SECURITIES ACT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE ACTIONABLE MISSTATEMENTS OF MATERIAL FACT

The Underwriter Defendants expressly incorporate the argument set forth in Section A of AmTrust's Reply Brief. As explained more fully therein, Plaintiffs continue to conflate the mere existence of AmTrust's restated financials with a sufficiently alleged actionable misstatement. This does not suffice where, as here, the restatement at issue arose from a change in accounting judgments, and where every penny of revenue reported by AmTrust was real. Adopting a new accounting judgment on a complicated GAAP issue is not sufficient to state a claim under Sections 11 or 12(a)(2). As a consequence, the Securities Act claims must be dismissed as to all Defendants. (*See* AmTrust Reply at Section A.)

### II. THE UNDERWRITER DEFENDANTS' DILIGENCE DEFENSES ARE APPARENT ON THE FACE OF THE AMENDED COMPLAINT

Plaintiffs seek to evade the Underwriter Defendants' reasonable reliance and reasonable care defenses by claiming that they are not available at the motion to dismiss phase. This assertion is simply inaccurate. Where, as here, those defenses are apparent on the face of the complaint, they are properly raised in a motion to dismiss. *See In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 317 (S.D.N.Y. 2011) ("[A]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.") (citation omitted). The Opposition in effect argues that, unless and until the Underwriters affirmatively prove otherwise, this Court must presume that the Underwriters could not rely on the opinions of AmTrust's auditors for purposes of Section 11, and that they did their work without due care for purposes of Section 12(a)(2). The Amended Complaint provides no factual allegation whatsoever supporting

either presumption. Indeed, Plaintiffs' approach would improperly relieve them of their pleading burden with respect to the Underwriters. Under these circumstances, dismissal of the Section 11 and Section 12(a)(2) claims against the Underwriter Defendants is proper.

A. The Underwriter Defendants' Reasonable Reliance Defense Under Section 11 Is Apparent on the Face of the Amended Complaint.

As an initial matter, the Opposition states that the Underwriter Defendants have asserted a reliance defense only as to the audited financial results, but not as to the allegations regarding AmTrust's systems of internal controls. (Plaintiffs' Opp., Dkt. No. 108, p. 43, n. 31.) This is inaccurate: the Underwriter Defendants addressed these allegations in their Opening Brief. (Opening Brief, Dkt. No. 105 at p. 3, 6, 13 n. 5.) The fact that BDO reviewed and opined upon the relevant portions of AmTrust's audited financials is not in dispute, as the Amended Complaint alleges as much. (Am. Compl. ¶ 27.) The Underwriter Defendants were entitled to rely on these "expertised" opinions, shielding them from any potential liability under Section 11. *See* 15 U.S.C. § 77k(b)(3)(C); *see also In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 664 (S.D.N.Y. 2004) ("audited financial statements are considered expertised portions of a registration statement."); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175 (C.D. Cal. 2008) ("[U]nderwriters may reasonably rely on auditors' statements, absent red flags that the underwriters were in a position to see."); *Feyko v. Yuhe*, No. CV 11-05511 DDP PJWX, 2013 WL 816409, *8 (C.D. Cal. Mar. 5, 2013) ("[U]nderwriters occupy a special place in Section 11 jurisprudence because they are allowed to rely on auditors' work, absent red flags.").

Plaintiffs attempt to sidestep the reasonable reliance defense based on BDO's unqualified audit opinions in four specific ways, none of which is availing.

*First*, Plaintiffs incorrectly argue that the reasonable reliance defense is not available on a motion to dismiss. Yet the very cases Plaintiffs cite state that the reliance defense "may be

raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 317 (S.D.N.Y. 2011) (citation omitted); *see also In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 322 (S.D.N.Y. 2013) (reliance defense may be successful on a motion to dismiss if the defense "appears on the face of the complaint") (citation omitted); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 401 (S.D.N.Y. 2013) ("it may be appropriate for courts to dismiss a claim on the basis of the [reliance] defense.").[1]

*Second*, Plaintiffs argue that the "Underwriter Defendants simply have not demonstrated that it is beyond doubt that Plaintiffs cannot ultimately prove facts negating the reliance defense or that the Complaint itself establishes the defense. Nor can they at this point." (Plaintiffs' Opp., Dkt. No. 108, p. 46.) This assertion misses the point that a motion to dismiss for failure to state a claim is about testing the adequacy of Plaintiffs' pleading, not the sufficiency of yet-to-be-developed evidence. Before getting to the stage where "proving facts negating the reliance defense," to use Plaintiffs' phrase, is even relevant, Plaintiffs must adequately plead "*sufficient factual matter*" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (emphasis added). But with respect to the Underwriter Defendants, Plaintiffs have plead *no factual matter whatsoever* going to the reasonableness of reliance or the adequacy of diligence. Thus, Plaintiffs' argument is premised on the Court's accepting as a plausible presumption the

---

[1] *In re Morgan Stanley Information Fund Securities Litigation*, cited by Plaintiffs, is inapposite, as that case did not actually address whether the reliance defense may be raised on a motion to dismiss. 592 F.3d 347 (2d Cir. 2010). The other case cited by Plaintiffs in support of this proposition is likewise inapposite, as it is exclusively about the due diligence defense rather than the expert reliance defense. *See Fed. Deposit Ins. Corp. v. Chase Mortg. Fin. Corp.*, No. 12 CIV 6166 LLS, 2013 WL 5434633, at *9 (S.D.N.Y. Sept. 27, 2013) (noting that due diligence defense would not be appropriately raised at the motion to dismiss phase, but saying nothing about the expert reliance defense).

idea that the Underwriter Defendants could not reasonably rely on the unqualified expert accounting opinions of BDO regarding the technical accounting issue of the timing of recognition of revenue from legitimate transactions. It is not reasonable, much less plausible, for the Court to draw such a conclusion with no allegations of "red flags" known to the Underwriters.[2]

*Third*, Plaintiffs unsuccessfully attempt to paper over their failure to plead "red flags" required to withstand the Underwriter Defendants' motion to dismiss by pointing to allegations irrelevant to the Underwriters. In the Amended Complaint, Plaintiffs specifically disclaimed pleading every single purported red flag mentioned in the Opposition as against the Underwriter Defendants. (Plaintiffs' Opp., Dkt. No. 108 p. 48–49 (citing "red flags" in Amended Complaint ¶¶ 8, 288, 290–99, 499–500 when the Complaint makes clear in ¶¶ 232 and 241 that none of those paragraphs are pled against the Underwriters).) Plaintiffs should not be permitted to explicitly exclude the Underwriter Defendants from any red flags plead in their complaint in an effort to escape the heightened Rule 9(b) pleading standard, while at the same time claiming that such red flags were plead as to the Underwriters in response to the motion to dismiss.[3]

[2] The cases cited by Plaintiffs are distinguishable in three key respects. First they involve allegations of "red flags" against the underwriters. *See, e.g., MF Global*, 982 F. Supp. 2d at 322–23 (complaint included red flags plead against the underwriters specifically); *Gaynor v. Miller*, No. 3:15-CV-545-TAV-CCS, 2017 WL 3449078, at *15 (E.D. Tenn. Aug. 11, 2017) (same); *OSG*, 971 F. Supp. 2d at 401 (underwriters not exempted from red flags plead as to other defendants). Second, they also involved alleged misstatements that were not part of the audit opinions. *See, e.g., Lehman Bros.*, 799 F. Supp. 2d at 285 (complaint included allegations of misstatements concerning risk management policies and frequent and significant departures from these stated policies). And third, they involved allegations of extensive wrongdoing which lead to the issuer's bankruptcy. *See, e.g., id.* at 278 (alleging that Lehman engaged in transactions without a legitimate business purpose or economic substance to manipulate key financial metrics); *Gaynor*, 2017 WL 3449078, at *2 (alleging that the company massively overstated the value of its primary assets).

[3] Moreover, all of the alleged red flags in the Amended Complaint relate to AmTrust and BDO. There is not a single allegation in the Amended Complaint regarding the knowledge or

*Fourth*, Plaintiffs argue that that they are not required to plead "red flags" against the Underwriter Defendants because, they say, it is the underwriters' affirmative burden to prove due diligence. (Plaintiffs' Opp., Dkt. No. 108, p. 47.) This wrongly conflates the requirements of 15 U.S.C. 77k(b)(3)(C), the reliance defense applicable to expertised portions of a registration statement, with those of 15 U.S.C. 77k(b)(3)(A), the general due diligence defense applicable to all parts of a registration statement. Plaintiffs' reliance on *In re WorldCom*, in particular, is therefore misplaced. 346 F. Supp. 2d 628 (S.D.N.Y. 2004). In *WorldCom*, the underwriters argued that they could rely on *unaudited* financial statements present in the registration statement because they received a comfort letter. The Court was not persuaded and held that such an argument "converts the due diligence defense into the reliance defense and balkanizes the task of due diligence." *Id.* at 683. Here, the Underwriters have a clear reliance defense based on *audited* financial statements. As Judge Cote (quoting Justice Powell) wrote earlier in the *WorldCom* opinion, "This provision is in the Act because, *almost by definition, it is reasonable to rely on financial statements certified by public accountants.*" *Id.* at 672 (emphasis in original).

For these reasons, the Underwriter Defendants reasonably relied upon BDO's unqualified expert accounting opinion, and the Section 11 claims against them should be dismissed.

B. <u>The Underwriter Defendants' Section 12(a)(2) Reasonable Care Defense Is Likewise Apparent on the Face of the Amended Complaint</u>.

Plaintiffs' attack on the Section 12(a)(2) "reasonable care" defense mirrors its attack on the Section 11 "reasonable reliance" defense. Specifically, the Opposition argues that the reasonable care defense under Section 12(a)(2) is unavailable on motion to dismiss, and that Plaintiffs in any event have no burden to plead "red flags." (*See* Plaintiffs' Opp., Dkt. No. 108, p. 50–51.) Both points are wrong, for the reasons set forth above and in the Underwriter

---

awareness of those "red flags" by the Underwriter Defendants. They are therefore not relevant to analyzing the reasonable reliance defense here.

Defendants' opening brief. *See MF Global*, 982 F. Supp. 2d at 308 (Sections 11 and 12(a)(2) of the Securities Act "provisions have roughly parallel elements, such that a plaintiff who fails to plead a Section 11 claim necessarily fails to plead a Section 12(a)(2) claim as well.") (citations omitted).

Moreover, the fact that the reasonable care defense may, in some circumstances, require a more fact-intensive inquiry than the reasonable reliance defense, does not make the defense unavailable at this stage of the pleadings. As Justice Powell noted in *John Nuveen & Co. v. Sanders*, an underwriters' reliance on audited financial statements, absent red flags, is reasonable by definition, and therefore satisfies Section 12(a)(2)'s reasonable care defense. 450 U.S. 1005, 1009, 101 S. Ct. 1719, 1721–22 (1981). As explained above, there are no red flags alleged here. Nor are there any other facts alleged about the Underwriter Defendants' diligence, much less allegations suggesting anything other than reasonable care on the part of the Underwriter Defendants. Such pleading does not pass muster under *Twombly* and *Iqbal*.[4]

For these reasons, the Underwriter Defendants' reasonable care defense is apparent on the face of the Amended Complaint. Accordingly, the Section 12(a)(2) claims against the Underwriter Defendants should be dismissed.

[4] The cases cited in the Opposition are inapposite, as none involves a situation where the reasonable care defense was raised and rejected on a motion to dismiss. For example, *Morgan Stanley* involved Section 12(a)(2) claims, but turned on whether the plaintiffs' complaint had identified any unlawful omissions in the defendant's offering documents. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010). The opinion addresses the reasonable care defense in a footnote only and with the preface "generally speaking." *Id.* at 359 n. 7. Likewise, *In re Fuwei Films Securities Litigation* addressed the reasonable care defense in a footnote, as it was not at issue. 634 F. Supp. 2d 419, 435, n. 10 (S.D.N.Y. 2009); *see also Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 68 F. Supp. 3d 439, 466 (S.D.N.Y. 2014) (addressing reasonable care defense at summary judgment, not motion to dismiss); *Mass. Mut. Life Ins. Co. v. DB Structured Prods., Inc.*, 110 F. Supp. 3d 288, 301 (D. Mass. 2015) (same).

## III. PLAINTIFFS FAIL TO PLEAD THAT THEY ARE STATUTORY PURCHASERS WITH STANDING TO BRING SECTION 12(a)(2) CLAIMS AGAINST CERTAIN OF THE UNDERWRITERS OF THE SEPTEMBER 2016 OFFERING

The law is clear that, to plead standing as a statutory purchaser under Section 12(a)(2), Plaintiffs "must identify a particular purchase from a particular defendant pursuant to a particular prospectus …." *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 585 (S.D.N.Y. 2010). Only two plaintiffs have alleged purchases from the September 2016 offering of preferred shares. Plaintiff Stanley Newmark allegedly bought shares "on the open market," while Plaintiff ILRLT allegedly bought from RBC. There is no named plaintiff who has alleged a purchase of preferred shares from Morgan Stanley, UBS, or KBW. Thus, the Section 12(a)(2) claims must be dismissed against them with respect to the September 2016 Offering.

Citing to *Lehman Brothers* and *MF Global*, Plaintiffs respond that they have properly alleged standing by alleging generally that a plaintiff purchased preferred shares "in" or "pursuant to" the September 2016 offering and, therefore, such a plaintiff could have purchased from any of the Underwriters. (Plaintiffs' Opp., Dkt. No. 108, pp. 52–53.) Even if that were sufficient—and the Underwriter Defendants' authority makes clear that it is not—Plaintiffs have alleged no such thing. ILRLT alleges that it purchased its preferred shares directly from RBC. (Am. Compl. ⁋ 20.) It cannot, therefore, bring claims against the other Underwriter Defendants that it implicitly acknowledges were not the parties from whom it purchased its preferred shares. *See Griffin v. PaineWebber, Inc.*, No. 99 CIV 2292 (VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001) (dismissing a Section 12(a)(2) claim against an underwriter where the sole named plaintiff alleged purchases only from another underwriter.).[5] Mr. Newmark, for his part, does not allege

---

[5] Plaintiffs' attempt to distinguish *Griffin* is misleading. While it is true that the court there stated that "a complaint does not need to specify which plaintiffs bought [] securities from [the underwriter] or to provide details of the purchase in order to establish that [the underwriter] was a statutory seller," it went on to note that "[t]his conclusion, however, does not resolve the issue

that he purchased his preferred shares in or pursuant to the offering at all, let alone from a specific Underwriter Defendant. (Am. Compl. ¶ 21). There are simply no allegations in the Amended Complaint that can be read, even under the generous standard proposed by Plaintiffs, as supporting standing to bring Section 12(a)(2) claims against any underwriter other than RBC as to the September 2016 offering.

Plaintiffs' remaining arguments concerning standing are wholly unsupported. First, it is not sufficient that the named Plaintiffs allege their claims on behalf of other class members who may have standing themselves. Courts have consistently held that the named plaintiffs in a class action must, themselves, plead standing in order for a claim to be maintained. *See In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 RJS, 2012 WL 4471265, at *25 (S.D.N.Y. Sept. 28, 2012) ("it is well established that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class") (citations omitted). Second, it is not relevant that ILRLT and Mr. Newmark submitted certifications regarding their purchases because, as explained above, the purchases those certifications purport to evidence do not give rise to standing.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in the Underwriter Defendants' opening Memorandum of Law in Support of their Motion to Dismiss, the claims asserted against the Underwriter Defendants in the Amended Complaint should be dismissed with prejudice.

---

of whether [plaintiff] himself has stated a claim against [the underwriter]" because it does not "address[] the issue of the *initial standing of the named plaintiff* to bring such a claim." *Griffin*, 2001 WL 740764, at *2 (emphasis added). That is, even if a plaintiff can allege that an underwriter was a statutory seller to some possible plaintiff, it cannot sustain a claim itself unless it alleges that the underwriter was the statutory seller to that particular named plaintiff.

Dated New York, New York
January 2, 2018

ROPES & GRAY LLP

By:/s/ Gregg L. Weiner

Gregg L. Weiner
Christopher Thomas Brown
Matthew P. Hendrickson
1211 Avenue of the Americas
New York, New York 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
gregg.weiner@ropesgray.com
thomas.brown@ropesgray.com
matthew.hendrickson@ropesgray.com

*Attorneys for Morgan Stanley & Co., LLC, Citigroup Global Markets, Inc., UBS Securities LLC, RBC Capital Markets, LLC, and Keefe, Bruyette & Woods, Inc.*