UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                      :
                                       :
In re AMTRUST FINANCIAL SERVICES,      :
INC. SECURITIES LITIGATION              :
                                       :    No. 17-cv-01545 (LAK)
                                       :
--------------------------------------------------------------- :    <u>CLASS ACTION</u>
                                       :
                                       :
This Document Applies To:                  :
                                       :
           All Cases                       :
                                       :
                                       :
--------------------------------------------------------------- X

<br>

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BDO USA, LLP'S
MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT**

<br>

Dated: New York, New York          MCDERMOTT WILL & EMERY LLP
        December 5, 2018             Timothy E. Hoeffner
                                      Jason D. Gerstein
                                      Gary D. Adamson
                                      340 Madison Avenue
                                      New York, New York 10173

                                      *Attorneys for Defendant*
                                      *BDO USA, LLP*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND.................................................................................................3

      A.      Summary of Factual Allegations .......................................................................3

              1.      BDO's Audit Opinions .....................................................................3
              2.      AmTrust's Restatement ....................................................................5
              3.      The Wall Street Journal Article .......................................................7
              4.      The October 12, 2018 SEC Order ....................................................8

      B.      Procedural Background....................................................................................10

      C.      Summary of Claims Against BDO ....................................................................11

              1.      Section 11 of the Securities Act.......................................................11
              2.      Section 10(b) of the Exchange Act and Rule 10b-5 ...........................11

ARGUMENT .....................................................................................................................12

I.      THE SECTION 11 CLAIM FAILS...............................................................................12

      A.      BDO's Audit Opinions are Statements of Opinion, Not Fact...............................13

      B.      Plaintiffs Fail to Allege That BDO Subjectively Disbelieved Its Audit Opinions
              Regarding Amtrust's Financial Statements .........................................................17

               1.      Plaintiffs Fail to Allege That BDO's Opinions Regarding
                      Amtrust's Financial Statements Contained Embedded
                      Misstatements of Fact ....................................................................18
               2.      Plaintiffs' Allegations That AmTrust's Internal Controls
                      Over Financial Reporting Were Ineffective are Insufficient
                      to State a Claim Against BDO .........................................................20
               3.      Plaintiffs Fail to Allege That BDO's Opinions Regarding
                      Compliance With PCAOB Standards Were Misstatements
                      of Fact .........................................................................................21

      C.      Plaintiffs Do Not Allege a Material Omission....................................................23

              1.      Plaintiffs' Omission Allegations Are Too Conclusory to
                      State a Claim ................................................................................23
               2.      Plaintiffs' Omission Theory Fails Because It Is Based On
                      Uncorroborated Hearsay .................................................................25

**TABLE OF CONTENTS**
**(continued)**

II.    THE SECTION 10(b) CLAIM FAILS ................................................................26

      A.    Plaintiffs Fail to Allege a Material Misstatement or Omission ............................26

      B.    Plaintiffs Fail to Plead Auditor Scienter ..................................................28

              1.    The SEC Order Exclusively Alleges Violations of
                    Professional Auditing Standards, Which Is Insufficient By
                    Itself to Plead Scienter ....................................................................30
              2.    The Facts In the SEC Order Do Not Establish
                    Corresponding Fraudulent Intent ................................................31

      C.    BDO's Alleged Failure to Withdraw Its Audit Opinion and/or Disclose Audit
            Deficiencies Is Also Insufficient to Establish Scienter..........................................34

CONCLUSION...........................................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*In re Advanced Battery Techs. Inc.*,
    781 F.3d 638 (2d Cir. 2015)............................................................................29

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
    11 Civ. 2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ..................................29

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
    No. 08- cv-4772, 2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013) ............................21

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)..........................................................30

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*.,
    493 F.3d 87 (2d Cir. 2007).......................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)..........................................................12

*Buttonwood Tree Value Partners, LP v. Sweeney*,
    2012 WL 2086607 (C.D. Cal. June 7, 2012) ...............................................16

*Caldwell v. Berlind*,
    543 F. App'x 37 (2d Cir. 2013) ................................................................24

*City of Brockton Ret. Sys. v. Avon Prods. Inc.*,
    2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014).................................................28

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    129 F. Supp. 3d 48 (S.D.N.Y. 2015) (Kaplan, J.)................................................16

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    No. 12-cv-0256, 2016 WL 6652731 (S.D.N.Y. Nov. 10, 2016) (Kaplan, J.)........17, 21, 23, 25

*In re Coty Inc. Sec. Litig.*,
    No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).........................................24, 25

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,
    454 F.3d 1168 (10th Cir. 2006) ...............................................................20

*In re DNTW Chartered Accountants Sec. Litig.*,
    172 F. Supp. 3d 675 (S.D.N.Y. 2016).......................................................12, 33, 34

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)......................................................................30

*In re Doral Fin. Corp. Sec. Litig.*,
563 F. Supp. 2d 461 (S.D.N.Y. 2008), *aff'd sub nom. W. Virginia Inv. Mgmt.
Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009)....................................31

*ECA Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................................................................................34

*In re Fannie Mae 2008 Sec. Litig.*,
742 F. Supp. 2d 382 (S.D.N.Y. 2010)....................................................................22

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)....................................................................................32

*Harris v. AmTrust Fin. Servs., Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)........13

*Hufnagle v. Rino Int'l Corp.*,
2013 WL 160223 (C.D. Cal. Jan. 14, 2013) ..........................................................16

*In re IAC Sec. Litig.*,
695 F. Supp. 2d 109 (S.D.N.Y. 2010).....................................................................26

*Iowa Pub. Emp.'s Ret. Sys. v. Deloitte & Touche LLP*,
919 F. Supp. 2d 321 (S.D.N.Y. 2013).....................................................................29

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135, 131 S. Ct. 2296 (2011) .......................................................27, 31, 32

*Johnson v. CBD Energy Ltd.*,
No. 15-cv-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) ...............................19

*In re Lehman Bros. Sec. & ERISA Litig.*,
131 F. Supp. 3d 241 (S.D.N.Y. 2015) (Kaplan, J).........................................15, 19

*In re Lehman Bros. Sec. & ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) (Kaplan, J.)...............................................15

*Levitt v. J.P. Morgan Sec., Inc.*,
710 F.3d 454 (2d Cir. 2013)....................................................................................26

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
910 F. Supp. 2d 561 (S.D.N.Y. 2012)..............................................................21, 23

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
939 F. Supp. 2d 360 (S.D.N.Y. 2013).....................................................................29

iv

*In re Marsh & McIennan Companies, Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006).....................................................................34

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013)......................................................................31

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003)......................................................................17

*Milman v. Box Hill Sys. Corp.*,
  72 F. Supp. 2d 220 (S.D.N.Y. 1999)........................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)......................................................................................3

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015)....................................................................................... passim

*In re Oprins*,
  Admin. File No. 3-13797, 2010 WL 5376531 (ALJ Dec. 28, 2010).........................32

*Pearlstein v. BlackBerry Ltd.*,
  93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 23 (2d Cir. 2016).........13

*In re Petrobras Sec. Litig.*,
  No. 14-cv-9662, 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016) ..............................19

*In re Puda Coal Sec. Inc. Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014), *aff'd sub nom. Querub*, 649 F. App'x 55.............18, 19

*Querub v. Hong Kong*,
  649 F. App'x 55 (2d Cir. 2016) ..............................................................15, 18, 19

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  714 F. Supp. 2d 475 ................................................................................................24

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  No. 08-cv-10841, 2010 WL 4903619 (S.D.N.Y. Dec. 1, 2010) ..............................24

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)........................................................................................29

*S. Cherry St. LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)........................................................................................29

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2015 WL 3833849 (M.D. Pa. June 22, 2015)......................................................16, 20

*Shalala v. Guernsey Mem'l Hosp.*,
  514 U.S. 87, 115 S. Ct. 1232 (1995)..................................................................13

*In re Smith Gardner Sec. Litig.*,
  214 F. Supp. 2d 1291 (S.D. Fla. 2002) .............................................................14

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014)...........................................................20, 29

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA Ltd.*,
  645 F. App'x 72 (2d Cir. 2016) ...............................................................15, 20

*Stephenson v. PricewaterhouseCoopers, LLP*,
  768 F. Supp. 2d 562 (S.D.N.Y. 2011)...............................................................33

*In re SunEdison, Inc. Sec. Litig.*,
  300 F. Supp. 3d 444 (2018) .........................................................................15, 28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 127 S. Ct. 2499 (2007).......................................................3, 28, 32

*Thor Power Tool Co. v. C.I.R.*,
  439 U.S. 522, 99 S. Ct. 773 (1979)....................................................................13

*Tongue v. Sanofi*,
  816 F. 3d 199 (2d Cir. 2016)...............................................................................26

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
  703 F. Supp. 2d 362 (S.D.N.Y. 2010).................................................................31

*Wilson v. MicroFinancial, Inc.*,
  No. 03-cv-11883, 2006 WL 1650971 (D. Mass. June 13, 2006)............................14

*In re Winstar Commc'ns*,
  2006 WL 473885 (S.D.N.Y. Feb 27, 2006)........................................................31

Statutes, Regulations, and Rules

Fed. R. Civ. P. 9(b) ...............................................................................................12

Fed. R. Civ. P. 12(b)(6)...........................................................................................12

PSLRA, 15 U.S.C. § 78u–4 ....................................................................12, 28, 29

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k....................................... passim

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ............................. passim

Section 4C of the Securities Exchange Act of 1934, 15 U.S.C. § 78d-3(a)(2)......................8, 30

SEC Rule 10b-5 ..............................................................................................10, 11, 26, 32

SEC Rule 102(e) ......................................................................................................8, 30, 33

## Other Authorities

AS No. 5 ...................................................................................................................14

AS No. 10 .................................................................................................................32

AU § 110.03 ..............................................................................................................14

AU § 150.03, .04 .......................................................................................................14

AU § 230.10, .13 .......................................................................................................14

AU § 312.03, .07 .......................................................................................................14

AU § 390 ............................................................................................................ passim

AU § 508.03 ..............................................................................................................14

AU § 561.05-06 .........................................................................................................35

Defendant BDO USA, LLP ("BDO") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice the claims asserted against it in the Consolidated Second Amended Complaint ("CSAC").

## PRELIMINARY STATEMENT

Plaintiffs' initial pleading asserted a single claim against BDO for violations of Section 11 of the Securities Act of 1933.  BDO moved to dismiss that claim, and the Court heard lengthy argument on the numerous dispositive points establishing Plaintiffs' failure to plead an actionable material misstatement of fact.  The CSAC does not add new allegations material to the Section 11 claim—because it cannot—and it does not otherwise correct any of the fatal deficiencies identified by BDO in its previous motion to dismiss—because, again, it cannot.  For the Court's convenience and because the paragraph numbers in the CSAC have shifted, this memorandum includes the argument previously submitted to this Court in support of dismissal. (*See* Section I, *infra*; *see also* ECF Nos. 99, 111.)

Plaintiffs have amended their pleading to include a claim against BDO for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), alleging that BDO falsely represented it had conducted its audit of AmTrust's December 31, 2013 financial statements in accordance with professional auditing standards.  This new claim is a misplaced effort to capitalize on a recent settlement between the Securities and Exchange Commission and three members of BDO's audit team (the "SEC Order").  BDO is not a party to the SEC Order, which found that the audit team did not complete certain identified procedures prior to BDO's issuance of its 2013 audit opinion and resolved claims against the three individuals for alleged violations of auditing standards, with no admission of wrongdoing.  Critically, the new allegations are unrelated to AmTrust's 2017 restatement of financial statements.

Plaintiffs' Section 10(b) claim fails because the SEC Order does not support allegations of a material misstatement or omission of fact.  The SEC Order makes clear that the "maker" of the statement (the engagement partner, who signed the audit opinion on BDO's behalf) "***did not know*** the audit team had failed to complete necessary audit procedures and obtain sufficient audit evidence to support the report" prior to its issuance.  The mere fact that a staff member knew of incomplete audit areas does not make the entire audit opinion false.  Consequently, BDO's opinion that it performed the 2013 audit in accordance with professional auditing standards did not "falsely describe[ the speaker's] state of mind," and is not an actionable misstatement of fact.  *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326 (2015).

Additionally, as the audit team concluded when first advised that procedures were not performed, the open procedures had no impact on the accuracy of AmTrust's financial statements and none of the open audit procedures at the time of issuance concerned areas that AmTrust ultimately restated in 2017.  Because there is no connection between the then-incomplete procedures—that were performed promptly thereafter—and any misstatement of AmTrust's financial statements, Plaintiffs' Section 10(b) claim should be dismissed.  (*See* Section II.A, *infra*.)

Finally, the SEC Order did not involve—and, in fact, contradicts—allegations that BDO acted with intent to defraud investors (i.e., scienter).  As noted above, it confirms that the audit engagement partner and engagement quality reviewer "did not know" that certain audit procedures had not been performed at the time the opinion was issued.  For this reason, it focuses on the audit manager's failure to notify the audit partners, rather than the investing public, that specific procedures had not yet been completed on limited areas.  The SEC Order also confirms

that as soon as the audit partners were made aware that certain procedures had not been performed, they assessed the impact of those issues on the accuracy of the financial statements—there was none—and promptly instructed the team to complete the open procedures in accordance with the relevant auditing standards.  This also contradicts Plaintiffs' allegations that BDO intentionally concealed from investors any incomplete audit procedure that had an impact on the financial statements.  In sum, this is not a case in which BDO performed "no audit at all," the heightened standard necessary to plead auditor scienter.  (*See* Section II.B–C, *infra*.)

## FACTUAL BACKGROUND

### A.      Summary of Factual Allegations[1]

#### 1.      BDO's Audit Opinions

BDO served as AmTrust's independent auditor from 2006 until May 10, 2016.  *Id.* ¶ 199.  AmTrust is a "specialty property and casualty insurer whose products include workers' compensation, commercial automobile insurance, general liability and extended service and warranty coverage."  *Id.* ¶ 24.

In connection with its role as AmTrust's outside auditor, BDO "issued unqualified audit opinions on AmTrust's financial statement and its system of internal controls over financial reporting for each of the years ended December 31, 2012, 2013, 2014, and 2015."  CSAC ¶ 29.

---

[1] Any well-pleaded factual allegations are assumed to be true solely for purposes of this motion to dismiss and only to the extent they are not contradicted by other allegations or documents incorporated by reference, including filings with the SEC, of which the Court can take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012).

BDO issued the following audit opinion with respect to AmTrust for the year ending December

31, 2015 ("2015 Opinion"):[2]

> We have audited the accompanying consolidated balance sheets of
> AmTrust Financial Services, Inc. as of December 31, 2015 and
> 2014 and the related consolidated statements of income,
> comprehensive income, changes in stockholders' equity, and cash
> flows for each of the three years in the period ended December 31,
> 2015. In connection with our audits of the financial statements, we
> have also audited the financial statement schedules listed in the
> accompanying index. These financial statements and schedules are
> the responsibility of the Company's management. *Our
> responsibility is to **express an opinion** on these financial
> statements and schedules based on our audits.*

> We conducted our audits in accordance with the standards of the
> Public Company Accounting Oversight Board (United States).
> *Those standards require that we plan and perform the audit to
> obtain **reasonable assurance** about whether the financial
> statements are free of material misstatement.* An audit includes
> examining, on a test basis, evidence supporting the amounts and
> disclosures in the financial statements, assessing the accounting
> principles used and significant estimates made by management, as
> well as evaluating the overall presentation of the financial
> statements and schedules. ***We believe** that our audits provide a
> **reasonable basis** for our opinion.*

> ***In our opinion***, the consolidated financial statements referred to
> above present fairly, in all material respects, the financial position
> of AmTrust Financial Services, Inc. at December 31, 2015 and
> 2014, and the results of its operations and its cash flows for each of
> the three years in the period ended December 31, 2015, in
> conformity with accounting principles generally accepted in the
> United States of America.

> Also, ***in our opinion***, the financial statement schedules, when
> considered in relation to the basic consolidated financial statements
> taken as a whole present fairly, in all material respects, the
> information set forth therein.

---

[2] Plaintiffs misidentify the audit report issued by BDO for the years ending December 31, 2013
as the "2014 BDO Opinion," the audit report for the year ending December 31, 2014 as the
"2015 BDO Opinion," and the audit report covering the years ending December 31, 2014 and
2015 as the "2016 BDO Opinion."  *See* CSAC ¶¶ 205-06.

> We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), AmTrust Financial Services, Inc.'s internal control over financial reporting as of December 31, 2015, based on criteria established in Internal Control – Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) and our report dated February 29, 2016 expressed an unqualified opinion thereon.

*Id.* ¶ 206 (emphasis added).  BDO also provided similarly worded unqualified audit opinions for the years ending December 31, 2013 ("2013 Opinion"), and December 31, 2014 ("2014 Opinion").  *See id.* ¶ 205.  These audit opinions "were incorporated by reference into" Offering Materials filed by AmTrust in November 2015 and September 2016 with the Securities and Exchange Commission ("SEC"), pursuant to a June 11, 2015 registration statement.  *Id.* ¶¶ 29, 148-53.

### 2.    AmTrust's Restatement

BDO was replaced by KPMG as AmTrust's independent auditor upon the issuance of AmTrust's Form 10-Q for the second fiscal quarter of 2016.  CSAC ¶ 309.  On February 27, 2017, "AmTrust issued a press release announcing its financial results for the fourth quarter 2016 and full year December 31, 2016[.]"  *Id.* ¶ 76.  In that release, AmTrust also "announced that it would be delaying the filing of its annual report on Form-K for the year ended December 31, 2016 and that it expected to make certain corrections to its financial statements in each year dating back to fiscal year ended December 31, 2012."  *Id.*  At the time, the corrections were expected to be "'immaterial[.]'"  *Id.* ¶ 80.

On March 16, 2017, AmTrust issued a press release, filed with the SEC on Form 8-K, stating that the 2016 Form 10-K "would be further delayed" and "more time was needed to complete its consolidated financial statements and assessment of internal controls over financial reporting for the fiscal year ended December 31, 2016."  *Id.* ¶ 84.  At that time, it also announced

5

that its consolidated financial statements for 2014 and 2015, as well as for the first three quarters of 2016, "'should be restated and should no longer be relied upon.'"  *Id.* ¶ 85.  It similarly announced that its earnings and press releases for these periods, "'as well as the Company's fourth quarter and fiscal 2016 earnings release . . . should no longer be relied upon.'"  *Id.* Finally, it announced that "the audit reports issued by BDO for . . . 2014 and 2015, including the reports on the effectiveness of AmTrust's internal control over financial reporting on those dates 'likewise should no longer be relied upon.'"  *Id.* ¶ 86.

There was no suggestion of intentional misconduct in connection with the restatement. Instead, the restatement primarily related to a technical accounting issue: AmTrust's "'upfront recognition of a portion of warranty contract revenue associated with administration services[.]'" *Id.* ¶ 87.  Specifically, AmTrust recognized a portion of the revenue from its warranty business immediately, and not over the period in which it was obligated to warrant the relevant product. *Id.* ¶¶ 111-12.  This revenue was "'previously recognized upfront, based on *management's interpretation* of accounting guidance related to multiple-element revenue recognition.'"  *Id.* ¶ 77 (emphasis added); *see also id.* ¶ 87 (the "upfront recognition" of revenue was "based on [AmTrust's] *interpretation* of ASC 605") (emphasis added).  The correction revised downward numerous expenses, which were previously recognized up front and not over the course of the relevant warranty periods.  *Id.* ¶ 112.

As is evident from the face of Plaintiff's complaint, AmTrust's use of upfront revenue recognition had been repeatedly disclosed in its SEC filings.  *See id.* ¶ 162 ("'The Company recognizes revenue related to promotion, marketing and administration services *at the time of the sale* of [extended service plans].  However, the Company defers *a portion* of service revenue based upon an estimate of administrative services to be provided in future periods.'") (quoting

2014 Form 10-K) (emphasis added).  Moreover, despite significant probing of AmTrust's accounting practices in the press and by short-sellers, the method of recognition of revenue in AmTrust's Warrentech business was not one of the issues raised.  *See id.* ¶¶ 273-82 (summarizing articles).

On April 4, 2017, AmTrust filed its 2016 Form 10-K, wherein it restated its 2012-2016 financial results.  *Id.* ¶ 90.  In addition to revising the accounting treatment of warranty-related income and expenses, AmTrust revised accounting treatment for several other income and expense streams.  *See id.* ¶¶ 111-25.  As discussed below, none of the restated items were the subject of the SEC's Order involving members of BDO's audit team.

### 3.    The Wall Street Journal Article

On April 11, 2017, one week after AmTrust issued the 2016 Form 10-K and a day after the alleged BDO Subclass period ended, *The Wall Street Journal* ("WSJ") published an article concerning AmTrust.  CSAC ¶ 94.  The article's sole source was a claimed anonymous former employee of BDO.  *See id.*  The article did not identify the individual's role at BDO or connection to the AmTrust audits, if any.  *See id.*  According to the article, in 2014, the former BDO employee taped several conversations "'with his/her colleagues about BDO's audits of AmTrust.'"  *Id.*  The article alleged that these "'clandestine recordings . . . were part of a continuing [SEC] investigation.'"  *Id.*  The recordings were "'described',' but not provided, to the WSJ.  *Id.*  The article also claimed, without reference to any source, that certain "information, which include[d] emails and internal documents," had resulted in investigations by the SEC and the FBI.  *Id.* ¶ 218.  The article does not provide any details about these emails and documents, and neither the article nor the CSAC claim to have any knowledge of said contents. *See id.*  Importantly, none of the hearsay statements attributed to this anonymous individual are linked to any purported misstatement in AmTrust's financial statements.

4.      The October 12, 2018 SEC Order

On October 12, 2018, the SEC issued an order concerning conduct of one former BDO employee and two former partners during the audit of AmTrust's financial statements for the year-ended December 31, 2013 (the "SEC Order").  CSAC ¶¶ 550-51; ECF No. 140-1.  BDO is not named in the SEC Order.  The SEC instituted the administrative proceedings pursuant to Section 4C of the Exchange Act and Rule 102(e)(1)(ii) of the Commission's Rules of Practice. While the SEC has the power to institute proceedings against an auditor for violations of the federal securities laws, Plaintiffs attempt to allege in this case, it did not do so here.[3]  Instead, the SEC instituted proceedings for "unethical or improper professional conduct," i.e., professional negligence.  Rule 102(e)(1)(ii), Section 4C.

The SEC Order finds that the former engagement partner, former engagement quality review partner, and senior manager staffed on the 2013 audit violated Public Company Accounting Oversight Board ("PCAOB") standards by releasing the 2013 Opinion despite having failed to complete necessary audit procedures.  *Id.* ¶¶ 564-67.  The audit procedures identified in the SEC order are (1) journal entry testing; (2) internal controls; (3) premium revenue, premium receivables, and share-based compensation, and (4) vendor fraud testing.  *See* SEC Order ¶¶ 31-39.  The conduct addressed in the SEC Order does not extend beyond the 2013 Opinion issued in connection with AmTrust's 2013 Form 10-K and does not extend to the items addressed by AmTrust's restatement.

According to the SEC Order, the engagement partner responsible for the audit and the engagement quality review partner did not know that the aforementioned audit procedures were

---

[3] Rule 102(e)(1)(iii) provides, in pertinent part, that: "The Commission may . . . deny, temporarily or permanently, the privilege of appearing or practicing before it . . . to any person who is found to . . . to have willfully violated, or willfully aided and abetted the violation of any provision of the Federal securities laws or the rules and regulations thereunder."

8

incomplete when the engagement partner released the 2013 BDO Opinion, SEC Order ¶ 4, and did not discover the incomplete audit procedures until approximately one week after the 2013 Opinion was published in AmTrust's 2013 Form 10-K. CSAC ¶ 569. The engagement partner then immediately instructed the audit team "to complete the omitted procedures and assess their potential impact on BDO's audit report" pursuant to AU § 390. *Id.* ¶ 570.

AU § 390 identifies the considerations and procedures to be applied by an auditor who, subsequent to the issuance of his report on audited financial statements, concludes that one or more auditing procedures considered necessary at the time of the audit were omitted, but where the auditor does not have an indication the financial statements are not fairly presented. AU § 390 provides, in relevant part:

> .04 When the auditor concludes that an auditing procedure considered necessary at the time of the audit in the circumstances then existing was omitted from his audit of financial statements, he should assess the importance of the omitted procedure to his present ability to support his previously expressed opinion regarding those financial statements taken as a whole. A review of his working papers, discussion of the circumstances with engagement personnel and others, and a re-evaluation of the overall scope of his audit may be helpful in making this assessment. For example, the results of other procedures that were applied may tend to compensate for the one omitted or make its omission less important. Also, subsequent audits may provide audit evidence in support of the previously expressed opinion.

> .05 If the auditor concludes that the omission of a procedure considered necessary at the time of the audit in the circumstances then existing impairs his present ability to support his previously expressed opinion regarding the financial statements taken as a whole, and he believes there are persons currently relying, or likely to rely on his report, he should promptly undertake to apply the omitted procedure or alternative procedures that would provide a satisfactory basis for his opinion.

AU § 390.04-.05, *Consideration of Omitted Procedures After the Report Date*.

9

The engagement partner and engagement quality review partner followed these procedures. The SEC Order does not find that the BDO partners deviated from or violated AU § 390, but instead only questions the documentation of the issue in the audit work papers. Following this remediation, which occurred promptly within 30 days of the 2013 Opinion, the engagement partner "reviewed the completed audit work and concluded that the omitted procedures did not affect BDO's previously issued audit report." *Id.* ¶ 573.

There is no finding in the SEC Order and no allegation in the CSAC that the audit procedures completed after March 3, 2014 involve the recognition of revenue for Warrentech or any other item restated by AmTrust in 2017. *Id.* ¶¶ 575-79. The SEC Order also does not find that the engagement partner's failure to properly supervise the audit and discover the incomplete audit procedures prior to the issuance of the 2013 Opinion rose to the level of knowing or intentional behavior. *See* SEC Order ¶ 69. Most significantly, nothing in the SEC Order links the incomplete audit procedures to any misstatements in AmTrust's financial statements or offering materials or any effort to defraud investors.

### B. Procedural Background

The original complaint was filed on March 1, 2017. *See* ECF No. 1. It asserted claims based on an alleged "fraudulent scheme" against AmTrust and certain AmTrust officers under the Exchange Act and Rule 10b-5, promulgated thereunder. BDO was not named in that complaint, nor did that initial complaint assert any Securities Act claims based on offering materials for either of the AmTrust offerings now at issue. On June 19, 2017, the Court entered an order appointing lead Plaintiffs and lead Plaintiffs' counsel. *See* ECF No. 49.

On August 21, 2017, Plaintiffs filed their consolidated amended complaint, in which, among other things, they added claims under the Securities Act against BDO and others. *See* ECF No. 55. On October 17, 2017, BDO moved to dismiss the consolidated amended complaint.

*See* ECF No. 98.  The Court heard oral argument on the motion to dismiss on February 7, 2018.  *See* ECF Nos. 111, 118.  On November 26, 2018, before the Court rendered a decision on the consolidated amended complaint, Plaintiffs filed the CSAC.  ECF No. 140.

### C.     Summary of Claims Against BDO

#### 1.     Section 11 of the Securities Act

The CSAC repeats Plaintiffs' earlier allegations that the 2014 and 2015 Opinions contained material misrepresentations of fact as to (1) whether AmTrust's consolidated financial statements presented the company's financial position in conformity with generally accepted accounting principles ("GAAP"); (2) the effectiveness of AmTrust's internal controls over financial reporting; and (3) whether BDO's audits were conducted in accordance with PCAOB standards.  CSAC ¶¶ 208–09. Plaintiffs claim that because BDO "ignored AmTrust's wrongful accounting," it "had reason not to believe that [AmTrust's] financial statements . . . were fairly presented in conformity with GAAP." *Id.* ¶ 213. Plaintiffs also allege that BDO "failed to disclose that its audits were not performed in a scope sufficient to enable it to render an opinion." *Id.*

#### 2.     Section 10(b) of the Exchange Act and Rule 10b-5

The CSAC adds a new Section 10(b) claim against BDO.  Plaintiffs allege that BDO "willfully misrepresented in the [2013 Opinion] that its audit of AmTrust's financial statements for the year ended December 31, 2013 . . . was conducted 'in accordance with the standards of the Public Company Accounting Oversight Board (United States).'"  CSAC ¶ 584.  The fraud alleged in the CSAC is BDO's failure to perform the audit in accordance with PCAOB standards and subsequent failure to withdraw the audit opinion or advise the market not to rely upon it.  CSAC ¶ 631.  Plaintiffs do not allege any facts that contradict the partners' conclusion pursuant to PCAOB auditing standard AU § 390 that the financial statements were not materially

11

misstated.  CSAC ¶¶ 593, 596, 599, and 602.  Plaintiffs do not allege that BDO aided a fraud purportedly perpetrated by AmTrust or that BDO's alleged failure to perform the audit in accordance with PCAOB standards had any effect on AmTrust's financial statements.

## ARGUMENT

Under Rule 12(b)(6), a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007).  The pleading standards for securities fraud claims require that a complaint meet the heightened pleading standards of both Rule 9(b) and the PSLRA.  *See In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 683 (S.D.N.Y. 2016). Plaintiffs must plead facts to support their claims and "mere conclusory statements[] do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)); *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965 (a plaintiff must offer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to avoid dismissal).

Public statements challenged as false or misleading under the securities laws must be evaluated "fairly and in context" rather than "in a vacuum." *Omnicare Inc.*, 135 S. Ct. at 1330-32.

## I.    THE SECTION 11 CLAIM FAILS

Plaintiffs' Section 11 claim is the same claim previously briefed and argued before this Court.  Plaintiffs allege that BDO's audit ***opinions*** for the years ended December 31, 2013, 2014, and 2015, which were incorporated by reference into AmTrust's Offering Materials, contained the following material misrepresentations of ***fact***:

(1)  that AmTrust's 2012, 2013, 2014, and 2015 "consolidated

12

> financial statements . . . present[ed] fairly, in all material respects, the financial position of AmTrust" at those times, "in conformity with [GAAP];"
>
> (2) that AmTrust's "system of internal control over financial reporting upon which the financial statements included in the Offering Materials were based" was "'unqualified;'" and
>
> (3) that BDO "conducted [its 2012-2015] audits in accordance with the standards of the [PCAOB]."

CSAC ¶ 205-08.  As explained in detail in BDO's prior briefing and at oral argument on BDO's motion to dismiss the first amended complaint, this Court and many others have held that these challenged statements are *opinions*.  *See* ECF Nos. 99, 111, 118.  Consequently, Plaintiffs must meet the standard set forth in *Omnicare*, 135 S. Ct. 1318, and allege that BDO's audit opinions were subjectively false or that the opinions omitted material facts.  Plaintiffs fail in both respects.

## A.  BDO's Audit Opinions Are Statements of Opinion, Not Fact

The Supreme Court has long recognized that GAAP, "far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions . . . , tolerate a range of 'reasonable' treatments[.]" *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544, 99 S. Ct. 773, 787 (1979); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100, 115 S. Ct. 1232, 1239 (1995) ("Financial accounting . . . addresses many questions as to which the answers are uncertain and is a 'process [that] involves continuous judgments and estimates.'") (citation omitted). Recognizing this variance in practices, Judge Caproni recently dismissed a putative class action against AmTrust, holding that "[i]t is well-settled that GAAP provisions are subject to interpretation and 'tolerate a range of 'reasonable' treatments[.]'" *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (quoting *Thor Power Tool Co.*, 439 U.S. at 544; 99 S. Ct. at 787).

 Courts have specifically recognized that revenue recognition involves "subjective accounting choices" and "subjective judgments."  *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp.

13

3d 233, 243 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 23 (2d Cir. 2016); *see also Wilson v. MicroFinancial, Inc.*, No. 03-cv-11883, 2006 WL 1650971, at *11 (D. Mass. June 13, 2006) ("The realization of revenue is 'fundamentally a subjective determination' over which reasonable minds may differ") (citation omitted); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1302 (S.D. Fla. 2002) ("[T]he timing of revenue recognition" is a product of "Defendants' business judgment"). Accordingly, the underlying management decision to use upfront revenue recognition was itself a statement of opinion. This dovetails with Plaintiffs' recognition that management's decision was based on its "*interpretation*" of accounting guidelines. CSAC ¶¶ 77, 87 (emphasis added).

In keeping with the different interpretations and applications of GAAP, professional auditing standards recognize the considerable professional judgment involved in the issuance of audit opinions concerning an issuer's financial statements and internal controls. Specifically, the governing auditing standards at the time of the audits expressly recognize that audit opinions constitute an "expression of the auditor's opinion." AU § 508.03; *see also* AU § 150.03 (auditors "express an opinion"). The standards require the auditor to "exercise professional judgment" in their application. AU § 150.04. The standards go on to explain that an audit opinion is intended to provide "reasonable" rather than "absolute assurance" concerning the company's financial statements, AU § 230.10, .13, and that it "indicates the auditor's *belief* that the financial statements . . . are not materially misstated," AU § 312.03 (emphasis added). *See also* AS No. 5 App'x A7 (effectiveness of internal controls turns on whether "there is a reasonable possibility" that they will timely prevent or detect a material misstatement).

14

Consistent with this case law and auditing standards, BDO's audit opinions are expressly statements of opinion as to AmTrust's financial statements, AmTrust's internal controls over financial reporting, and BDO's performance of its audit in accordance with relevant professional standards. *See* CSAC ¶ 206 (quoting the 2015 Opinion, which states, e.g., that BDO's "responsibility is to express an opinion on these financial statements based on our audits" and "[w]e believe that our audits provide a reasonable basis for our opinion."); *see also id.* ¶ 205 (quoting materially identically worded 2013 and 2014 Opinions).

The Second Circuit has twice confirmed that audit opinions such as BDO's are statements of opinion, rather than statements of fact. *See Querub v. Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA Ltd.*, 645 F. App'x 72, 75 (2d Cir. 2016). This Court has likewise held that auditor statements substantially identical to the ones at issue here are statements of opinion. *See e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 300 (S.D.N.Y. 2011) ("*Lehman I*") (Kaplan, J.); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 250 n.44 (S.D.N.Y. 2015) ("*Lehman II*") ("This Court held in *Lehman I* that both the GAAP and GAAS statements in EY's audit reports were statements of opinion") (Kaplan, J.); *see also In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 500 (2018) (claim relating to GAAS compliance was "opinion-based").

In *Lehman I*, this Court observed that "[m]any [auditing] standards are couched in rather general and in some cases inherently subjective terms" and, accordingly, that "reasonable professionals planning or conducting an audit reasonably and frequently could disagree" about how to apply these subjective standards. *Lehman I*, 799 F. Supp. 2d at 300–01. For example, "'[t]he representation in the auditor's standard report regarding fair presentation, in all material

15

respects, in conformity with [GAAP] indicates the auditor's *belief* that the financial statements, taken as a whole, are not materially misstated.'" *Id.* at 303 (quoting AU § 312.07) (emphasis and alteration in the original).  This Court ultimately concluded that, because the auditor's "opinion, just like those rendered by all or substantially all accounting firms, is explicitly labeled as just that—an opinion that the audit complied with these broadly stated standards— more is necessary to make out a [Section 11] claim that the statement of opinion was false than a quarrel with whether these standards have been satisfied." *Id.* at 300-01.[4]

Thus, the statements made in the BDO audit opinions are subject to the *Omnicare* standard that applies in assessing securities fraud claims based on audit opinions.  In *Omnicare*, 135 S. Ct. 1318, the Supreme Court set forth the three situations in which statements of opinion, such as BDO's audit opinions, may qualify as untrue statements of material fact.  To be actionable under Sections 10(b) or 11, the opinions must (1) "falsely describe[] [the speaker's] state of mind," (2) contain "embedded statements of [untrue material] fact," or (3) omit material facts "whose omission makes the opinion statement at issue misleading[.]" *Omnicare*, 135 S. Ct. at 1326-27, 1332.

This Court has recognized that in the wake of *Omnicare*, "it is substantially more difficult for a securities plaintiff to allege adequately (or, ultimately, to prove) that . . . a statement [of opinion] is false than it is to allege adequately (or prove) that a statement of pure fact is false." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 68-69 (S.D.N.Y. 2015) (Kaplan, J.).

---

[4] *See also Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) (citing *Lehman*, 799 F. Supp. 2d at 301) (stating that "both the GAAS assertion and GAAP assertions are matters of opinion"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *33-34 (M.D. Pa. June 22, 2015) (statement regarding "compliance with PCAOB standards" analyzed under *Omnicare*); *Hufnagle v. Rino Int'l Corp.*, 2013 WL 160223, at *2 (C.D. Cal. Jan. 14, 2013).

B.      **Plaintiffs Fail to Allege That BDO Subjectively Disbelieved Its Audit Opinions Regarding Amtrust's Financial Statements**

Plaintiffs never allege that BDO *actually* disbelieved its stated audit opinions at the time they were issued, nor do they allege any facts calling into question BDO's contemporaneous subjective belief in the accuracy of its audit opinions.  They claim only that BDO "had *reason* to not believe that [AmTrust's 2013, 2014, and 2015] financial statements . . . were fairly presented in conformity with GAAP."  CSAC ¶ 233 (emphasis added).  This equivocation falls far short of what *Omnicare* requires to sustain a material misstatement claim – allegations that the speaker's opinion "falsely describe[d its] state of mind[.]"  *Omnicare*, 135 S. Ct. at 1326.  Because there are no allegations that BDO "did not hold the belief [it] professed," plaintiffs' misstatement claim is deficient as a matter of law.  *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-cv-0256, 2016 WL 6652731, at *8 (S.D.N.Y. Nov. 10, 2016) (Kaplan, J.);  *see also Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 234 (S.D.N.Y. 1999) (dismissing Section 11 claim because plaintiffs failed to "allege that [defendant] did not believe the veracity of [its] prediction"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 253 (S.D.N.Y. 2003) (dismissing Section 11 claim where plaintiffs alleged only that circumstances "'*suggest*[]' that [defendant] had an improper motive") (emphasis added).

As this Court has recognized, bare allegations that financial statements did not conform to relevant accounting standards are insufficient to show an auditor's subjective disbelief in its audit opinion.  *See Lehman I*, 799 F. Supp. 2d at 303 ("[A]llegations that a company violated GAAP in preparing its financial statements are not sufficient, in and of themselves, to state a claim that an auditor's opinion of GAAP compliance is a factual misstatement").  Accordingly, plaintiffs were required to allege additional "facts sufficient to warrant a finding that the auditor

17

did not actually hold the opinion it expressed or that it knew that it had no reasonable basis for holding it."  *Id.*

### 1.      Plaintiffs Fail to Allege That BDO's Opinions Regarding Amtrust's Financial Statements Contained Embedded Misstatements of Fact

Plaintiffs also fail to allege that BDO's audit opinions contained "embedded statements of [untrue material] facts."  *Omnicare*, 135 S. Ct. at 1326–27.  Here, Plaintiffs claim that because Section 11 provides liability to parties who "certify" portions of the prospectus, an auditor's opinion is somehow transformed into a guarantee of the accuracy of the financial statements. But, as this Court has previously stated, "the auditor's standard report regarding fair presentation, in all material respects, in conformity with [GAAP] indicates the auditor's *belief* that the financial statements, taken as a whole, are not materially misstated."  *Lehman I*, 799 F. Supp. 2d at 303 (Kaplan, J.) (emphasis and alteration in the original); *see generally* Section I.A, *supra*. Such a belief—even if later modified—is not actionable under Section 11.  *Lehman I*, 799 F. Supp. 2d at 303; *Omnicare*, 135 S. Ct. at 1327.

The Second Circuit roundly rejected a substantially identical argument to the one Plaintiffs make in the CSAC, holding that "[a]udit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of *opinion*"—even when these audit reports rely on a material *fact* in the underlying financial statements.  *Querub*, 649 F. App'x at 58 (emphasis added).  In *Querub*, a company reported that it owned a 90% interest in a subsidiary when in fact, the controlling shareholders had secretly transferred that ownership interest to themselves.  *In re Puda Coal Sec. Inc. Litig.*, 30 F. Supp. 3d 230, 237–38 (S.D.N.Y. 2014), *aff'd sub nom. Querub*, 649 F. App'x 55.  The company's financial statements thus contained a material misstatement of fact: "Puda no longer owned Shanxi Coal, and yet claimed it did." *Id.* at 258.

Puda's auditor, relying on these financial statements, allegedly committed a "fundamental" accounting error: "all aspects of the financial position of the company [were] entirely misstated, because the operations on which it was based were long gone." *Id.* at 236. But the Second Circuit affirmed Judge Forrest's holding that the auditor's reports were statements of opinion—not fact—even though they relied on underlying facts found in the company's financial statements. *Querub*, 649 F. App'x at 58. The Second Circuit affirmed summary judgment in favor of the auditor because there was "no evidence that [the auditor] did not believe its 'clean audit opinions[.]'" *Id.* The auditor's reliance on Puda's financial statements did not turn its audit opinions into statements of fact.[5]

*Querub* is part of a line of cases which clarify that, while Section 11 may extend liability to any party who "certified" a part of the registration statement, an auditor's "certification" does

---

[5] This Court has previously stated that auditors "may be found liable under Section 11 for portions of registration statements that they audited." *Lehman II*, 131 F. Supp. 3d at 260; *see also In re Petrobras Sec. Litig.*, No. 14-cv-9662, 2016 WL 1533553, at *3 (S.D.N.Y. Feb. 19, 2016) (audit opinions "rest[] on the underlying facts contained in the financial statements," so "[t]he facts of the financial statements [are] embedded in [the auditor's] opinions."). At oral argument on Defendants' earlier motions to dismiss the initial complaint, this Court stated that—contrary to *Petrobras*—financial statements are not exclusively "objectively verifiable" facts, but rather contain a mix of facts and "judgment or subjective opinion." Transcript of Proceedings on Mot. to Dismiss (Feb. 7, 2018), ECF No. 118 at 35. The Court also suggested that the holding in *Petrobras* was inconsistent with *Omnicare*'s concept of "embedded facts," because it would make "the auditor the guarantor of the accuracy of every single figure" in an issuer's financial statements. *Id.* at 45.

Nevertheless, the Second Circuit's decision in *Querub* abrogated Judge Rakoff's decision in *Petrobras*, holding that audit opinions are statements of opinion even when they opine on facts set forth in a company's financial statements. *Querub*, 649 F. App'x at 58. And the rationale of *Petrobras* has recently been called into question by one court's holding that neither audit opinions regarding a company's financial nor opinions about an auditor's compliance with professional standards "contain embedded statements of fact[.]" *Johnson v. CBD Energy Ltd.*, No. 15-cv-1668, 2016 WL 3654657, at *12 (S.D. Tex. July 6, 2016) (stating that the "holding in [*Querub*] directly contradicts" the proposition that audit opinions contain "embedded statements of fact," and "[t]he numbers in [the] financial statements . . . do not appear in the audit report and are not 'embedded' . . . in the way the *Omnicare* Court set out"). Thus, an auditor's opinion cannot lead to liability solely because the underlying financial statements are later restated.

19

not recast its opinion as some sort of "insurance" or "guarantee" of the accuracy of the financial statements.  *See, e.g.*, *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006) ("[A]uditors do not 'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them . . . Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein."); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 443 (S.D.N.Y. 2014) (citing *Deephaven* and holding that auditor can only be liable for its own audit opinions, not for any misstatements or omissions in the underlying SEC filings).

The reasoning in these cases mandates dismissal of the instant claims.  And indeed, numerous courts—including this one—have dismissed securities fraud claims when, as here, plaintiff could not "point to an untrue material fact embedded in [the auditor's] opinion statement."  *S.E. Pa. Transp. Auth. v. Orstown Fin. Servs., Inc.*, 2015 WL 3833849, at *34 (M.D. Pa. June 22, 2015) (holding that sincerely held audit opinion was "inactionable under the first clause of Section 11 as an untrue statement of material fact"); *Lehman I*, 799 F. Supp. 2d at 300-03 (dismissing Section 11 claim predicated on failure to abide by GAAS where plaintiffs "fail[ed] to allege that [auditor] made any false or misleading statements with respect to GAAS compliance") (Kaplan, J.).[6]

## 2.   Plaintiffs' Allegations That AmTrust's Internal Controls Over Financial Reporting Were Ineffective Are Insufficient to State a Claim Against BDO

Plaintiffs' internal control claims fail for much the same reasons.  Plaintiffs allege that BDO made a material misstatement in issuing unqualified opinions as to AmTrust's internal

---

[6] *See also Special Situations Fund*, 645 F. App'x at 76 (affirming dismissal where plaintiff did not adequately plead "that [the auditor] lacked a subjective belief in its opinions" or that the opinions contained untrue statements of material fact).

controls over financial reporting.  Specifically, they claim that "the system of internal control over financial reporting upon which the financial statements included in the Offering Materials were based – which the [BDO opinions] deemed to be 'unqualified,' – was riddled with material weaknesses[.]" CSAC ¶ 208.

But BDO's statements as to AmTrust's internal controls are statements of opinion—both on their face and under controlling case law. BDO issued an "unqualified *opinion*" on AmTrust's internal controls. *See* CSAC ¶¶ 205-06, 581 (quoting the 2014 and 2015 Opinions) (emphasis added).  Such statements are "statements of opinion and are therefore subject to [a] subjective falsity requirement." *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, No. 08- cv-4772, 2013 WL 1787567, at *5 (S.D.N.Y. Apr. 26, 2013).  Plaintiffs do not allege that BDO disbelieved these opinions at the time they were issued, which, without more, mandates dismissal.  *See Omnicare*, 135 S. Ct. at 1326; *Westland*, 2016 WL 6652731, at *8.

### 3.  Plaintiffs Fail to Allege That BDO's Opinions Regarding Compliance With PCAOB Standards Were Misstatements of Fact

As this Court has recognized, an auditor's "GAAS opinion . . . is explicitly labeled as just that—an opinion that the audit complied with these broadly stated standards[.]" *Lehman I*, 799 F. Supp. 2d at 300-01.  Accordingly, "more is necessary to make out a claim that the statement of opinion was false than a quarrel with whether these standards have been satisfied." *Id.*; *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 580 (S.D.N.Y. 2012) (dismissing 10b-5 claim because "auditor reports of [regulatory] compliance are 'inherently . . . one[s] of opinion'").  Thus, to prevail, plaintiffs must plausibly plead that BDO's opinion as to compliance with auditing standards was *subjectively* false when it was issued. *Lehman I*, 799 F. Supp. 2d at 300.

Plaintiffs' effort to establish a misstatement of fact with respect to BDO's statements of compliance with auditing standards fails.  Plaintiffs first allege in a conclusory statement that BDO "ignored AmTrust's wrongful accounting" (CSAC ¶¶ 213, 232), without providing any support for that sweeping generalization.  This is insufficient as a matter of law.  *See, e.g.*, *Lehman I*, 799 F. Supp. 2d at 315 n.291 (allegations that auditor violated auditing standards "by 'not adequately plan[ning] its quarterly reviews and annual audit . . . to address its knowledge' of certain facts" was too conclusory to state a claim, because it "d[id] not . . . identify any planning deficiencies or, for that matter, what planning [the auditor] did that allegedly was insufficient.") (first alteration in original); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 413 (S.D.N.Y. 2010) (dismissing claim against auditor where "[p]laintiff fail[ed] to plead facts supporting a conclusion that [the auditor] fraudulently violated GAAS").

Plaintiffs next point to the WSJ article—copied verbatim into their pleading—stating that BDO "tried to bury poor practices in its AmTrust audits." CSAC ¶ 233.  The WSJ allegations were addressed at length in BDO's motion to dismiss the initial complaint. (*See* ECF No. 99 at 20-22, citing cases).  They were also addressed during oral argument, where this Court observed that the allegations were "hearsay upon hearsay upon hearsay, all getting down to a bunch of generalities."  Transcript of Proceedings on Mot. to Dismiss (Feb. 7, 2018), ECF No. 118 at 19. Indeed, the WSJ allegations are based solely on the uncorroborated statements of an anonymous individual, and are insufficient to sustain a claim against BDO.  There are no details—let alone verified details—regarding what constituted "poor practices," how these practices violated relevant professional standards, how they were "buried" or in connection with which audit. More significantly, Plaintiffs cite no supporting documents and do not allege that they interviewed the individual referenced in the article or anyone else in preparing the CSAC.

22

Plaintiffs do not—and cannot—allege that the confidential witness cited in the WSJ article was in a position to possess knowledge that any misstatement was made concerning the status of BDO's audit or the accuracy of the financial statements.  This is significant because audit teams often contain many junior level auditors assigned specific roles in the audit.  Nor have Plaintiffs seen—much less identified—the contents of materials allegedly provided by the witness to regulators, since even the WSJ did not have access to these items.

### C.       Plaintiffs Do Not Allege a Material Omission

Plaintiffs' omission theory also fails.  First, the CSAC's allegations are far too vague and conclusory to give rise to a plausible inference that any material facts had been omitted from BDO's opinions.  And second, Plaintiffs' allegations are, again, based entirely on uncorroborated statements made by a confidential witness to a news publication.  Plaintiffs are required to do far more to state a claim for securities fraud.

### 1.       Plaintiffs' Omission Allegations Are Too Conclusory to State a Claim

Plaintiffs allege that BDO's audit opinions "omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein."  CSAC ¶ 235.  "To allege adequately that a defendant omitted to state facts necessary to make a statement of opinion or belief not misleading, a plaintiff must plead facts to 'call into question the [speaker's] basis for offering the opinion.'" *Westland*, 2016 WL 6652731, at *8.  But Plaintiffs proffer only generic and conclusory allegations insufficient to sustain a plausible inference that BDO omitted pertinent facts regarding the basis for its opinions.  The alleged "violations are . . . pitched at such a high level of generality that, even if credited, they could not support a compelling inference" of BDO's wrongdoing.  *In re Longtop*, 910 F. Supp. 2d at 575.

*Caldwell v. Berlind*, 543 F. App'x 37 (2d Cir. 2013), is instructive here. In *Caldwell*, the Second Circuit affirmed dismissal of a Section 11 claim where plaintiffs "fail[ed] to allege when [the defendant] acquired the CDOs that it would have been required to disclose, how much it held at the time of the offerings, or how much was sufficient to be material to an investor at the time of the challenged offerings." 543 F. App'x at 41; *see also Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 483 (S.D.N.Y. 2010) (dismissing Section 11 claim where plaintiffs only made "conclusory allegations that most of the misleading statements were contained in each of the offering statements" but made "no specific allegations" about the 2007 offering documents, with which defendants were involved). Like the complaint in *Caldwell*, the CSAC "is simply barren of allegations regarding the circumstances at the [relevant] time[.]" *Caldwell*, 543 F. App'x at 41. Courts routinely dismiss Section 11 claims where, as here, plaintiffs fail to plead with specificity which material facts a defendant allegedly omitted, or to identify when, where, and how such facts were omitted. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, No. 08-cv-10841, 2010 WL 4903619, at *2 (S.D.N.Y. Dec. 1, 2010) (dismissing Section 11 claim because "plaintiffs' vague allegation that . . . due diligence review was 'ineffective' does not amount to a claim that any specific disclosure in the Offering Documents was untrue or misleading"); *In re Coty Inc. Sec. Litig.*, No. 14-cv-919, 2016 WL 1271065, at *8 (S.D.N.Y. Mar. 29, 2016) (dismissing Section 11 claim "since Plaintiffs fail to explain when [the wrongful conduct] began or when the material effects of that [conduct] became known to management").

Here, Plaintiffs allege (through an uncorroborated statement of an anonymous individual derived from a newspaper article) generalized misconduct, from which they extrapolate BDO's liability for particularized wrongs. For example, plaintiffs claim that "BDO 'tried to bury poor

practices in its AmTrust audits'" but provide no details regarding what practices were buried, how they were buried, when they were buried, or by whom they were buried.  CSAC ¶¶ 219, 233.  They allege that "'BDO signed off on its AmTrust audit[s] before completing some important checks'" but omit any details about which checks were not performed, in connection with which audits, or how the audits were impacted.  *Id.* ¶ 219.  They allege that "'BDO staffers allegedly covered for their lapse . . . by loading unfinished documents into an internal software system to show the right time stamp, then return[ed] later to complete some of the work'" but fail to connect this allegation to the audits at issue in the Section 11 claim.  *Id.* ¶ 220.  And finally, Plaintiffs claim that "on several occasions BDO signed off on AmTrust audits prior to completing 'important' procedures," but again do not tie this claim to the audits at issue, nor do they specify which procedures were incomplete, and why they were necessary to issue an audit opinion.  *Id.* ¶ 231.  These generic allegations fall well short of what is required to state a claim. *See, e.g.*, *Westland*, 2016 WL 6652731, at *8.

## 2. Plaintiffs' Omission Theory Fails Because It Is Based On Uncorroborated Hearsay

Plaintiffs' omission theory requires dismissal for a second and related reason: because the factual allegations at the heart of their omission claim rely on the WSJ article, whose sole source is an anonymous individual that Plaintiffs cannot identify and whose statements Plaintiffs cannot corroborate.  *See, e.g.*, CSAC ¶ 231 (alleging that BDO "omitted material facts about [its] inquiry into whether the financial statements included in the Offering Materials were fairly presented in conformity with GAAP.").   Courts routinely hold that allegations based on uncorroborated confidential witness statements are insufficient to plead an actionable omission under Section 11. *See, e.g.*, *In re Coty*, 2016 WL 1271065, at *6 ("[C]onclusory, nonspecific statements from confidential informants" that the company was "struggling," or "underperforming" did not "raise

25

a plausible inference that the Registration Statement omitted a fact, much less a material fact");

*In re IAC Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010).

## II.     THE SECTION 10(b) CLAIM FAILS

To state a claim for relief under Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."   *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 768 (2008)).

As demonstrated below, Plaintiffs fail to carry their heavy burden of pleading a violation of Section 10(b).

### A.     Plaintiffs Fail to Allege a Material Misstatement or Omission

Plaintiffs first allege in the barest of ways that BDO "falsely represented" that AmTrust's financial statements "present fairly, in all material respects, the financial position of AmTrust Financial Services, Inc. at December 31, 2013 . . . in conformity with accounting principles generally accepted in the United States of America."  CSAC ¶ 583.  This allegation fails for the same reasons as Plaintiffs' Section 11 claim.  (*See* Section I, *supra*.)

The thrust of Plaintiffs' Section 10(b) claim, rather, is that BDO falsely opined in its 2013 Opinion that its audit was conducted "in accordance with the standards of the Public Company Accounting Oversight Board (United States)."  CSAC ¶¶ 583-84.  As with Plaintiffs' Section 11 claim (*see* Section I.A, *supra*), this is a statement of opinion that must be analyzed under the *Omnicare* standard.  *See Tongue v. Sanofi*, 816 F. 3d 199, 209-10 (2d Cir. 2016) (applying *Omnicare* to 10(b) claims).  Thus, Plaintiffs must allege that the statement (1) "falsely

describe[] [the speaker's] state of mind," (2) contain "embedded statements of [untrue material] facts," or (3) omit material facts "whose omission makes the opinion statement[s] at issue misleading[.]" *Omnicare*, 135 S. Ct. at 1326-27, 1332.

Plaintiffs do not contend that BDO's statements regarding compliance with auditing standards contained "embedded statements of [untrue material] facts," or omitted material facts "whose omission makes the opinion statement at issue misleading[.]" *Omnicare* at 1326-27, 1332. Plaintiffs instead rely entirely on the SEC Order against three individual auditors, claiming that it establishes BDO "knowingly" falsely stated that it completed all required audit steps relating to AmTrust's 2013 financial statements. CSAC ¶¶ 550-635. Not so. The CSAC omits—because it must—the finding in the SEC Order that the engagement partner "***did not know the audit team had failed to complete necessary audit procedures***, and obtain sufficient audit evidence, to support the report." SEC Order ¶ 4 (emphasis added). The SEC Order makes clear that the audit partners "did not discover these audit deficiencies until approximately one week ***after*** BDO's audit report was published in AmTrust's 2013 Form 10-K." *Id.*.

The audit manager's supposed knowledge alone does not establish ***BDO***'s knowledge, especially where the SEC Order itself reflects that the engagement partner—the person responsible for signing the audit opinion on behalf of BDO, the "maker" of the alleged misstatement—was told that all audit work had been completed and believed it to be true, and did not know that the audit team had not actually completed all of the audit work. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-44, 131 S. Ct. 2296, 2302-04 (2011) ("For the purposes of Rule 10b-5, the maker of a statement [in this instance the Audit Opinion] is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). This is fatal to Plaintiffs' claim.

27

Additionally, the alleged incomplete audit procedures relate to (1) journal entry testing, *id.* ¶ 592; (2) internal control testing for premium underwriting, *id.* ¶ 595; (3) audit procedures for workers' compensation premium receivable and share-based compensation, *id.* ¶ 600; and (4) audit procedures to address the risk of fraud, *id.* ¶ 601. Plaintiffs do not allege, nor can they, that any of these shortcomings concealed any error in AmTrust's financial statements or rendered inaccurate BDO's audit opinion relating to Amtrust's financial statements. As noted above, the SEC Order does not identify any link between the alleged incomplete audit procedures and any misstatement or error in AmTrust's December 31, 2013 financial statements, and the BDO audit partners determined that there was no such link at the time of their AU § 390 assessment. Because there is no allegation that BDO's alleged misstatement impacted AmTrust's "public financial reporting," it is not actionable, and Plaintiffs' claim fails. *See In re SunEdison*, 300 F. Supp. 3d at 499 (dismissing claim where alleged misstatement did not "touch on financial reporting").

### B.   Plaintiffs Fail to Plead Auditor Scienter

To establish scienter under the PSLRA, Plaintiffs "must 'state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind.'" *Tellabs*, 551 U.S. at 314, 127 S. Ct. at 2504. Scienter may be pleaded through particularized factual allegations of (1) "strong circumstantial evidence of conscious misbehavior or recklessness" or (2) "both motive and opportunity" for the defendant to commit fraud. *City of Brockton Ret. Sys. v. Avon Prods. Inc.*, 2014 WL 4832321, at *18 (S.D.N.Y. Sept. 29, 2014). Under either of the two prongs, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs*, 551 U.S. at 314, 127 S. Ct. at 2504-05. "[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by [the PSLRA]

28

must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff … but also competing inferences rationally drawn from the facts alleged." *Id.*

Because the CSAC does not allege that BDO had motive to commit fraud,[7] Plaintiffs must provide "correspondingly greater" allegations showing "strong circumstantial evidence" of BDO's "conscious recklessness." *In re Advanced Battery Tech. Inc.*, 781 F.3d 638, 644 (2d Cir. 2015). Conscious recklessness is "not merely a heightened form of negligence," but rather is "conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care." *Id*.

"The pleading requirements for auditor scienter are particularly stringent." *Special Situations Fund III QP, L.P.*, 33 F. Supp. 3d at 426 (citing *In re Advanced Battery Tech., Inc. Sec. Litig.*, 2012 WL 3758085, at *15 (S.D.N.Y. Aug. 29, 2012) ("Courts in this District have repeatedly recognized [that] '[t]he standard for pleading auditor scienter is demanding.'")). To show that an independent auditor like BDO acted with conscious recklessness, "the [auditor's] conduct 'must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company', as, for example, when a defendant conducts an audit so deficient as to amount to no audit at all, or disregards signs of fraud so obvious that the defendant must have been aware of them." *Advanced Battery*, 781 F.3d at 644 (citation omitted); *see also S. Cherry St. LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009); *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000); *Iowa Pub. Emp.'s Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013). Because "statements by an auditor are couched as opinions . . . the bar is

---

[7] *See In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 377 (S.D.N.Y. 2013) ("*Longtop II*") ("An outside auditor will typically not have an apparent motive to commit fraud, and its duty to monitor an audited company for fraud is less demanding than the company's duty not to commit fraud."): *In re Advanced Battery Techs. Inc. Sec. Litig.*, 11 Civ. 2279, 2012 WL 3758085, at *15 (S.D.N.Y. Aug. 29, 2012) ("Ordinarily, independent outside auditors will have no 'motive' to commit fraud.").

raised even higher to allege the requisite scienter." *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 255 (S.D.N.Y. 2012) ("[T]o allege that an [audit] opinion is . . . false with scienter[ ], the complaint must 'set forth facts sufficient to warrant a finding that the auditor did not actually hold the opinion it expressed or that it knew that it had no reasonable basis for holding it.'") (quoting *Lehman I*, 799 F. Supp. 2d at 303).

Plaintiffs' Section 10(b) allegations are derived entirely from the SEC Order, and do not come close to pleading conscious recklessness or, in turn, a "strong inference" of scienter in respect of the 2013 Opinion.  The claim fails.

### 1.   The SEC Order Exclusively Alleges Violations of Professional Auditing Standards, Which Is Insufficient By Itself to Plead Scienter

The SEC Order—the sole source for Plaintiffs' Section 10(b) allegations—does not identify any conduct going beyond only violations of professional auditing standards, namely BDO's failure to complete certain audit procedures.[8]  To this end, in the first paragraph of the SEC Order, the SEC characterizes the BDO auditors' relevant conduct as "improper professional conduct," i.e., professional negligence.  SEC Order ¶ 1.

Without more than this, Plaintiffs' Section 10(b) claim must be dismissed.  It is well-settled that "[v]iolations of professional auditing standards, without more, do not constitute strong circumstantial evidence of conscious recklessness." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 450 (S.D.N.Y. 2010)); *see also* In re *Winstar Commc'ns*, 2006 WL 473885,

---

[8]   Rule 102(e)(1)(iii) provides, in pertinent part, that "[t]he Commission may . . . deny, temporarily or permanently, the privilege of appearing or practicing before it . . . to any person who is found to . . . to have willfully violated, or willfully aided and abetted the violation of any provision of the Federal securities laws or the rules and regulations thereunder."  Thus, while the SEC has the power to institute proceedings against an auditor for violations of the securities laws under Rule 102(e)(1)(iii) and Section 4C, it did not do so here, instead instituting proceedings only pursuant to the subsections relating to "unethical or improper professional conduct," i.e., professional negligence.  Rule 102(e)(1)(ii), Section 4C.

at *11 (S.D.N.Y. Feb 27, 2006) ("[G]eneral allegations regarding the existence of GAAP and GAAS violations and that the accounting firm was in possession of relevant documentation will not suffice to establish scienter"); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 130 (S.D.N.Y. 2013).[9]

### 2. The Facts In the SEC Order Do Not Establish Corresponding Fraudulent Intent

The SEC Order and, in turn, the CSAC, fail to establish the corresponding fraudulent intent necessary to turn alleged audit violations into a viable Section 10(b) claim.

*First*, as demonstrated by the SEC Order, the engagement partner's conduct at the time of the issuance of the 2013 Opinion is entirely bereft of any intent to defraud investors. When the engagement partner issued the 2013 Opinion, he "did not know the audit team had failed to complete necessary audit procedures, and obtain sufficient audit evidence, to support the report." SEC Order ¶ 4. In fact, the engagement partner "did not discover these audit deficiencies until approximately one week *a*fter BDO's audit report was published in AmTrust's 2013 Form 10-K." *Id.* The SEC Order did not make any finding that the engagement partner's failure to discover the omitted procedures was intentional or reckless conduct. It was merely unreasonable, i.e., negligent. *Id.* ¶ 69.

Plaintiffs make much out of the senior manager's conduct and knowledge, but Plaintiffs also admit—and the auditing standards recognize—that the engagement partner is responsible

---

[9] *See also In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) ("[A]lleging a shoddy audit in violation of GAAS does not establish the intent to defraud required to maintain a claim for securities fraud."); *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008), *aff'd sub nom. W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009) (internal citations omitted) ("[A]llegations that an independent auditor violated GAAP and GAAS *may* be sufficient to establish scienter *[o]nly* where such allegations are coupled with evidence of 'corresponding fraudulent intent.") (second emphasis added).

for the audit and the audit opinion.  CSAC ¶¶ 227, 606; AS No. 10, *Supervision of the Audit Engagement*.  The senior manager is not the person responsible for signing the audit opinion, and is not the "maker" of any statements in the opinion.  *Janus Capital*, 564 U.S. at 143–44, 131 S. Ct. at 2302-04 ("For the purposes of Rule 10b-5, the maker of a statement [in this instance the Audit Opinion] is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").  Whatever the senior manager knew or did is irrelevant.

*Second*, even if Plaintiffs' claim could turn on the alleged conduct of the senior manager, it still would not support an inference of ***actionable*** fraudulent intent.  The SEC Order found that the senior manager withheld information from the engagement partner and engagement quality review partner concerning the status of certain audit procedures, prior to the issuance of the 2013 Opinion.   But there are no allegations in the CSAC that his conduct was directed towards ***investors***.  The much more plausible inference, rather, is that he intended to mislead the people he actually and directly lied to: the engagement partner and the engagement quality reviewer. *Tellabs*, 551 U.S. at 314, 127 S. Ct. at 2504-05; *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000) (Section 10(b) and Rule 10b-5 prohibit conduct "involving manipulation or deception, manipulation being practices … that are intended to mislead investors by artificially affecting market activity." (quoting *Field v. Trump*, 850 F.2d 938, 946-47 (2d Cir. 1988)).  The senior manager's decision to withhold information concerning audit deficiencies from the engagement partner does not turn an otherwise defective claim into an actionable claim. *See*, *e.g.*, *In re Oprins*, Admin. File No. 3-13797, 2010 WL 5376531, *33 (ALJ Dec. 28, 2010) (dismissing charges against auditor who was misinformed by staff that a procedure was

complete; although the auditor's conduct was "unreasonable," it did "not rise to the level of highly unreasonable conduct" pursuant to Rule 102(e)).

*Third*, Plaintiffs admit that BDO completed the open audit procedures within one month after the issuance of the audit opinion, and that the completed procedures did not cast doubt upon the financial reporting that BDO had signed off on in the 2013 Opinion.  CSAC ¶ 571.  This demonstrates that the engagement partner and engagement quality reviewer took the audit seriously, including by acting to ensure that BDO's audit opinion was correct.  In other words, even if BDO initially conducted an audit that fell short of professional standards, the audit partners' effort to immediately remediate any deficiencies upon discovery in accordance with the relevant standard eviscerates any suggestion that BDO had "intent to aid in the fraud."  *See Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 572 (S.D.N.Y. 2011).

*        *        *

At bottom, Plaintiffs have failed to allege anything approximating fraudulent intent, and the allegations here are far less severe than even those that have been *rejected* by other courts in this District.  For example, in *In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 690 (S.D.N.Y. 2016), Judge Gardephe dismissed a Section 10(b) claim against an auditor where—like here—an SEC order outlined a number of audit deficiencies and plaintiffs alleged that the accounting firm falsely stated it conducted its audits in accordance with PCAOB standards.  The plaintiffs in *DNTW*, however, also linked the alleged audit failures directly to the fraud perpetrated by the audited company, which involved the misclassification of millions of dollars of marketing expenses in the company's financial statements.  The court nevertheless dismissed the claim because the deficiencies identified in the SEC's order "[were] not so severe, however, that they constitute[d] 'pretend' audit [s] --…audit[s] that in effect w[ere] not

performed at all," and "that negligent conduct does not meet the standard for conscious misbehavior or recklessness." *In re DNTW Chartered Accountants Sec. Litig.,* 172 F. Supp. 3d at 690-91.

As explained above, the SEC Order here does not identify any link between the alleged incomplete audit procedures and any misstatement or error in AmTrust's December 31, 2013 financial statements.  Moreover, the only "intentional" or "reckless conduct" identified in the SEC Order relates to the senior manager's failure to inform the engagement partner and engagement quality review partner that specific audit procedures had not been completed prior to the issuance of the 2013 Opinion.  *See* CSAC ¶¶ 561-64; SEC Order ¶¶ 69-70.  This is not nearly enough to allege a strong inference of auditor scienter.  *See DNTW*, 172 F. Supp. 3d at 691; *see also, e.g.*, *ECA Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009).

### C.      BDO's Alleged Failure to Withdraw Its Audit Opinion and/or Disclose Audit Deficiencies Is Also Insufficient to Establish Scienter

Plaintiffs allege that after the audit partners learned of the incomplete audit procedures, BDO should have "withdraw[n] the audit opinion or advise[d] the market not to rely on it." CSAC ¶ 631.  BDO had no duty to do either of those things, and therefore did not commit fraud. *In re Marsh & MclIennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006) (quoting *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108 (1980)).

AU § 390 identifies the considerations and procedures to be applied by an auditor who, after issuing the audit report, concludes that one or more audit procedures considered necessary at the time of the audit were omitted, but—as here—does not have an indication the financial statements are not fairly presented.  AU § 390 does not require that the auditor withdraw his opinion or notify the public that audit procedures were omitted.  It does require the auditor to

34

promptly undertake to apply the omitted procedure, which is exactly what Plaintiffs concede BDO's partners did here upon discovery of the omitted procedures.  CSAC ¶¶ 568-73.  Then, if after performing the omitted audit procedures "the auditor becomes aware that facts regarding the financial statements existed at the date of his report that would have affected that report had he been aware of them, he should" consider whether action should be taken to prevent future reliance on his report. AU §§ 390.06, 561.05-06.

Plaintiffs admit that the BDO audit partners determined that the omitted procedures had no impact on the accuracy of the financial statements.  CSAC ¶ 571.  Thus, under AU § 390, BDO never had any obligation to notify the public of the audit deficiencies or subsequent completion of the audit procedures, and it was not required to withdraw its audit opinion.

<u>**CONCLUSION**</u>

For all the foregoing reasons, BDO respectfully requests that the claims asserted against it in the Consolidated Second Amended Complaint be dismissed with prejudice and that the Court grant BDO such other and further relief as it may deem just and proper.

Dated: New York, New York
       December 5, 2018

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By:/s/ Timothy E. Hoeffner
    Timothy E. Hoeffner
    thoeffner@mwe.com
    Jason D. Gerstein
    jgerstein@mwe.com
    Gary D. Adamson
    gadamson@mwe.com
    340 Madison Avenue
    New York, New York 10173
    Tel. (212) 547-5400

    *Attorneys for Defendant*
    *BDO USA, LLP*