UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

In re AMTRUST FINANCIAL SERVICES,
INC. SECURITIES LITIGATION

———————————————————

This Document Relates To:

     ALL ACTIONS.

——————————————————— x

:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:17-cv-01545-LAK

<u>CLASS ACTION</u>

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. RELEVANT BACKGROUND ...............................................................................2

III. ARGUMENT .........................................................................................................3

    A.  Legal Standard for Deciding a Rule 15(a)(2) Motion................................3

    B.  The New Allegations in the PTAC Directly Address the Key Deficiencies
       Identified in the Opinion, Demonstrating that Amendment Is Not Futile ..............5

         1.  Recognition and Reporting of Warranty Revenue.......................................6

         2.  Recognition and Reporting of Accrued Compensation Expense................9

         3.  Accounting and Reporting of Deferred Acquisition Costs.......................11

         4.  Accounting and Reporting of Software Costs ..........................................13

         5.  Representations that Financial Statements Were Prepared in
            Conformity with GAAP......................................................................14

         6.  Misstatements and Loss Causation Concerning Allegations Against
            BDO ...................................................................................................14

    C.  The Proposed Amendment Would Not Prejudice Any of the Defendants,
       Who Cannot Show that the Amendment Is Undertaken in Bad Faith .................17

IV. CONCLUSION......................................................................................................19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbey v. Skokos*,
  303 F. App'x 911 (2d Cir. 2008) ........................................................................................3

*Anthony v. City of N.Y.*,
  339 F.3d 129 (2d Cir. 2003)..........................................................................................4, 17

*Augustus v. MSG Metro Channel*,
  217 F. Supp. 2d 458 (S.D.N.Y. 2002).................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................4

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993)........................................................................................17, 18

*Cresci v. Mohawk Valley Cmty. Coll.*,
  693 Fed. Appx 21 (2d. Cir. 2017) .....................................................................................18

*Cruz v. TD Bank, N.A.*,
  742 F.3d 520 (2d Cir. 2013)................................................................................................5

*Duling v. Gristede's Operating Corp.*,
  265 F.R.D. 91 (S.D.N.Y. 2010) ........................................................................................17

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..........................................................................................................17

*Goureau v. Goureau*,
  No. 12 Civ. 6443 (PAE), 2013 WL 1499404
  (S.D.N.Y. Apr. 10, 2013)...................................................................................................18

*In re Moody's Corp. Sec. Litig.*,
  599 F. Supp. 2d 493 (S.D.N.Y. 2009).................................................................................5

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008).................................................................................5

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016)..................................................................................................4

*Kopchik v. Town of E. Fishkill*,
  N.Y. 759 Fed. Appx 31 (2d. Cir. 2018) ............................................................................18

Page

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015)......................................................................................4, 5, 17, 18

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.,*
    681 F.3d 114 (2d Cir. 2012)......................................................................................4

*Pasternack v. Shrader,*
    863 F.3d 162 (2d Cir. 2017)......................................................................................4

*Porat v. Lincoln Towers Cmty. Ass'n,*
    464 F.3d 274 (2d Cir. 2006)......................................................................................5

*Williams v. Citigroup Inc.,*
    659 F.3d 208 (2d Cir. 2011)......................................................................................4

*Zakrzewska v. The New Sch.,*
    543 F. Supp. 2d 185 (S.D.N.Y. 2008)......................................................................18

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77k(a)......................................................................................................................5
    §77kl.........................................................................................................................1
    §77l(a)(2)..................................................................................................................1
    §77o...........................................................................................................................1

15 U.S.C.
    §78j(b)......................................................................................................................5

Commission's Rules of Practice
    Rule 102(e)...............................................................................................................3

Exchange Act
    §10(b).........................................................................................................1, 6, 14, 16
    §20(a).......................................................................................................................1

Federal Rules of Civil Procedure Rule
    Rule 15......................................................................................................................4
    Rule 15(a)...............................................................................................................2, 4
    Rule 12(b)(6)............................................................................................................5
    Rule 15(a)(2)..........................................................................................................1, 3

**Page**

**SECONDARY AUTHORITIES**

ASC Topic No. 605-20, *Revenue Recognition – Services* ..........................................................7, 8

ASC Topic No. 605-25, *Revenue Recognition - Multiple-Element Arrangements* ........................9

ASC Topic No. 944, *Financial Services – Insurance* ...................................................................12

AU§530: *Dating of the Independent Auditor's Report* ...........................................................15, 16

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, lead plaintiff New England Carpenters Guaranteed Annuity and Pension Funds ("Lead Plaintiff") and plaintiffs Sharon Albano, Jupiter Capital Management, Irving Lichtman Revocable Living Trust, and Stanley Newmark (collectively with Lead Plaintiff, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for leave to file the [Proposed] Consolidated Third Amended Complaint for Violations of the Federal Securities Laws, dated November 26, 2018 ("PTAC") (attached as Exhibit 1 to the Decl. of David A. Rosenfeld in Support of Plaintiffs' Motion for Leave to Amend ("Rosenfeld Decl.")).  For the convenience of the Court, Plaintiffs have attached as Exhibit 2 to the Rosenfeld Declaration a redline comparison of the PTAC to the Consolidated Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 140, the "SAC").  The new substantive allegations in the PTAC are narrowly tailored to address the key issues identified in the Court's September 9, 2019 Memorandum Opinion (ECF No. 161) (the "Opinion") granting Defendants' motions to dismiss.[1]

## I.    INTRODUCTION

This securities class action asserts strict liability and negligence claims under the Securities Act, and fraud claims under the Exchange Act, against a variety of Defendants in connection with AmTrust's express admission of material accounting and internal-control misstatements.  That misconduct is the subject of several ongoing federal governmental investigations.

The Opinion dismissed Plaintiffs' claims under Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act.  In particular, the Court's analysis largely turned on whether Plaintiffs had alleged false statements of *fact* or *opinion*, concluding that many of

---

[1]    Unless otherwise noted, citations to "¶__" and "¶¶__-__" refer to paragraphs in the PTAC, and any defined terms shall have the same meaning as set forth in the PTAC.  Throughout this memorandum, all emphasis in quoted material is added and all internal citations, quotation marks, and footnotes are omitted unless otherwise noted.

the alleged false statements in the SAC were inactionable statements of opinion.  The PTAC directly addresses the key pleading deficiencies identified by the Court, and expands on the alleged misstatements concerning, *inter alia*, accounting for warranty contract revenue, accrued compensation expense, deferred acquisition costs, software development costs, and representations regarding purported compliance with GAAP.  The PTAC makes clear that the relevant misstatements are indeed untrue statements of *fact*, and cures other allegations found deficient by the Court in the Opinion.

There has been no bad faith or undue delay, and leave to amend will not cause undue prejudice to Defendants.  No formal discovery has been taken, and there is no scheduling order in place in this action.  As such, Plaintiffs respectfully submit that their motion for leave to amend be granted under the liberal standard of Rule 15(a).

## II.    RELEVANT BACKGROUND

Plaintiffs filed the Amended Complaint for Violations of the Federal Securities Laws on August 21, 2017.  ECF No. 55 (the "AC").  Plaintiffs alleged, *inter alia*, that on April 4, 2017, AmTrust – at the time, a publicly traded multinational specialty property and casualty insurer (¶¶2, 24) – filed its annual report on Form 10-K for 2016 (defined in PTAC) after a several-week delay. ¶¶76, 84.  In the 2016 Form 10-K, AmTrust not only reported its financial results for 2016, but restated its prior financial results over a five-year period – 2012 through 2016 – including each interim period in 2015 and 2016 (the "Restatement").  ¶90.  AmTrust directed that the financial statements in question, including any associated earnings and press releases, "should no longer be relied upon."  ¶¶2-4, 85-86.

The Restatement: (1) admitted violations of accounting principles generally accepted in the United States GAAP in eight different categories (¶176); (2) admitted that the Company's internal controls over financial reporting were riddled with "material weaknesses" (¶¶9-10, 78, 92), despite

its prior representations to the contrary, and that its disclosure controls were "ineffective" (¶170-180); and (3) admitted that its misstatements and violations of GAAP were material."  ¶¶155-169. These admitted, material misstatements were incorporated by reference into the offering materials for AmTrust's two public offerings at issue in this lawsuit.

Defendants filed motions to dismiss the AC on October 17, 2017 (ECF Nos. 98, 100, 103), and oral argument on those motions was held on February 7, 2018.  *See* ECF No. 118.  On October 29, 2018, while the motions to dismiss were *sub judice*, Plaintiffs filed a motion for leave to amend the AC to add claims against defendant BDO, in light of the SEC's October 12, 2018 Order Instituting Public Proceedings Pursuant to Section 4C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice, Making Findings and Imposing Remedial Sanctions against three former accountants of BDO.  ECF Nos. 130, 132; Rosenfeld Decl. Ex. 3. Defendants did not oppose the motion.  ECF No. 136.  On November 14, 2018, the Court granted Plaintiffs' motion for leave to amend the AC and denied the pending motions to dismiss the AC as moot.  ECF No. 137.  Thereafter, Plaintiffs filed the SAC on November 26, 2018, and the parties conducted a new round of motion-to-dismiss briefing.  ECF Nos. 140, 143, 145, 148, 153, 155, 156, 157.

On September 9, 2019, the Court granted Defendants' motions to dismiss the SAC in its entirety.

## III.   ARGUMENT

### A.   Legal Standard for Deciding a Rule 15(a)(2) Motion

Leave to amend is "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2). Justice requires leave when there are "at least colorable grounds for relief . . . ."  *Abbey v. Skokos*, 303 F. App'x 911, 913 (2d Cir. 2008) (summary order; reversing denial of leave when a new fact "could permit an inference" of a required agency relationship).  The judicial policy favoring

amendment is so strong that the burden is on the non-moving party to demonstrate bad faith or undue prejudice. *See Anthony v. City of N.Y.*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). Therefore, leave is generally denied only when amending would be futile, or the non-movant establishes prejudice or bad faith associated with the amendment. *See Panther Partners Inc. v. Ikanos Commc'ns*, *Inc.*, 681 F.3d 114, 121 (2d Cir. 2012) (finding amendment not futile).

"In assessing whether the proposed complaint states a claim" for the purpose of determining whether amendment would be futile, a court will consider "the proposed amendment[s] . . . along with the remainder of the complaint, . . . accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Id.* at 119. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (internal quotations omitted). Thus, even significant amounts of "time, effort and money . . . expended in litigating [the] matter" cannot establish the prejudice that the non-movant must show to preclude leave to amend. *See id*.

In deciding whether to permit amendment, courts apply the "'permissive standard' of Rule 15 . . . 'consistent with [the] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, *LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). Amendment is proper when "the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Given the stringent standards applicable to securities fraud claims brought under the Exchange Act, leave to amend is often necessary to allow a plaintiff to develop sufficient factual support for their claims at the pleading stage.  *See, e.g.*, *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009) ("leave to amend should be granted liberally in cases alleging securities fraud"); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (recognizing importance of liberally allowing amendment in view of complicated pleading rules applied to securities fraud claims, and allowing filing of third amended complaint).

Moreover, in this Circuit, leave to amend a complaint is favored post-dismissal.  *See, e.g.*, *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).").  As the Second Circuit has held, "it is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013). "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Loreley*, 797 F.3d at 190.

### B.   The New Allegations in the PTAC Directly Address the Key Deficiencies Identified in the Opinion, Demonstrating that Amendment Is Not Futile

Amendment is not futile here because the PTAC pleads additional facts specifically tailored to the key deficiencies identified by the Court in the Opinion.  "An amendment is not futile if there are 'colorable grounds for relief' on the new claim."  *Augustus v. MSG Metro Channel*, 217 F. Supp. 2d 458, 465 n.43 (S.D.N.Y. 2002) (Kaplan, J.).  As the Court is aware, under the Securities Act, a plaintiff challenging a statement of fact must allege that the fact was untrue at the time the statement was made or that it omitted to state a material fact necessary to make the statement made not misleading.  15 U.S.C. §77k(a).  Similarly, Rule 10b-5, the SEC Rule which implements

Section 10(b) of the Exchange Act, prohibits "making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  Opinion at 63.

In the Opinion, the Court found that Plaintiffs failed to plead that many of the alleged misstatements were misstatements of *fact*.  The Court then analyzed whether those statements were untrue or misleading statements of *opinion*.  Despite finding certain alleged misstatements to be actionable misstatements of fact or opinion, the Court determined that they were not material and thus held that Plaintiffs failed to state a claim under both the Securities Act and Exchange Act.

The new allegations of the PTAC make clear that AmTrust's accounting misstatements were not due to errors in judgment in selecting among differing generally accepted accounting principles. As such, the PTAC demonstrates that AmTrust's financial statements were the product of accounting methodologies that were not permissible under GAAP, and/or were violations of AmTrust's publicly stated accounting policies, thus constituting misstatements of fact.  In addition, the PTAC establishes that the various accounting improprieties carried out by Defendants rendered their representations about AmTrust's operations and financial performance relating to AmTrust's financial statements materially inaccurate.  And the PTAC cures other allegations found deficient by the Court in the Opinion, as more fully described below.

### 1. Recognition and Reporting of Warranty Revenue

In the Opinion, the Court held that the SAC failed to adequately plead that the financial data resulting from AmTrust's warranty contract revenue recognition practice (and related positive statements) constituted misstatements of fact.  Opinion at 39, 64.  The Court found that in order to plead that these statements are indeed misstatements of fact, Plaintiffs must plead, *inter alia*, that:

1.      ASC No. Topic 605 objectively was the only correct guidance to apply.

2.     That defendants did not apply that guidance and did not disclose either the particular guidance that they were applying, or that they had chosen not to apply the section that a reasonable investor would assume applied to the transactions.

3.     That the services section of ASC Topic No. 605 control to the exclusion of any other section.

4.     The reason or reasons why the exception within the services section – allowing recognition of revenue on a straight-line basis – did not apply.

*See* Opinion at 39-42.  The PTAC does just that.  Specifically, as alleged in the PTAC, the relevant accounting guidance associated with the recognition of revenue on ESPs, set forth in ASC Topic No. 605-20, *Revenue Recognition – Services*, provides that revenue on separately priced extended warranty contracts, like the ESPs sold by AmTrust, is to be "deferred and recognized in income on a straight-line basis over the contract period."  ¶120.  Other than one exception – which is not applicable here – there is no other method allowable by GAAP for recognizing revenue on separately priced extended warranty contracts.  ¶121.  In its restated financial statements, AmTrust even admitted that it failed to follow this unequivocal accounting guidance at all relevant times.  *Id.*

As the PTAC alleges, this GAAP mandate is based on a fundamental precept of revenue recognition – that revenue is not to be recognized until earned, that is, when an entity has substantially accomplished what it must do to be entitled to the benefits represented by the revenues. ¶122.  Since AmTrust's obligation under an extended warranty plan exists until the termination of the contract, it is improper to recognize revenue other than on a straight-line basis over the contract period (unless the exception applies) because, at that time, revenue has not been earned and AmTrust has not completed its performance obligations under the contract.  *Id.*

The exception to deferring and recognizing revenue on ESPs on a straight-line basis over the contract period exists when "sufficient historical evidence indicates that the costs of performing services under the contract are incurred on other than a straight-line basis."  ¶123.  That is, performance under the contract can be demonstrated to occur in a manner other than on a straight-

line basis over the life of the contract.  *Id*.  As the PTAC makes clear, the exception to deferring and recognizing ESP revenue on a straight-line basis over the contract period did ***not*** apply here because AmTrust did not possess historical evidence demonstrating the appropriateness of a method of recognition other than on a straight-line basis over the life of the contract period.  ¶124.  ***To be sure, if such evidence did exist, AmTrust could not have deferred and recognized revenue on a straight-line basis over the contract period in its restated Class Period financial statements***.  *Id*.  But it did: in its restated financial statements, AmTrust corrected its method of recognizing revenue on ESPs by deferring and recognizing such revenue on a straight-line basis over the related contract period.  As a result, this exception plainly did not apply.  *Id*.  Consequently, the allegations in the PTAC confirm that the relevant statements were misstatements of *fact*.

Further, throughout the relevant period, the financial statements AmTrust issued to investors stated that "[t]he Company recognizes revenue related to promotion, marketing and administration services at the time of the sale of ESP.  However, the Company defers a portion of service revenue based upon an estimate of administrative services to be provided in future periods."  *See, e.g.*, ¶¶135, 195, 220, 361, 406, 440, and 476.

The Court found that this statement of fact was not actionable.  Opinion at 33-35.

As the PTAC clarifies, these statements omitted to state a material fact necessary to make them not misleading, *i.e.,* that AmTrust's method of warranty fee revenue during the relevant period – which AmTrust represented conformed with GAAP – did not conform with GAAP.  ¶126.  Specifically, ASC Topic No. 605 (the relevant accounting standard under GAAP for recognition of warranty fee revenue), does not permit the method of recognition employed by AmTrust without historical evidence demonstrating the appropriateness of such method, historical evidence AmTrust acknowledges it never possessed.  *Id*.

As the PTAC alleges, in the 3/16/17 Press Release, AmTrust noted that the restatement related to, among other things, the Company's "upfront recognition of a portion of warranty contract revenue associated with administration services."  ¶127.  The 3/16/17 Press Release stated, in pertinent part, that AmTrust restated its financial statements and related disclosures to correct a misstatement caused by the upfront recognition of warranty contract revenue in the relevant period financial statements related, in part, "to multiple-element revenue recognition, instead of deferring recognition of the revenue over the life of the contract. . . ." *Id*.

As alleged in the PTAC, companies often provide multiple products or services, *i.e.*, deliverables, to their customers in a single contract.  ¶128.  GAAP, in ASC Topic No. 605-25, *Revenue Recognition - Multiple-Element Arrangements*, provides guidance on how to allocate the consideration paid on the agreement to each deliverable, but importantly, does not address when revenue should be recognized for each deliverable.  *Id*.  As such, any consideration AmTrust may have given to "multiple-element revenue recognition" is irrelevant here, because such accounting guidance does not address the issue in this case, *i.e.*, **when** warranty revenue should have been recognized.  *Id*.  In fact, the 2016 Form 10-K made no mention of multiple-element revenue recognition as being associated with AmTrust's improper accounting for warranty revenue.  *Id*.

### 2.      Recognition and Reporting of Accrued Compensation Expense

On the issue of accrued compensation expense, the Court found that Plaintiffs failed to adequately allege that any financial data based on the accounting treatment applied by AmTrust was a misstatement of fact.  Opinion at 46.  In order to do so, the Court stated, Plaintiffs must plead that an ASC topic objectively was the correct one to apply.  *Id*. at 46.  The Court also found that the SAC lacked detail concerning the interaction between ASC Topics Nos. 450, 710, and 270.  *Id*.

The allegations in the PTAC directly address these concerns and clarify what the relevant guidance mandates.  Specifically, the PTAC alleges that GAAP, in ASC Topic No. 450 –

*Contingencies*, requires that financial statements account for existing uncertainties as to probable losses.   ¶132.   Such loss contingencies, defined as an existing condition, situation, or set of circumstances involving uncertainty as to a possible loss to an entity that will ultimately be resolved when one or more future events occur or fail to occur, are to be recognized and reported as a charge to income when: information existing at the date of the financial statements indicates that it is probable (*e.g*., a likely chance) that an asset has been impaired or a liability has been incurred and the amount of such loss can be reasonably estimated.   *Id*.   Further, ASC Topic No. 450-10-55 provides that "[a]mounts owed for services received, such as advertising and utilities, are not contingencies even though the accrued amounts may have been estimated; ***there is nothing uncertain about the fact that those obligations have been incurred***."   ¶133.   Accordingly, in those instances when services have already been rendered, GAAP requires that the costs related thereto be expensed as incurred.   *Cf*. ASC Topic No. 710-10-25 – *Compensation Recognition* ("liability for amounts to be paid as a result of employees' rights to compensated absences shall be accrued, considering anticipated forfeitures, in the year in which earned.)."   *Id*.   In the 2016 Form 10-K, AmTrust stated that the employee bonuses at issue in the case "were expensed in the year paid but . . . should have been accrued ***as [an expense when] earned***."   ¶134. Given that the employee bonuses had been earned, there was nothing discretionary, subjective or uncertain about the fact that such obligations had been incurred and were required to be appropriately expensed in AmTrust's financial statements when they were earned during the relevant period.   *Id*.

In addition, as the PTAC alleges, in accounting for its compensation related expenses, AmTrust was required to follow the requirements of ASC Topic No. 270 – *Interim Reporting*, which states that interim financial information is "essential" to provide investors with timely information as to the progress of the entity and that the results for each interim period shall be based on the

accounting principles and practices used by an entity in the preparation of its latest annual financial statements (unless a change in an accounting practice or policy has been adopted in the current year). ¶135. ASC Topic No. 270 further provides that costs and expenses other than product costs are to be charged to income in interim periods as incurred, or be allocated among interim periods based on an estimate of time expired, benefit received or activity associated with the periods. ¶136. The procedures adopted for assigning specific cost and expense items to an interim period shall be consistent with the bases followed by the entity in reporting its annual operating results and when an item expensed for annual reporting purposes clearly benefits two or more interim periods, each interim period shall be charged for an appropriate portion of the annual cost by the use of accruals or deferrals. *Id*.

Due to the fact that the employee bonuses at issue had been "earned" they were required to be expensed as incurred during the Class Period in accordance with the relevant provisions of ASC. ¶137. Consequently, Defendants repeatedly issued misstatements of material fact about the Company's reported expenses and operating results during the relevant period when AmTrust failed to expense its employee bonuses as incurred, *i.e.*, when they were earned – the only appropriate method of accounting for such expenses under GAAP. *Id*.

### 3.    Accounting and Reporting of Deferred Acquisition Costs[2]

With respect to deferred acquisition costs ("DAC"), the Court found that Plaintiffs failed to plead that ASC Topic No. 944 objectively applied to each of the four areas in which AmTrust

---

[2]   While the Court accepted Defendants' argument that the remaining adjustments were not material based on a statement in the 3/16/17 Press Release, the Company, at the time of the 3/16/17 Press Release, had not completed its investigation and, accordingly, its characterization of certain misstatements as being "not material" – while finding that other misstatements were material – was premature. Indeed, in the 2/27/17 Press Release – issued less than three weeks before the 3/16/17 Press Release – the Company had previously (and incorrectly) claimed that ***none*** of the errors were material. ¶168.

identified issues.  These issues were identified by AmTrust in the 2016 Form 10-K, in pertinent part, as follows:

> The Company corrected errors in its calculation of deferred acquisition costs related to (a) the over-amortization of certain deferred acquisition costs in 2015, resulting in an overstatement of expenses in 2015, (b) the capitalization of certain salaries and consulting fees that were not eligible for deferral, resulting in an understatement of expenses, (c) the treatment of certain costs in the Company's U.K. operations as both underwriting expenses and salary and benefit expenses, resulting in the duplication of the amount capitalized and deferred, and (d) the inclusion of deferred warranty administration fees and obligor liabilities associated with the administration services provided to our ESPs.

¶141.

The Court held that Plaintiffs failed to plead that AmTrust either: (1) did not apply ASC Topic No. 944, (2) did not disclose that it had selected different guidance to apply, or (3) applied ASC Topic No. 944 in a manner that was objectively wrong.  Opinion at 51.  The PTAC directly addresses these concerns and clarifies what the relevant guidance mandates, making clear that the admissions in the 2016 Form 10-K demonstrate that AmTrust's disclosed policy of accounting for DAC in the financial statements it issued to investors was a misstatement of fact.

As alleged in the PTAC, AmTrust's disclosed policy of accounting for DAC is consistent with the guidance set forth in GAAP, specifically in ASC Topic No. 944, *Financial Services – Insurance*, which establishes specific limitations on the deferral of those costs incurred in acquiring insurance contracts and notes that any such deferred costs are to be expensed over time via amortization.  ¶140.  In the 2016 Form 10-K, AmTrust admitted that its financial statements during the relevant period were presented in violation of GAAP by improperly accounting for deferred acquisition costs.  First, AmTrust has admitted that it did not expense its DAC ratably in accordance with its stated DAC policy.  ¶142.  Second, AmTrust deferred certain expenses and fees that were outside of the scope of those identified in the DAC policy.  *Id*.  Third, AmTrust improperly duplicated the amount of expenses it recorded as DAC.  *Id*.  Accordingly, AmTrust's admissions

demonstrate that its misstatements in accounting for DAC were affirmative misstatements of fact – that is, AmTrust stated it would account for DAC in accordance with a certain methodology, but it did not.  Thus, the misstatements associated with DAC were not due to subjective errors. ¶143.

The Court found that Plaintiffs *did* adequately allege misstatements with respect to two of the four areas of deferred acquisition costs flagged by AmTrust in the 2016 Form 10-K.  Opinion at 51-53.  The Court first held that Plaintiffs adequately alleged that statements regarding "the treatment of certain costs in the Company's U.K. operations as both underwriting expenses and salary and benefit expenses, resulting in the duplication of the amount capitalized and deferred" were false statements of fact.  *Id*. at 50, 51.  Next, the Court found that Plaintiffs adequately alleged a false statement of opinion in connection with AmTrust's "inclusion of deferred warranty administration fees and obligor liabilities associated with the administration services provided to our ESPs."  *Id*.

The Court, however, found that Plaintiffs failed to adequately allege the materiality of these (and all of Plaintiffs') alleged misrepresentations.  *Id*. at 56.  The PTAC clarifies that nowhere in the 2016 Form 10-K – which is the document that contains the public details of the actual restatement and which was issued after AmTrust completed its investigation – does the Company claim any of the adjustments it made to correct its financial misstatements were immaterial or "not material." ¶169.  Indeed, AmTrust's financial misstatements, when aggregated, resulted in the restatement of more than *50%* of the line items on its annual 2015 balance sheet and income statement.  *Id*.  These allegations demonstrate the materiality of each of AmTrust's financial misstatements taken as a whole.  *Id*.; *see also supra* n. 2.

### 4. Accounting and Reporting of Software Costs

The Court further held that Plaintiffs failed to plead false statements of fact in connection with AmTrust's capitalization of software development costs.  Opinion at 54.  In the 2016 Form 10-K, AmTrust admitted that the financial statements it issued to investors during the relevant period

were presented in violation of GAAP by improperly deferring software costs. ¶146. As alleged in the PTAC, this admission in the 2016 Form 10-K demonstrates that AmTrust's financial statements issued to investors during the relevant period – and specifically, its stated policy of accounting for DAC – included misstatements of fact because AmTrust did not follow its stated policy of accounting for capitalized software costs, or GAAP, since it deferred costs that were not eligible for deferral. ¶147.

### 5. Representations that Financial Statements Were Prepared in Conformity with GAAP

The Court held that statements in AmTrust's Forms 10-K and 10-Q representing its consolidated financial statements were prepared in conformity with GAAP during the relevant period, were inactionable. Opinion at 57-58. The Court found that this claim was derivative of the primary allegations discussed above and failed because the SAC alleged that defendants applied the ASC but reached incorrect results. *Id*. As discussed, herein, the PTAC makes clear that AmTrust's accounting misstatements were not due to errors in judgment in selecting among differing generally accepted accounting principles, but were the product of accounting methodologies impermissible under GAAP. ¶118.

### 6. Misstatements and Loss Causation Concerning Allegations Against BDO

The Court also found that Plaintiffs failed to adequately allege actionable misstatements against BDO in connection with both the Securities Act and Exchange Act Claims. Opinion at 74-81. The Court additionally found that Plaintiffs failed to adequately allege loss causation in connection with the Section 10(b) claim against BDO. *Id*. at 82-83. The PTAC addresses these identified deficiencies.

*First*, as alleged in the PTAC, the 2015 BDO Opinion and the 2016 BDO Opinion represented that BDO "conducted our audits in accordance with the standards of the Public

Company Accounting Oversight Board (United States)" providing it with "a reasonable basis for our opinion." ¶247. As the PTAC alleges, this was a material misstatement of fact in connection with Plaintiffs Section 11 and 12(a)(2) claims, because BDO failed to comply with numerous PCAOB standards and/or failed to perform numerous audit procedures required by the PCAOB. *Id.*

*Second*, the Court found that Plaintiffs failed to plead that BDO's representations throughout the relevant period that AmTrust's Consolidated Financial Statements conformed with GAAP were actionable statements of opinion. Opinion at 80-81. As alleged in the PTAC, BDO did not make a meaningful inquiry or reasonably possess the requisite knowledge for its assertions in the relevant audit opinions that AmTrust's financial statements during the relevant time period were presented in conformity with GAAP. *Id.* BDO had reason to not believe that the relevant financial statements were fairly presented in conformity with GAAP, contrary to its representations otherwise. ¶248. Indeed, as alleged in the PTAC, in "assessing the accounting principles used" by AmTrust – as stated by BDO – as a required part of its audit, BDO could not have concluded that the accounting principles complied with GAAP because there is no provision in GAAP or any ASC Topic that: (i) allows for the recognition of warranty fee revenue on a basis other than straight-line (other than one exception that AmTrust concedes did not apply); or (ii) permits earned employee bonuses to be deferred. Moreover, BDO failed to determine that AmTrust accounted for DAC and software costs in violation of its own publicly stated accounting policies and GAAP. *Id.*

*Third*, in the Opinion, the Court found that Plaintiffs failed to plead a misstatement of fact with respect to BDO's "apparent decision not to amend the date of the audit report and opinion." Opinion at 76. The PTAC makes clear that this was a material misstatement of fact. As alleged in the PTAC, AU§530: *Dating of the Independent Auditor's Report* explicitly provides that "the auditor should date the audit report no earlier than the date on which the auditor has obtained sufficient

appropriate evidence to support the auditor's opinion."  ¶267.  Accordingly, in connection with Plaintiffs Section 11 and 12(a)(2) claims against BDO, the PTAC alleges that the 2015 BDO Opinion and the 2016 BDO Opinion were materially inaccurate because they were dated before BDO obtained sufficient appropriate evidential matter necessary to provide it with a reasonable basis for its opinion.  *Id*.

With respect to Plaintiffs' Section 10(b) claim against BDO, the PTAC alleges that in an attempt to avoid detection of and mask its wrongful conduct, BDO failed to comply with applicable auditing standards that required it to date the 2014 BDO Opinion "no earlier than the date on which the auditor has obtained sufficient appropriate evidence to support the auditor's opinion." ¶646.  As alleged in the PTAC, BDO's audit of AmTrust for the years ended December 31, 2013 and 2012 was conducted with such lack of care that it calls into question the very integrity of the services it rendered to AmTrust.  *Id*.  Consequently, BDO falsely represented that its audit was in accordance with PCAOB standards.

Moreover, the PTAC alleges that it is reasonable to infer that investors would find BDO's misconduct material to an informed investment decision.  Indeed, investors put their trust in BDO to act as a gatekeeper of the financial reporting process and its conduct calls into question the integrity and quality of its audits AmTrust's financial statements during the relevant time period.  Regardless, the fact that so many accounting irregularities have since been uncovered in the financial statements covered by BDO's unqualified audit opinions, including AmTrust's failure to comply with numerous provisions of GAAP, undermines any claim by BDO that its audits were appropriately completed in accordance with PCAOB standards.  ¶625.

*Finally*, the PTAC adequately alleges loss causation against BDO in connection with the Section 10(b) claim.  Loss causation requires only "'a short and plain statement of the claim showing

that the pleader is entitled to relief.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). This

burden "is not a heavy one." *Loreley*, 797 F.3d at 187. Plaintiffs need only "provide a defendant

with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544

U.S. at 347. As alleged in the PTAC, the price of AmTrust securities remained inflated during the

BDO Subclass Period, as investors were led to believe that the 2014 BDO Opinion had been

conducted properly and in accordance with PCAOB. ¶675. When BDO's misrepresentations and

fraudulent conduct became apparent to the market, as a result of the integrity of the audit being

questioned, the price of AmTrust securities fell precipitously, as the prior artificial inflation was

removed, causing harm to investors. *Id*. Consequently, the PTAC adequately alleges both

actionable misstatements and loss causation against BDO.

### C. The Proposed Amendment Would Not Prejudice Any of the Defendants, Who Cannot Show that the Amendment Is Undertaken in Bad Faith

Permitting the filing of the PTAC would not prejudice any of the Defendants. Plaintiffs are

submitting this motion and the PTAC as soon as practicable following the Opinion. As stated above,

any party opposing a motion for leave to amend bears the burden of establishing that it would suffer

undue prejudice by the proposed amendment. *See Anthony*, 339 F.3d at 138 n.5. The Second Circuit

has warned that, "[i]n determining what constitutes 'prejudice,' [courts should] consider whether the

assertion of the new claim would: (i) require the opponent to expend significant additional resources

to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute[.]"

*Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993). In determining whether parties have

been unduly prejudiced by a proposed amendment, "[c]ourts also consider the extent to which the

new claims are related to the existing ones and whether a party has had prior notice of a proposed

new claim." *Duling v. Gristede's Operating Corp*., 265 F.R.D. 91, 99 (S.D.N.Y. 2010).

Defendants will not suffer undue prejudice if leave is granted to file the PTAC.  The only prejudice Defendants can plausibly articulate is that they will have to expend time and resources opposing this motion (if they are so inclined) or in drafting additional motion-to-dismiss papers (should the Court deem it necessary).  But "the time, effort and money [the party opposing amendment] expended in litigating th[e] matter . . . do[es] not arise to . . . 'substantial prejudice[.]'" *Block*, 988 F.2d at 351.

It was not until the Opinion that Plaintiffs became aware of any deficiencies in the SAC.  *See Kopchik v. Town of E. Fishkill*, N.Y. 759 Fed. Appx 31, 38 (2d. Cir. 2018) ("The opportunity to amend the complaint is appropriately presented *after* the district court rules on a motion to dismiss.") (emphasis in original); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 Fed. Appx 21, 25 (2d. Cir. 2017) ("It is the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies.").  Regardless, this Court and others in this district have granted leave to amend at far later procedural stages.  *See, e.g.*, *Zakrzewska v. The New Sch.*, 543 F. Supp. 2d 185, 187 (S.D.N.Y. 2008) (Kaplan, J.) (granting leave to amend "very late in the proceeding" when plaintiff "moved with reasonable dispatch after the facts . . . came to her attention"); *Goureau v. Goureau*, No. 12 Civ. 6443 (PAE), 2013 WL 1499404, at *3 (S.D.N.Y. Apr. 10, 2013) (granting leave to amend "halfway through discovery").

Accordingly, under the circumstances and procedural posture of this case, it is inconceivable that Defendants could show "undue delay," "bad faith," or "dilatory motive" on Plaintiffs' part in moving to amend.  *See Loreley*, 797 F.3d at 190 (identifying these items as grounds for denial). Plaintiffs submit that their prompt actions to file this motion and the PTAC following the Opinion negate any potential prejudice to Defendants.

IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and

allow the filing of the PTAC.

DATED:  October 7, 2019                     Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            DAVID A. ROSENFELD
                                            MARK T. MILLKEY
                                            ROBERT D. GERSON

                                            _____*/s/ David A. Rosenfeld*_____
                                            DAVID A. ROSENFELD

                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com
                                            drosenfeld@rgrdlaw.com
                                            mmillkey@rgrdlaw.com
                                            rgerson@rgrdlaw.com

                                            *Lead Counsel for Plaintiff*

                                            POMERANTZ LLP
                                            JEREMY A. LIEBERMAN
                                            600 Third Avenue, 20th Floor
                                            New York, NY  10016
                                            Telephone:  212/661-1100
                                            212/661-8665 (fax)
                                            jalieberman@pomlaw.com

                                            GAINEY MCKENNA & EGLESTON
                                            THOMAS J. McKENNA
                                            440 Park Avenue South, 5th Floor
                                            New York, NY  10016
                                            Telephone: 212/983-1300
                                            212/983-0380 (fax)
                                            tjmckenna@gme-law.com

KAHN SWICK & FOTI, LLC
KIM E. MILLER
250 Park Avenue, Suite 2040
New York, NY  10177
Telephone:  212/696-3730
504/455-1498 (fax)

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on October 7, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD